**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANGEL RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE PRACTICE MANAGEMENT COMPANY, LLC D/B/A VILLAGE MEDICAL D/B/A VILLAGEMD,<br><br>Defendant. | Civil Action No. 1:24-cv-02882<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM IN SUPPORT OF DEFENDANT VILLAGE PRACTICE MANAGEMENT COMPANY'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. RELEVANT FACTUAL ALLEGATIONS ........ 2

III. LEGAL STANDARD ........ 4

IV. PLAINTIFF'S FAILURE TO PLAUSIBLY ALLEGE DISCLOSURE OF PHI OR PII IS FATAL TO COUNT I THROUGH VII ........ 5

V. PLAINTIFF FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED ........ 6

A. Plaintiff Fails to State a Claim to Support Any Cognizable Theories of Negligence. ........ 6

1. Plaintiff fails to plausibly allege a duty that was breached and damages. ........ 6

2. Plaintiff fails to adequately allege negligence *per se* because neither the FTC Act nor HIPAA imposes strict liability. ........ 8

B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion Because There is No Liability Resulting From the Mere Disclosure of Information. ........ 10

C. Plaintiff Fails to State a Claim for Breach of Implied Contract Because the Privacy Policy is an Express Contract that Covers the Same Subject Matter. ........ 11

D. Plaintiff Fails to State a Claim for Unjust Enrichment. ........ 12

E. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality ........ 13

F. Plaintiff Fails to Adequately Allege a Deceptive or Unfair Act and Pecuniary Damages to State an ICFA Claim. ........ 14

G. VillageMD Did Not Violate the Illinois Eavesdropping Statute. ........ 15

H. Plaintiff's Claim for Violation of the ECPA Should be Dismissed. ........ 16

I. VillageMD is Not an Electronic Communications Service for Purposes of the ECPA under Sections 2511(a)(3) and 2702. ........ 17

J. Plaintiff Fails to State a Claim for Computer Fraud and Abuse Act Because He Did Not Suffer any Damage or Loss ........ 18

VI. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.E.I. Music Network, Inc. v. Bus. Computs., Inc.*,
290 F.3d 952 (7th Cir. 2002)....................11

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
187 Ill.2d 386 (1999)....................9

*Archey v. Osmose Utilities Servs., Inc.*,
No. 20-CV-05247, 2021 WL 3367156 (N.D. Ill. Aug. 3, 2021)....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 5, 8

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019)....................14

*Berry v. City of Chicago*,
2020 IL 124999....................8

*Bogenberger v. Pi Kappa Alpha Corp., Inc.*,
2018 IL 120951....................7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)....................4, 14

*Cassetica Software, Inc. v. Computer Sciences Corp.*,
09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009)....................18

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011)....................12

*Cowper v. Nyberg*,
2015 IL 117811....................6

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020)....................10

*Flores v. Aon*,
2023 IL App (1st) 230140....................*passim*

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022)....................17

*Hartley v. Univ. of Chicago Med. Ctr.*,
22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ....................................................10

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018)....................................................................................................4

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019)....................................................................................................12

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
131 Ill.2d 145 (1989)...............................................................................................................12

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp.2d 299 (E.D.N.Y. 2005) .....................................................................................17

*Kim v. Karter's Inc.*,
598 F.3d 362 (7th Cir. 2010)....................................................................................................15

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ..............................................................................*passim*

*Lovegren v. Citizens First Nat. Bank of Princeton*,
126 Ill. 2d 411 (1989)...............................................................................................................10

*Maness v. Santa Fe Park Enters., Inc.*,
298 Ill.App.3d 1014 (1998).......................................................................................................11

*Marcatante v. City of Chi.*,
657 F.3d 433 (7th Cir. 2011)....................................................................................................11

*Price ex rel. Massey v. Hickory Point Bank & Tr., Tr. No. 0192*,
362 Ill. App. 3d 1211 (4th Dist. 2006).......................................................................................8

*Navistar, Inc. v. New Balt. Garage, Inc.*,
11-CV-6269, 2012 WL 4338816 (N.D. Ill. Sep. 20, 2012).......................................................18

*New v. Verizon Commc'ns, Inc.*,
635 F. Supp. 2d 773 (N.D. Ill. 2008) .......................................................................................11

*Noyola v. Board of Education of the City of Chicago*,
179 Ill.2d 121 (1997).................................................................................................................8

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) .......................................................................................13

*Persinger v. Sw. Credit Sys., L.P.*,
20 F.4th 1184 (7th Cir. 2021)....................................................................................................10

*Pucillo v. Nat'l Credit Sys., Inc.*,
66 F.4th 634 (7th Cir. 2023)....10

*Rockford Memorial Hosp. v. Havrilesko*,
368 Ill. App. 3d 115 (2d Dist. 2006)....14

*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004)....10

*U.S. v. Wood*,
925 F.2d 1580 (7th Cir. 1991)....4

*Uni*Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992)....6

*Virnich v. Vorwald*,
664 F.3d 206 (7th Cir. 2011)....4

*White v. DaimlerChrysler Corp.*,
368 Ill. App. 3d 278 (1st Dist. 2006)....14

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013)....4

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024)....9

*Worix v. MedAssets, Inc.*,
869 F. Supp. 2d 893 (N.D. Ill. 2012)....4

*Yu v. Int'l Bus. Machs. Corp.*,
314 Ill. App. 3d 892 (1st Dist. 2000)....7

**Rules and Statutes**

45 C.F.R. Part 160 and Part 164, Subparts A and E....9

45 C.F.R. Part 160 and Part 164, Subparts A and C....9

Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030 .... 2, 18, 19

Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511, 2520,
2702....*passim*

Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(6) ....4, 20

Federal Trade Commission Act ("FTC Act") ....8, 9

Health Insurance Portability and Accountability Act ("HIPAA") ....8, 9

Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") .................................... 1, 14, 15

Illinois Eavesdropping Statute, 720 ILCS 5/14-2(a)(2) .................................................. 1, 15, 16

Illinois Medical Patient Rights Act ..........................................................................................9

Illinois Personal Information Protection Act ..........................................................................9

## I. INTRODUCTION

Plaintiff's Second Amended Complaint ("SAC") asserts claims against Village Practice Management Company, LLC ("VillageMD") arising from its use of the Meta Pixel, which is a snippet of code on portions of the VillageMD website used to track conversions and optimize advertising in partnership with Meta Platforms, Inc ("Meta"). The basis of plaintiff's now twelve-count complaint is that the Meta Pixel deployed on VillageMD's website improperly disclosed personally identifying information ("PII") and protected health information ("PHI") to Meta without prior authorization. All of plaintiff's claims fail for a myriad of reasons.

First, plaintiff fails to plausibly allege that VillageMD actually collected PHI or PII from him and then disclosed such information to a third party. The current allegations only focus on the use of the pixel on informational or pre-portal log in webpages that do ***not*** require website users to enter any PHI or PII. This is fatal to Counts I through VII. Second, the operative VillageMD Privacy Policy that plaintiff references in the SAC, incorporated into the Terms of Use to which he consented, expressly discloses the use of third-party tracking technologies, information that is collected from website users, and the various purposes for which it is collected. Plaintiff's allegations that he did not consent to such uses are simply implausible. The Privacy Policy is fatal to plaintiff's claims for negligence (Count I), negligence *per se* (Count II), breach of implied contract (Count III), unjust enrichment (Count V), breach of the implied duty of confidentiality (Count VI), violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (Count VI), violation of the Illinois Eavesdropping Statute (Count VIII), and violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2520(a) (Count IX). Those claims additionally fail for other defects, including the failure to adequately allege damages.

For the claims that remain, plaintiff fails to set forth any entitlement to relief. Courts in this district have consistently dismissed intrusion upon seclusion claims (Count II) where the conduct at issue concerns a disclosure or publication of information, such as here, as opposed to an unauthorized intrusion. Likewise, plaintiff fails to allege any violation of sections 2511(3)(a) (Count X) and 2702 (Count XI) of the ECPA because VillageMD is not an "electronic communication service." It is a health care provider. Moreover, plaintiff's claim for violation of the Computer Fraud and Abuse Act ("CFAA") (Count XII) must be dismissed because plaintiff fails to allege any "damage" or "loss" as required by the CFAA. As plaintiff has already amended his complaint twice, the most recent of which was *after* VillageMD filed its motion to dismiss, the Court should dismiss plaintiff's SAC with prejudice.

## II. RELEVANT FACTUAL ALLEGATIONS

Plaintiff's SAC[1] centers around VillageMD's purported use of "tracking technologies," on its website, www.villagemedical.com, that allegedly act like a "bug" on website visitors' web browsers. SAC, ¶ 15. Although the SAC now contains more information about other purported "trackers" on the website, the Meta Pixel forms the basis for all claims. *See*, *e.g., id.*, ¶¶ 75–94, 109. The Meta Pixel is described as a snippet of code that can track information about a website visitor, including a visitor's search terms, button clicks, and form submissions. *Id.*, ¶ 14. Plaintiff alleges that the Meta Pixel was used on VillageMD's website and online platforms, which surreptitiously forced plaintiff to transmit details about his website interaction to third parties without his consent. *Id.*, ¶ 10.

[1] Plaintiff filed the initial complaint on April 10, 2024 under a pseudonym. Following the Court's order denying plaintiff's motion to proceed under a pseudonym, plaintiff filed an amended complaint on May 2, 2024 ("FAC"). VillageMD moved to dismiss the FAC on July 8, 2024. Plaintiff then sought leave of Court to file the instant SAC, which added additional claims and allegations.

Notably, plaintiff confirms that the "transmission" to third parties "*only* occurs on webpages that contain the Pixel"—as a website owner can "disable it on pages that do implicate patient privacy." *Id.*, ¶ 54 (emphasis added). Plaintiff details VillageMD's alleged use of the Meta Pixel on specific webpages: the homepage (*id.*, ¶ 113), appointment page (*id.*, ¶ 117), locator page (*id.*, ¶ 122), providers page (*id.*, ¶ 129), pre-portal login page for the patient portal (*id.*, ¶ 133), informational page for retrieving medical records (*id.*, ¶ 134), and services page (*id.*, ¶ 135). The SAC contains screenshots purportedly showing the location of pixel, to demonstrate the existence of the Meta Pixel on those pages. *Id.* The SAC also provides the exact URL for these pages and alleges that the "c_user" cookie is transmitted to Facebook which can identify users. *Id.*; *see also id.*, ¶ 137. ***None*** of these webpages require the submission of any PHI or PII regarding the website visitor as they are merely informational or pages that do not require patients to enter any personal information. *See id.*

However, "[i]nformation gathered and maintained via the athena Patient Portal *is* personally identifiable and protected health information." Dkt. No. 7-2 at 7 (emphasis added). The SAC *never* alleges that the Meta Pixel is actually utilized on the actual patient portal that would require a visitor to enter their PHI and/or PII. Instead, plaintiff alleges "on information and belief" that the Meta Pixel disclosed to Facebook "Private Information" of website visitors in exchange for marketing benefits. *E.g., id.*, ¶¶ 140, 141, 143.

Plaintiff acknowledges that the VillageMD Privacy Policy is "incorporated into [the] Terms of Use," which states, "'[b]y using the Digital Service, you consent to all actions taken by us with respect to your information in compliance with the Privacy Policy.'" *Id.*, ¶ 103. While failing to attach the Privacy Policy, plaintiff alleges that the Terms of Use does not disclose the "use of the Meta Pixel, or that it will share patients' private information, including PHI, with third

parties uninvolved in their treatment, for marketing purposes, without their authorization," and that the disclosure of such information violates VillageMD's privacy policies. *Id.*, ¶¶ 105–107. But the Privacy Policy contains specific disclosures under "Third-party Analytics Providers and Ad Servers" that provides detailed information regarding the use of tracking technologies for marketing purposes. *See* Ex. A.[2] The assertion that VillageMD is sharing plaintiff's and other consumers' PII and PHI without their knowledge and consent is, as plaintiff's own pleading demonstrates, baseless and implausible.

## III. LEGAL STANDARD

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897 (N.D. Ill. 2012) (quoting *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011)). To survive a motion to dismiss under Rule 12(b)(6), a claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Camasta*, 761 F.3d at 736 (*quoting Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009)).

[2] The Court "may take into consideration documents incorporated by reference to the pleadings[.]" *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (Court may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

## IV. PLAINTIFF'S FAILURE TO PLAUSIBLY ALLEGE DISCLOSURE OF PHI OR PII IS FATAL TO COUNT I THROUGH VII.

Despite having an opportunity to amend *after* previewing VillageMD's motion to dismiss, the SAC still fails to plausibly allege that VillageMD actually disclosed plaintiff's PHI or PII to third parties. This is fatal to plaintiff's claims alleged in Count I through VII. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks removed). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (brackets and quotation marks omitted).

At the heart of Count I to VII is VillageMD's purported wrongful disclosure of sensitive PII and PHI through the use of the Meta Pixel that allegedly tracks information about a website visitor. And yet, when confronted with making such allegations, the SAC ostensibly switches from specific facts of the Meta Pixel being on some webpages that *don't* collect PII or PHI to purely conclusory allegations "on information and belief" that PII and PHI was actually shared. *E.g.,* SAC, ¶¶ 140, 141, 143.

While plaintiff provides the URL for VillageMD's homepage (*id*., ¶ 113), locator page (*id*., ¶ 122), providers page (*id*., ¶ 129), informational page for retrieving medical records (*id*., ¶ 134), and services page (*id*., ¶ 135) as using the Meta Pixel, all of these webpages only provide information about VillageMD or its healthcare services or healthcare providers. Even pages that require some information from visitors, such as the appointment (*id*., ¶ 117) or pre-portal login page (*id*., ¶ 133), they do not require any PHI or PII. Although the SAC seemingly conflates the pre-patient portal as the patient portal, the two are completely different. SAC, ¶¶ 132–33. A simple click of the URL provided in the SAC, https://www.villagemedical.com/patient-portal, conclusively demonstrates that the pre-patient portal does *not* require a website visitor to enter any

personal information. *Id.* Despite clearly having the ability to determine whether the Meta Pixel tool is used or not on the actual patient portal or any pages requiring any PHI or PII, such allegations are conspicuously missing.

Yet, plaintiff alleges "[*o*]*n information and belief*, Defendant shared, traded, or sold plaintiff's and Class Members' Private Information with Facebook in exchange for improved targeting and marketing services and reduced marketing costs." *Id.*, ¶ 143 (emphasis added). The allegation made on information and belief is without any factual support regarding the "information" that "belief" is based. Accordingly, plaintiff's threadbare and conclusory allegations that VillageMD uses the Meta Pixel to collect and transmit plaintiff's PHI or PII should be disregarded. *See, e.g. Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (in context of a fraud claim, "allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions"). Without such allegations, Counts I through VII should be dismissed.

## V. PLAINTIFF FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even assuming plaintiff had sufficiently alleged that VillageMD disclosed PHI or PII to Facebook through the use of the Meta Pixel, all of plaintiff's claims still fail for the reasons below.

### A. Plaintiff Fails to State a Claim to Support Any Cognizable Theories of Negligence.

1. Plaintiff fails to plausibly allege a duty that was breached and damages.

To state a claim for negligence, a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of plaintiff's injuries. *See Flores v. Aon*, 2023 IL App (1st) 230140, ¶ 23 (citing *Cowper v. Nyberg*, 2015 IL 117811, ¶ 13). When determining whether there is a duty of care under the common law, courts look at (1) the reasonable foreseeability of the

injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.* at ¶ 24 (citing *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2018 IL 120951, ¶ 46).

Plaintiff alleges that VillageMD breached its duty of care for the privacy and confidentiality of plaintiff's and class members "Private Information" by allegedly disclosing such information to third parties. SAC, ¶ 239. However, this allegation is implausible in light of VillageMD's Privacy Policy. The Privacy Policy, incorporated into the Terms of Use, requires "consent to all actions taken by [VillageMD] with respect to [a website visitor's] information," (*id.*, ¶ 103), and expressly contemplates tracking technologies by third parties. Specifically, the Privacy Policy expressly provides that "[t]hird party analytics and other service providers may set and access their own tracking technologies on your device, and they may otherwise collect or have access to information about you, potentially including personal information." Ex. A. VillageMD also discloses that "third parties may automatically collect information about you using their own cookies or other technologies, or may otherwise collect or have access to information about your visits to this Service and other websites, your IP address, your ISP, the browser you use to visit a Service and other usage information." *Id.* Moreover, "[i]nformation collected may be used, among other things, to deliver advertising targeted to your interests and to better understand the usage and visitation of our website and the other sites tracked by these third parties." *Id.* Consequently, VillageMD could not have breached a duty to disclose the use of the Meta Pixel if the Privacy Policy did just that.

Even if plaintiff alleged a duty that was breached, he failed to adequately allege any cognizable damages to support a negligence claim. Illinois law requires a "legally cognizable present injury or damage" to sustain a negligence claim. *Yu v. Int'l Bus. Machs. Corp*., 314 Ill.

App. 3d 892, 897 (1st Dist. 2000). Plaintiff's purported damages are nothing more than a kitchen-sink of non-specific damages, including: money damages, advertisements, use of information for advertising purposes, increased risk of future harm, embarrassment, humiliation, frustration, emotional distress, the unauthorized access of their Private Information by third parties, improper disclosure of their Private Information, lost benefit of the bargain, lost value of PHI/PII and diminution in value, and lost time and money incurred to mitigate and remediate the effects of use of the information. SAC, ¶¶ 243, 244. Each of these purported damages is completely conclusory or otherwise not a cognizable present injury. Plaintiff fails to provide any information or specific facts supporting his claim for money damages, embarrassment, humiliation, frustration, emotional distress, lost benefit of the bargain, lost value of PHI/PII, and lost time he allegedly suffered. *See Iqbal*, 556 U.S. at 678 (courts are not required to accept legal conclusions couched as factual allegations). Moreover, vague references to an unspecified "increased risk of future harm" is not a cognizable present injury sufficient to state a negligence claim. *See Berry v. City of Chicago*, 2020 IL 124999, ¶¶ 33–38. It is also not plausible to plead damages for "unauthorized access" or "improper disclosure" of PHI or PII when the Privacy Policy expressly discloses and requires consent to tracking technologies used on the website. As such, plaintiff's claim for negligence fails.

2. Plaintiff fails to adequately allege negligence *per se* because neither the FTC Act nor HIPAA imposes strict liability.

Plaintiff's negligence *per se* theory fares no better. Where a statute or ordinance is designed to protect human life or property, Illinois law provides that the statute establishes the required standard of care and "fix[es] the measure of legal duty." *Price ex rel. Massey v. Hickory Point Bank & Tr., Tr. No. 0192*, 362 Ill. App. 3d 1211, 1216 (4th Dist. 2006) (citing *Noyola v. Board of Education of the City of Chicago*, 179 Ill.2d 121, 130 (1997)). However, a "violation of a statute

constitutes negligence *per se* only when it is clear that the legislature intended for the act to impose strict liability." *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, 23 CV 1108, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024) (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 187 Ill.2d 386, 240 (1999)).

Plaintiff alleges that the standard of care is established by the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, the Illinois Medical Patient Rights Act, Illinois Personal Information Protection Act.[3] However, there is no authority that any of these statutes, laws, or rules intended to impose strict liability, and plaintiff fails to make any allegation stating the same. *See Wittmeyer,* 2024 WL 182211, at *4 (dismissing negligence per se claim because "plaintiffs, however, do not allege that either the FTCA or HIPAA imposes strict liability; nor does the Court have any authority before it that would a support a finding of strict liability."); *see also Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 28 (there is "no support for the notion that the legislature clearly intended to impose strict liability for FTC Act violations."). And even if the standard of care can be established, the current allegations fail to show that VillageMD violated any statute by engaging in routine internet practices that did not disclose any PHI or PII, particularly in light of the Privacy Policy. Accordingly, plaintiff fails to sufficiently allege a claim for negligence *per se*.

[3] To the extent plaintiff relies on HHS guidance to establish the standard of care (*e.g.*, SAC, ¶¶ 5–8), the district court in *American Hospital Association v. Becerra* recently vacated the guidance's description of the combination of an individual's IP address and a website visit addressing specific health conditions or providers as "individually identifiable health information" ("IIHI," a subset of PHI), because it was inconsistent with HIPAA's definition of IIHI. 4:23-CV-01110-P, 2024 WL 3075865, at *17 (N.D. Tex. June 20, 2024).

**B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion Because There is No Liability Resulting From the Mere Disclosure of Information.**

"Intrusion upon seclusion occurs when a person intrudes ... upon the solitude or seclusion of another or his private affairs or concerns and this intrusion would be highly offensive to a reasonable person." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023) (citing *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021)) (internal citations omitted). Illinois courts have held that "the core of this tort is the offensive prying into the private domain of another" with examples of such prying being "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (citing *Lovegren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417 (1989)) (internal citations omitted). Courts have held that "disclosures of personal private information do[] not support a claim for unauthorized intrusion." *Id.* (quoting *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004)) (internal citations omitted).

The basis for plaintiff's intrusion upon seclusion claim is the "disclosure of the substance and nature" of PHI and PII to "third parties without the knowledge and consent of plaintiff and Class Members is an intentional intrusion[.]" SAC, ¶ 263. Putting aside the fact that the Privacy Policy *does* inform plaintiff that his information could be disclosed, courts have consistently dismissed similar intrusion upon seclusion claims because it is the *intrusion* that creates liability for this claim, not the subsequent disclosure or publication of private personal information. *See Hartley v. Univ. of Chicago Med. Ctr.,* 22 C 5891, 2023 WL 7386060, at *3 (N.D. Ill. Nov. 8, 2023) (dismissing, with prejudice, an intrusion upon seclusion claim based on allegations that the defendant employed the Meta Pixel and disclosed plaintiff's sensitive health information); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 943–44 (N.D. Ill. 2023) (dismissing a

claim for intrusion upon seclusion based on allegations that third-party source code on a website disclosed plaintiff's personally identifiable patient data to third parties). The same conclusion must be reached here.

### C. Plaintiff Fails to State a Claim for Breach of Implied Contract Because the Privacy Policy is an Express Contract that Covers the Same Subject Matter.

"In Illinois, in order to prove an implied contract the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract." *New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782–83 (N.D. Ill. 2008); *see also A.E.I. Music Network, Inc. v. Bus. Computs., Inc.*, 290 F.3d 952, 956 (7th Cir. 2002) ("[A]n implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt.") (internal citations omitted). However, "an implied contract cannot coexist with an express contract on the same subject." *Marcatante v. City of Chi.*, 657 F.3d 433, 440 (7th Cir. 2011) (citing *Maness v. Santa Fe Park Enters., Inc.*, 298 Ill.App.3d 1014 (1998)).

Plaintiff alleges that as a condition of receiving care from VillageMD he provided "Private Information" by which VillageMD "agreed to safeguard and protect such information, in their Privacy Policies and elsewhere, to keep such information secure and confidential[.]" SAC, ¶ 273. Given that plaintiff affirmatively alleges the existence of one or more express contracts, including the Terms of Use and the Privacy Policy, that govern the parties' obligations and expectations with respect to the protection of PHI and PII, there cannot *also* be an implied contract on the same subject. *See Marcatante*, *supra* 657 F.3d 433, 443 (7th Cir. 2011) (dismissing implied contract claim "[b]ecause there is an express contract that governed the plaintiffs' wages").

But even if it were proper to imply additional terms to the existing contract—which it is not—this claim is not plausible because, as discussed in Section V(A), *supra*, the Privacy Policy specifically discloses the use of tracking technologies and information collected from website visitors. Ex. A. Moreover, "[t]o successfully make a breach of implied contract claim, a plaintiff must allege actual monetary damages." *Flores v. Aon Corp*., 2023 IL App (1st) 230140, ¶ 34; *see also Archey v. Osmose Utilities Servs., Inc.,* No. 20-CV-05247, 2021 WL 3367156, at *2 (N.D. Ill. Aug. 3, 2021). Plaintiff fails to do so here. To the extent plaintiff vaguely references "money damages" (*e.g.*, SAC, ¶ 280), such allegations are entirely conclusory.

**D. Plaintiff Fails to State a Claim for Unjust Enrichment.**

In Illinois, to recover damages on a theory of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145 (1989)). Moreover, "[u]just enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019); *see also Cleary*, 656 F.3d at 517 ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

Plaintiff's unjust enrichment claim rests on the same purported improper conduct alleged in plaintiff's other claims—namely, the purported disclosure of his PHI and PII to third parties through the use of the Meta Pixel. SAC, ¶ 284. Given that unjust enrichment is not a separate cause of action in Illinois and plaintiff's other claims fail for the reasons stated herein, the claim similarly fails as an independent theory of liability. But even assuming *arguendo* that any of plaintiff's

related claims survive, plaintiff still fails to plausibly allege that VillageMD unjustly retained any benefit conferred by plaintiff. Any "monetary compensation" and "sensitive medical information" that plaintiff provided to VillageMD was for the purpose of receiving healthcare services. Plaintiff's allegations are insufficient here since he provided "sensitive medical information" and "monetary compensation" in order to allow VillageMD to provide him health care services, not as part of some other transaction that enriched VillageMD. *See Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 38 (finding no unjustly retained benefit because plaintiff was adequately compensated for labor through wages and any "personal information" was an "administrative necessity" for insurance services); *see also Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 766 (C.D. Ill. 2020) (finding no alleged benefit conferred in exchange for protection of personal information because "payments were for food and gas"). And even if plaintiff somehow sufficiently alleged that a benefit was conferred, there can be no unjustly retained benefit in light of the Privacy Policy.

### E. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality.

Plaintiff's claim for breach of the implied duty of confidentiality is based on the patient-health care provider relationship which implies a contract. Specifically, plaintiff contends that VillageMD agreed to keep plaintiff's "Private Information and communications confidential as part of establishing and maintaining the healthcare services in the provider/patient relationship between Defendant and plaintiff and Class Members." SAC, ¶ 292. However, "Illinois law does not recognize a cause of action in tort for this conduct"—and even so, "its scope is limited to disclosures that violate the statutory physician-patient privilege." *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 940 (N.D. Ill. 2023). In *Kurowski*, the court dismissed plaintiff's breach of the implied duty of confidentiality claim because plaintiff "fail[ed] to allege the disclosure of any information related to the provision of treatment to her or other similarly situated

Rush patients." *Id.* Specifically, the allegations concerned "what occurs when a user interacts with Rush's public webpage, not the MyChart portal." *Id.* at 941. And, exactly like here, "even if one could reasonably infer that this information identifies an individual patient by name, this sort of disclosure does not violate physician-patient statutory privilege." *Id.* Regardless, similar to Plaintiff's negligence claim, there are no plausible allegations of any implied promises in light of the Privacy Policy that expressly provides for the disclosure of personal information. *See* Exh A. Accordingly, this claim must be dismissed.

### F. Plaintiff Fails to Adequately Allege a Deceptive or Unfair Act and Pecuniary Damages to State an ICFA Claim.

"In order to state a claim under the ICFA, a plaintiff must show: (1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during the course of conduct involving trade or commerce." *Camasta*, 761 F.3d at 739 (internal quotation marks omitted). "An individual suing under the ICFA must 'plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss.'" *Kurowski*,659 F. Supp. at 942; *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019).

Here plaintiff alleges that VillageMD "promised" not to use plaintiff's PHI for marketing purposes prior to obtaining consent, but that allegation is simply not plausible given the Privacy Policy. SAC, ¶ 307. Illinois Courts have held that "[t]he bald assertion of deception is insufficient to state a claim; the deceptive manner of the omission must be stated with specificity and particularity." *Rockford Memorial Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 123 (2d Dist. 2006); *see also White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (1st Dist. 2006). Plaintiff's conclusory allegation of deception fails this standard.

Plaintiff further fails to allege an actual pecuniary loss. "[T]he element of 'actual damages' [under the ICFA] 'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta*, 761 F.3d at 739 (citing *Kim v. Karter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). For example, in *Kurowski*, the court dismissed plaintiff's ICFA claim finding that no actual, pecuniary loss was alleged. 683 F.Supp.3d at 845–47. The court rejected plaintiff's argument that she suffered monetary loss by overpaying for healthcare services, that defendant overcharged patients, and that there was a loss of value of her personally identifiable patient data. *Id.* at 846 (no pecuniary loss where plaintiff alleged "she somehow overpaid to use Rush's *free* web properties" and where the "Seventh Circuit has repeatedly rejected the benefit of the bargain theory of damages for non-products liability") (emphasis in original). These allegations are exceedingly similar to plaintiff's purported damages, which are alleged to be that "confidential information" is "no longer private"; "Defendant eroded the essential confidential nature of the doctor-patient relationship"; VillageMD took "something of value" and "derived" some unknown "benefit"; plaintiff did not get the "full value of the medical services"; and "Defendant's actions diminished the value" of plaintiff's personal information. SAC, ¶ 311. Not only are these allegations conclusory and vague, but like in *Kurowski,* these purported damages do not amount to an actual pecuniary loss. *See* 683 F.Supp.3d at 845–47. Accordingly, the Court should dismiss plaintiff's ICFA claim.

**G. VillageMD Did Not Violate the Illinois Eavesdropping Statute.**

Under the Illinois Eavesdropping Statute, a person is liable for eavesdropping if he or she intentionally and knowingly "[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." 720 ILCS 5/14-2(a)(2). The statute also imposes liability for an eavesdropper who "[u]ses or

discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties." *Id.* at (a)(5). Plaintiff claims that VillageMD violated both sections by allegedly intentionally recording and/or acquiring plaintiff's private electronic communications using the pixel and other similar tracking technologies on its online platforms. SAC, ¶ 321.

These allegations are implausible because the Privacy Policy fully discloses the use of tracking technologies on the website. As such, even if the use of the pixel can constitute an intentional eavesdropping, it is not done in a "surreptitious manner" or without "consent of all other parties." VillageMD would also not be using or disclosing any information to which it "reasonably should know was obtained from a private conversation" given the express disclosures in the Privacy Policy. Accordingly, plaintiff's claim for violation of the Illinois Eavesdropping Statute must be dismissed.

**H. Plaintiff's Claim for Violation of the ECPA Should be Dismissed.**

The ECPA provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication." 18 U.S.C. § 2511(1)(a). There is also liability for those who intentionally use or disclose the contents of an intercepted communication. 18 U.S.C. §§ 2511(1)(c) & (d). However, under the so-called "party exception," a party to the communication does not violate the act unless the disclosure itself constitutes a tort or a criminal act. 18 U.S.C. § 2511(2)(d). Consent to the interception is also a defense. *Id.*

VillageMD is clearly a party to the communication and subject to the "party exception" exception. The disclosure itself does not constitute a tort, much less a criminal act given that

Plaintiff failed to allege that there was any disclosure of any PHI or PII. The current allegations merely reflect routine internet practices concerning plaintiff's browsing activity on general webpages. Moreover, the Privacy Policy also confirms that plaintiff has consented to the tracking technologies that he now complains about. Accordingly, Count IX for violation of the ECPA should be dismissed.

**I. VillageMD is Not an Electronic Communications Service for Purposes of the ECPA under Sections 2511(a)(3) and 2702.**

The ECPA also imposes liability against a "person or entity providing an electronic communication service to the public" if it intentionally divulges the contents of any communication to a party that is not the intended recipient. 18 U.S.C. § 2511(3)(a). Moreover, "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Plaintiff alleges that VillageMD violated both sections in Counts X and XI.

Both claims fail because VillageMD is alleged to be "a massive medical system which provides treatments to patients" (SAC, ¶ 9), not an electronic communication service. Courts have uniformly held that companies that merely purchase or use electronic communications services in the ordinary course of business, such as VillageMD, are not electronic communications services. *See Kurowski*, 659 F. Supp. 3d at 940 ("Unlike Epic—the licensor of the MyChart platform on which patients can communicate with their provider—hospital systems such as Rush are not in the electronic communications business."); *see also Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003–04 (W.D. Wash. 2022) ("A company that merely utilizes electronic communications in the conduct of its own business [here, Amazon's "Alexa"] is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *In re Jetblue*

*Airways Corp. Priv. Litig.*, 379 F. Supp.2d 299, 307 (E.D.N.Y. 2005) (Jetblue's passenger reservations system is not an electronic communications service). As such, Counts X and XI must be dismissed.

### J. Plaintiff Fails to State a Claim for Computer Fraud and Abuse Act Because He Did Not Suffer any Damage or Loss.

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, provides for the entry of civil injunctive relief as well as the recovery of money damages against a person that knowingly or intentionally accesses a computer without authorization in certain scenarios. *See* 18 U.S.C. § 1030. However, only a person who has suffered a damage or loss can bring a civil action. *Id.* § 1030(g) (providing that "[a]ny person who suffers ***damage*** or ***loss*** by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief") (emphasis added). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). "Courts have interpreted the CFAA's definition of damage to include the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'" *Navistar, Inc. v. New Balt. Garage, Inc*., 11-CV-6269, 2012 WL 4338816, at *7 (N.D. Ill. Sep. 20, 2012) quoting *Cassetica Software, Inc. v. Computer Sciences Corp*., 09 C 0003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009). The CFAA defines the term "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). Plaintiff completely fails to allege any impairment to his computer or any cost he incurred in responding to purported losses, which is fatal to his claim. Regardless, there are no

allegations that VillageMD knowingly or intentionally accessed plaintiff's computer without authorization. At most, plaintiff alleges that he voluntarily visited VillageMD's website and exchanged some routine information that was disclosed to third parties, which was disclosed in the Privacy Policy. Accordingly, plaintiff fails to establish a claim under the CFAA.

## VI. CONCLUSION

Based on the foregoing, VillageMD respectfully requests the Court to grant its motion to dismiss in its entirety and dismiss the SAC with prejudice.

Dated: September 13, 2024

By: /s/ Jeffrey B. Margulies

Edward Casmere
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607
Tel: (312) 964-7800
Fax: (312) 964-7799
ed.casmere@nortonrosefulbright.com

Yvonne K. Puig (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP 98
San Jacinto Boulevard, Suite 1100 Austin,
Texas 78701-4255
Tel: (512) 536-2450
Fax: (512) 536-4598
yvonne.puig@nortonrosefulbright.com

Jeffrey B. Margulies
Eva Yang (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
555. South Flower Street, 41st Floor Los
Angeles, California 90071
Tel: (213) 892-9400
Fax: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com

***Counsel for Defendant Village Practice Management Company, LLC***

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 13, 2024 a true and correct copy of the foregoing Rule 12(b)(6) Motion to Dismiss was served on counsel of record via the Court's electronic filing system.

*/s/ Eva Yang*
Eva Yang