**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ANGEL RODRIGUEZ, Individually, and on behalf of all others similarly situated,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**VILLAGE PRACTICE MANAGEMENT COMPANY, LLC D/B/A VILLAGE MEDICAL D/B/A VILLAGEMD**<br><br>**Defendant.** | **Civil Action No. 1:24-cv-02882**<br><br>**Judge John J. Tharp, Jr.** |

**PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STANDARD ........ 2

III. STATEMENT OF FACTS ........ 3

IV. ARGUMENT ........ 4

A. The Court Cannot Consider Information from Outside the Complaint ........ 4

B. PLAINTIFF SUFFICIENTLY ALLEGED DISCLOSURE OF PHI AND PII ........ 6

C. PLAINTIFF SUFFICIENTLY ALLEGED EACH OF HIS CLAIMS ........ 7

i. Plaintiff Sufficiently Alleged Negligence ........ 7

a. Plaintiff sufficiently alleged Defendant's Disclosure breached its duty of confidentiality, causing him loss of privacy ........ 8

b. Plaintiff sufficiently alleged negligence per se under the FTC Act and HIPAA ........ 9

ii. Plaintiff Sufficiently Alleged Intrusion Upon Seclusion ........ 10

iii. Plaintiff Sufficiently Alleged Breach of Contract ........ 13

iv. Plaintiff Sufficiently Alleged Unjust Enrichment ........ 14

v. Plaintiff Sufficiently Alleged Breach of the Duty of Confidentiality ........ 15

vi. Plaintiff Sufficiently Alleged her Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") ........ 17

vii. Plaintiff Sufficiently Alleged Defendant Violated the Illinois Wiretap Act. 19

viii. Plaintiff Sufficiently Alleged Violation of Electronic Communications Privacy Act ........ 19

ix. Plaintiff Sufficiently Alleged Violation of the Computer Fraud and Abuse Act ........ 20

V. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D., et al., v. Aspen Dental Management, Inc.*, No. 24 C 1404, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ....................1, 19, 20

*Arroyo v. Seattle Reproductive Medicine, PLLC*, 2024 WL 4288083 (Wash.Super. Sep. 23, 2024) ....................5

*In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573 (N.D. Ill. 2022) ....................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................2

*City of Chicago v. Michigan Beach Hous. Co-op.*, 297 Ill. App. 3d 317 (1998)....................14

*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996) ....................18

*Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077 (2007) ....................1

*Flores v. Aon Corp.*, 2023 IL App (1st) 230140.................... *passim*

*Geisberger v. Willuhn*, 72 Ill. App. 3d 435 (1979) ....................14, 15, 16, 17

*Hartley v. University Of Chicago Medical Center, et al.*, No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ....................2, 11, 19, 20

*Hartman v. Meta Platforms, Inc.*, 2024 WL 4213302 (S.D. Ill. Sept. 17, 2024)....................5

*Howard v. Renal Life Link, Inc.*, 2010 WL 4483323 (N.D. Ill. Nov. 1, 2010)....................7

*Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355 (7th Cir. 2017) ....................13

*Karon v. CNU Online Holdings, LLC*, 2019 WL 3202822 (N.D. Ill. July 16, 2019)....................5

*Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023)....................2, 8, 13

*Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024).................... *passim*

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................2, 11, 17

*Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................2, 6, 11, 14

*Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)................1, 11, 13

*Langston v. Mid-Am. Intercollegiate Athletics Ass'n*, 448 F. Supp. 3d 938 (N.D. Ill. 2020)..........................................................................................................................13

*Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 (2012)...............................................................10

*Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U...........................2, 13, 15

*M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) .......................................................................................................................12

*McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) .....................................................................................................................11, 12

*Moore v. Wausau Club*, 777 F. Supp. 619 (N.D. Ill. 1991) .........................................................11

*Norfolk Cnty. Ret. Sys. v. Ustian*, 2009 WL 2386156 (N.D. Ill. July 28, 2009).............................2

*Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749 (C.D. Ill. 2020).......................................................9

*Posner v. Davis*, 76 Ill. App. 3d 638 (1979) .................................................................................14

*Reyes v. City of Chicago*, 585 F. Supp. 2d 1010 (N.D. Ill. 2008)...................................................2

*Santorini Cab Corp. v. Banco Popular N. Am.*, 2013 IL App (1st) 122070.................................14

*Smith, et al. v. Loyola University Medical Center,* 2024 WL 3338941 (N.D. Ill. July 9, 2024)................................................................................................................ *passim*

*Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969 (7th Cir. 2011) ......................9

*Vance v. Bureau of Collection Recovery LLC*, 2011 WL 881550 (N.D. Ill. Mar. 11, 2011) .........................................................................................................................7

*Wall v. Domnick Cunningham & Whalen, PLLC*, 2017 WL 5891330 (N.D. Ill. Nov. 28, 2017) .......................................................................................................................9

**Statutes**

Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030........................................................20

Federal Electronic Communications Privacy Act, 18 U.S.C. § 2511 .....................................19, 20

FTC Act Section 5, 15 U.S.C. § 45.............................................................................................8, 9

Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d *et seq.* ("HIPAA").................................................................................................8, 9, 16

Illinois Code of Civil Procedure, 735 ILCS 5/8-802 ....................16

Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 et seq. ....................17, 18

Illinois Eavesdropping Act, 720 ILCS 5/14-2 ....................19

Illinois Medical Patients' Rights Act, 410 ILCS 50/3 § 3(a), (a) ....................16

Illinois' Personal Information Protection Act, 815 ILCS 530/1 et seq. ("PIPA") ....................8

**Other Authorities**

Federal Rule of Civil Procedure 8 ....................2, 7

Federal Rule of Civil Procedure Rule 9(b) ....................7

Federal Rule of Civil Procedure Rule 12 ....................2, 7

Restatement of Torts § 892B (1979) ....................11

## I. INTRODUCTION

Defendant Village Practice Management Company, LLC d/b/a Village Medical d/b/a VillageMD ("Defendant"), purposefully installed third-party trackers on its website. When patients like Angel Rodriguez ("Plaintiff") visited the website, including authenticated portions like the patient portal and appointment scheduler, the trackers recorded patients' confidential health communications with Defendant. The trackers then disclosed those communications to third parties, like Facebook and Google, without patient consent or knowledge. These allegations go far beyond Defendant's assertion of websites that do not require PHI or PII.

"Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiff's personal, private, confidential health information to third parties.

Illinois state courts, Illinois federal courts—including this very district—the Seventh Circuit, and courts across the country all agree—claims like Plaintiffs' are legally valid. *See, e.g., Kurowski et al. v. Rush*, No. 22 C 5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's motion for judgment on the pleadings and allowing claims to proceed); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (in online tracking technology case, denying motion to dismiss and allowing claims to proceed); *A.D., et al., v. Aspen Dental Management, Inc.*, No. 24 C 1404, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*"); *Smith, et al. v. Loyola University Medical Center,* No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill.

July 9, 2024) ("*Loyola*"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U ("*Lozada*") (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same); *see also* Exhibit A-1 (listing **over eighty** orders denying motions to dismiss in healthcare online tracking technology cases with identical allegations and identical claims to those here).

Defendant presents no valid legal reason why Plaintiff's claims should be dismissed. Plaintiff sufficiently stated her claims. Defendant failed to meet its heavy burden, and Plaintiff thus asks that this Court deny Defendant's motion to dismiss in its entirety.

## II. STANDARD

Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion "does not require 'detailed factual allegations'"; it merely needs "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor." *Norfolk Cnty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *3 (N.D. Ill. July 28, 2009). "[D]efendants have the burden of demonstrating the legal insufficiency of the complaint—not the plaintiffs or the court." *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008).

## III. STATEMENT OF FACTS

Defendant functions as a trusted Illinois healthcare provider. Second Amended Class Action Complaint ("Compl.") ¶¶ 32, 38-43. Plaintiff is Defendant's patient and has received healthcare services from Defendant, including primary care and mental health treatment. *Id.* ¶¶ 148-159. As part of Plaintiff's medical care, at Defendant's direction and encouragement, Plaintiff relied on Defendant's website to communicate confidential patient information, including to: browse the Website; to find a doctor on the "Find a provider" function, to wit, the names of his primary care and family practice providers, including for his mental health; to search for practice locations closer to his home; to research treatments for mental health and primary care; and Plaintiff used the patient portal, including to schedule appointments. *Id.*

Plaintiff reasonably expected that his communications with Defendant were confidential and would not be transmitted to or intercepted by a third party—in essence, that the information would be safeguarded according to Defendant's Privacy Policies and the law. *Id.* Defendant argues Plaintiff consented to Defendant's Disclosure via its Privacy Policies (MTD p. 3), but Defendant does not cite the complaint for that assertion, because it can't. Rather, the Court should accept Plaintiff's allegation that **he did not consent to Defendant's Disclosure** of his Private Information to third parties. *Id.* ¶¶ 14, 144, 147. Indeed, Defendant promises patients in its own Privacy Policies that "**[w]e will not use or disclose your health information . . . unless you authorize us, in writing** . . . Specific examples of uses or disclosures requiring written authorization include the use of psychotherapy notes, marketing activities, the sale of your health information and most uses and disclosures for which we are compensated." *Id.* ¶¶ 95-107 (emphasis added to original). Defendant's argument, that Plaintiff consented, is directly contrary to this allegation.

Unfortunately, Defendant does share protected health information without written authorization. *Id.* ¶¶ 1, 24. Defendant does so via "trackers" or "tracking technologies," that it

knowingly configured and implemented into its Website. *Id.* ¶ 1, 10. These trackers collected and transmitted patients' Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") (collectively, "Private Information") to Facebook, Google, Adobe, New Relic, Microsoft, AdRoll, Datadog, AppNexus, and potentially others (the "Third Parties"), without patients' knowledge or authorization ("the Disclosure"). *Id.* This Private Information included Plaintiff's seeking of medical treatment, searches for treatment locations, Plaintiff's location, Plaintiff's searches for medical care, the mental health and primary care treatments Plaintiff viewed, Plaintiff's status as a patient, Plaintiff's use of the patient portal, Plaintiff's scheduling of appointments, and Plaintiff's identity. *Id.* ¶ 157.

Defendant's Disclosure was for the purpose of marketing its services, enhancing its marketing efforts, and bolstering its profits. *Id.* ¶¶ 1, 7, 19, 27, 47, 55, 71. The Third Parties, in turn, sold Plaintiff's Private Information to fourth-parties. *Id.* ¶¶ 19, 55, 81, 88. As a direct result of Defendant's and the Third Parties' sale of his Private Information, Plaintiff receives targeted advertisements directly related to the treatment he sought from, and Private Information he shared with, Defendant. *Id.* ¶¶ 159. Because of Defendant's actions, Plaintiff suffered injuries, including monetary damages, loss of privacy, statutory damages, unauthorized disclosure of and access to his Private Information to third parties and fourth parties, use of his Private Information for advertising purposes, embarrassment, humiliation, frustration, and emotional distress, diminution of the value of his Private Information, lost benefit of his bargain, and increased risk of future harm from further unauthorized use and disclosure of his information. *Id.* ¶¶ 159.

## IV. ARGUMENT

### A. The Court Cannot Consider Information from Outside the Complaint

As an initial matter, the Court cannot consider Defendant's "Exhibit A." Considering this unauthenticated, purported copy of Defendant's privacy policy is inappropriate at this stage.

Defendant makes little argument for its inclusion, referencing only the general standard that the Court *may* consider documents incorporated by reference—a standard which does not mandate consideration. MTD p. 4; *see Hartman v. Meta Platforms, Inc.*, 2024 WL 4213302, at *8 (S.D. Ill. Sept. 17, 2024) ("eligibility under the incorporation-by-reference doctrine does not mandate the Court's consideration of extraneous documents at the motion to dismiss stage"). Contrary to Defendant's vague argument, Defendant's attached privacy policy—as well as its urging the Court to visit its website—is wildly inappropriate for the Court's consideration. One cannot determine, for example, the date upon which content was generated. This is especially true when Defendant operates the website and has the authority and capacity to alter, amend and revise the website content—such as the privacy policy—at on a whim, including to influence its liability in this case. As recognized by Illinois federal courts, consideration of such purported evidence is inappropriate at this stage. *See Hartman*, 2024 WL 4213302, at *8 (refusing to consider Defendant's attachments on motion to dismiss, including privacy policies, reasoning "it is entirely possible that prior versions of the privacy notices contained different language" and that "it does not capture the full spectrum of terms, conditions, and disclosures that Plaintiffs agreed to"); *Karon v. CNU Online Holdings, LLC*, 2019 WL 3202822, at *2 (N.D. Ill. July 16, 2019) ("The printed portions of [defendant's] website. . . are outside the complaint altogether and inappropriate for judicial notice."); *see also Arroyo v. Seattle Reproductive Medicine, PLLC*, 2024 WL 4288083, at *1 (Wash.Super. Sep. 23, 2024) (healthcare online tracking technology case; denying request for judicial notice of—and refusing to consider—defendant's webpage).

But even when the Court does consider Defendant's purported evidence, the privacy policies *still* establish Plaintiff's non-consent. While Defendant asserts that it provides detailed information regarding the use of tracking technologies for marking purposes, those very policies

attached and cited by Defendant clearly state: **"Unless you expressly consent to let us do so, your personally identifiable information, including your e-mail address, will not be sold, rented, licensed, or otherwise shared with third parties."** MTD Ex. A, p. 3.[1] Nowhere within those policies does Defendant disclose that it shares patients' personally identifiable information with third parties, much less that it does so for marketing purposes.[2] Under Illinois law, Defendant's argument must be rejected. *See Kurowski II*, at *51 (rejecting defendant's disclosure/consent argument where, "In both the T&Cs and the various privacy policies and statements incorporated within them, [defendant] makes a series of promises not to share or sell patients' personally identifiable information or their confidential health information without their consent.").[3]

**B. PLAINTIFF SUFFICIENTLY ALLEGED DISCLOSURE OF PHI AND PII**

Defendant opens its argument with the assertion that Plaintiff failed to allege Defendant's disclosure of PHI or PII, contending that Plaintiff makes only conclusory allegations or allegations related to webpages that do not collect PII or PHI. MTD p. 5-6.[4] Defendant misstates or otherwise ignores Plaintiff's allegations.

Focusing first on Defendant's argument about the patient portal, Defendant implicitly

---

[1] Notably, Defendant's Exhibit is also clearly incomplete, leaving Plaintiff and the Court to guess at what it has omitted. For example, the paragraph at the bottom of page four leaves off at "This list may be updated and modified from time to time by VillageMD, at its sole and absolute"; page five starts "maintained as long as VillageMD deems appropriate to fulfill the purpose for which you provided the information…" MTD Ex. A p. 4-5.

[2] While Defendant may point to its policy that "we may share that [non-personally identifiable] information with business partners, third-party vendors working on our behalf, or our health and wellness sponsors," Defendant *also* states that such disclosure is "to improve our Service," not for the purpose of marketing. MTD Ex. A, p. 4; *see also* p. 6 ("they may directly collect your information to carry out the services they are performing **for you or for us**" (emphasis added). Furthermore, "non-personally identifiable information" does not include the personally identifiable health information Plaintiff alleges Defendant Disclosed.

[3] Defendant references its attached Privacy Policies throughout its argument, and Plaintiff objects on the same bases throughout without reiterating them ad nauseum.

[4] Defendant again asks the Court to look at its outside-the-complaint website by clicking a URL. As explained, this is inappropriate on motion to dismiss.

concedes that patient portal activities *do* require PHI and PII. And Plaintiff plainly alleged that Defendant disclosed Plaintiff's "activities on the patient portal." Compl. ¶ 20. Like the Court, Defendant must accept this factual allegation as true at this stage. Defendant's argument further ignores Plaintiff's allegations that, from his use of Defendant's website, it disclosed: Plaintiff's status as a patient, identity, browsing history, including seeking of medical treatment, searches for treatment locations, searches for a doctor including for primary care and mental health treatment, research for mental health and primary care treatment, Plaintiff's location, use of the patient portal, and scheduling appointments. *Id.* ¶¶ 150, 157. Defendant does not even reference these allegations, or deign to actually explain how they are not PHI or PII. Concluding that these allegations are not PHI or PII, as Defendant asks, would require ignoring Plaintiff's allegations and making vast inferences in favor of Defendant, which is inappropriate on motion to dismiss.

Defendant also argues that Plaintiff's "information and belief" allegations fail to meet the pleading standard. First, Plaintiff's allegations are backed with factual support, including 147 factual background paragraphs. *See* Compl. ¶¶ 1-147. Furthermore, Defendant itself admits that its citation is "in context of a fraud claim." MTD p. 6. Defendant's reference to the heightened pleading standard of Rule 9(b) entirely fails to meet its own burden under Rule 12, of showing Plaintiff's claims failed under Rule 8(a). *See, e.g.*, *Vance v. Bureau of Collection Recovery LLC*, 2011 WL 881550, at *3 (N.D. Ill. Mar. 11, 2011) ("The Seventh Circuit has specifically recognized that there is nothing *per se* improper about pleading allegations 'upon information and belief.'"). Indeed, "allegations based on 'information and belief' are acceptable under Rule 8(a)." *Howard v. Renal Life Link, Inc.*, 2010 WL 4483323, at *3 (N.D. Ill. Nov. 1, 2010).

### C. PLAINTIFF SUFFICIENTLY ALLEGED EACH OF HIS CLAIMS

#### *i. Plaintiff Sufficiently Alleged Negligence*

Defendant's disclosure of Plaintiff's Private Information breached it its duty of

confidentiality under common law, the FTC Act, HIPAA, industry standards, and Illinois statute, causing his injury. Compl. ¶¶ 116-135, 175-195, 249-257. Illinois courts find such claims meritorious. *See, e.g. Flores*, at *4-5; *Loyola*, at *7; *Krupa*, 2023 WL 143140.[5]

a. Plaintiff sufficiently alleged Defendant's Disclosure breached its duty of confidentiality, causing him loss of privacy

"[T]he complaint plausibly alleges a duty to prevent the disclosure of [Plaintiff's] private health information." *Loyola*, at *7. This duty, arises under, for example, the "Illinois' Personal Information Protection Act ("PIPA") [which] requires data collectors. . . to protect this information from 'unauthorized access, acquisition, destruction, use, modification, or disclosure.'" *Id.* Defendant breached this duty by disclosing Plaintiff's information to unauthorized Third Parties.

As *Flores* held, a Defendant who collects personal information from its customers has a common law duty to safeguard that information. *Flores*, ¶ 24; *see also Wittmeyer*, 2024 WL 182211, at *2 (recognizing the Illinois Appellate court's holding "there exists a duty of care to protect personal information . . . under both PIPA and the common law"). "[I]t is foreseeable that a failure to maintain reasonable security measures would allow unauthorized third parties to gain access to stored personal information, and it is likely that a data breach of this information would cause injury to the individuals that the personal information belongs to." *Id.* ¶ 24.

Defendant's argument that it did not breach its duty rewrites Plaintiff's allegations. Defendant contends that it disclosed that it placed trackers on its website and that Plaintiff consented to that action because its privacy policy states: "third parties may automatically collect information about you using their own cookies or other technologies, or may otherwise collect or have access to information about your visits to this Service and other websites, your IP address, your ISP, the browser you use to visit a Service and other usage information." MTD p. 7. However,

[5] *See also* Exhibit A-3, A-4 (listing orders allowing negligence/negligence per se claims).

Plaintiff's allegations are not directed towards "third parties" or their actions; rather, it specifically alleges that "***Defendant*** knowingly configured and implemented into ***its website,*** https://www.villagemedical.com/ (the 'Website') code-based tracking devices known as 'trackers' or 'tracking technologies,' which collected and transmitted patients' Private Information to Facebook, and other third parties, without patients' knowledge or authorization." Compl. ¶ 10.

Moreover, as the Seventh Circuit has observed, under Illinois law, "breach of duty present[s] a question[] of fact." *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) (citing *Thompson v. Gordon*, 241 Ill.2d 428 (2011)). And "it is well settled that it is improper for a court to decide a question of fact on a motion to dismiss for failure to state a claim." *Wall v. Domnick Cunningham & Whalen, PLLC*, 2017 WL 5891330, at *3 (N.D. Ill. Nov. 28, 2017) (quoting *Buschmann v. Prof'l Men's Ass'n*, 405 F.2d 659, 663 (7th Cir. 1969)).

Finally, Defendant makes a meagre argument that Plaintiff failed to allege sufficient damages. But as the District Court for the Northern District of Illinois explained in just this context in *Loyola*, the damages element is met where, as here, "plaintiffs allege that they have suffered 'fear, anxiety and worry' about the status of, and the loss of control over, their private health information." *Loyola*, at *7; Compl. ¶ 159(h). This allegation alone is sufficient. Accordingly, the Court should deny Defendant's motion to dismiss Plaintiff's negligence claim.

b. Plaintiff sufficiently alleged negligence per se under the FTC Act and HIPAA

Defendant's contention that Plaintiff's negligence *per se* claim fails because HIPAA and the FTC Act do not provide for strict liability is incorrect. As the Illinois Court of Appeals explained, a "defendant's alleged violations of the FTC Act c[an] be offered as prima facie evidence of defendant's negligence." *Flores*, ¶ 28. That is just what Plaintiff seeks to do here. Thus, as the United States District Court for the Central District of Illinois held, "the FTC Act can serve as the basis of a negligence per se claim." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760

(C.D. Ill. 2020). Courts around the country have found similar allegations sufficient for a negligence *per se* claim. Again, this Court should deny Defendant's motion.

*ii. Plaintiff Sufficiently Alleged Intrusion Upon Seclusion*

To state a claim for intrusion upon seclusion, a plaintiff must allege: "(1) []an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Flores*, ¶ 51. Here, Plaintiff sufficiently pled an intrusion upon seclusion claim by alleging that he had a reasonable expectation of privacy in communicating his sensitive Private Information to Defendant—his medical provider—on its website, and Defendant utilized secret trackers to disclose that Private Information to unauthorized third parties without Plaintiff's consent, an act that is highly offensive to a reasonable person which caused Plaintiff embarrassment, humiliation, frustration, and emotional distress. Compl. ¶¶ 12, 15, 25, 73-74, 108-111, 140-145, 152-159, 196. Courts in Illinois and across the country have found similar claims have merit. *See Flores*, ¶52; *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 (2012).[6]

Village first suggests that because its "Privacy Policy informs Plaintiff that his information could be disclosed," Plaintiff's claim somehow fails. MTD p. 10. However, this assertion is baseless as Defendant's Privacy Practices states the opposite:

> Specific examples of uses or *disclosures requiring written authorization* include the use of psychotherapy notes, *marketing activities*, *the sale of your health information* and most uses and disclosures for which we are compensated.

Complaint, Ex. C (emphasis added). Plaintiff alleges repeatedly that Defendant disclosed Plaintiff's Private Information for marketing purposes and that Plaintiff never consented to Defendant sharing his Private Information with Third Parties for such purposes. Compl. ¶¶ 7, 19,

[6] Exhibit A-7 (listing orders denying similar motions to dismiss privacy claims).

27, 47, 81, 99, 105-108, 142-144, 156, 196. Accordingly, the Court should disregard this argument.

Village next cites *Hartley*, at *7, and *Kurowski I*, at 943-44 for the proposition that disclosure or publication of private Personal Information by the healthcare provider is not an "intrusion."[7] MTD p. 10. But these cases are unpersuasive given the allegations here. The *Hartley* and *Kurowski* courts reasoned that because the "the allegedly intercepted communications were intended to reach [the defendant healthcare provider]" and the "actual intrusion upon patients' seclusion, via interception of their communications, [was] carried out by third parties" the plaintiffs' intrusion upon seclusion claims failed. *Hartley*, at *7; *Kurowski I*, at 943-944. In contrast, here, Plaintiff alleged that the invasion was carried out by *Defendant* when it installed trackers on its website. *See* Compl. ¶¶ 22, 47, 110. In just this context, another district court explained why the *Hartley* and *Kurowski* reasoning is unpersuasive:

> the voluntariness of [the plaintiffs'] actions is immaterial to the intrusion upon seclusion claim. Plaintiffs allege that they were unaware that their [PHI] would be disclosed to third parties. Thus, any consent given to Defendant to use [the PHI] for a limited purpose was invalid for Defendant's larger ultimate purpose."

*McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, *30 (D. Ariz. May 10, 2024), The court then cited to the Second Restatement of Torts § 892B (1979)—which Illinois has also adopted[8]—and which states:

> If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

---

[7] In each of these cases, the plaintiffs' claims involving the defendant healthcare provider sharing PHI with third party technology companies via hidden website trackers were allowed to proceed in subsequent rulings by the same court. *See Kurowski II* (allowing claims to proceed); *Kurowski III* (same); *Kurowski IV* (same); *Hartley* (denying motion to dismiss wiretap claim).

[8] *See Moore v. Wausau Club*, 777 F. Supp. 619, 620 (N.D. Ill. 1991) ("Illinois has adopted the approach of the Restatement (Second) of Conflict of Laws for issues of tort law.").

*Id*. at *30. That those plaintiffs did not consent to third party technology companies gaining access to their Private Information was sufficient to sustain an intrusion upon seclusion claim. Such reasoning has been adopted by numerous Courts around the country, including by the Illinois First District Appellate Court. *See, e.g., M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, *16 (D. Or. Aug. 28, 2024) (plaintiff alleged an intentional intrusion where she voluntarily disclosed PHI to the defendant as a part of the patient-physician relationship, but never intended Google and Facebook to receive it); *Flores*; Exhibit A-6.

The Court should not reward Defendant's deception and should follow the well-reasoned authority above. As in *McCulley*, Plaintiff has alleged that Defendant placed hidden trackers on its website with knowledge that the Private Information Plaintiff input into the website would be transferred to third parties. Compl. ¶¶ 12, 15, 25, 72-74, 108-111, 140-143, 154-156. Thus, Plaintiff cannot be said to have "voluntarily" provided his Private Information to Defendant when the tracking technologies Defendant employed were invisible to him. *Id.* Furthermore, Defendant a healthcare provider, made affirmative representations to Plaintiff, its patient, that it was not collecting or selling his personally identifying Private Information. *Id.* ¶¶ 99-107. This is sufficient to state a claim for intrusion upon seclusion under Illinois law. *See Johnson v. K mart Corp*., 311 Ill. App. 3d 573, 579 (1st Dist. Jan. 13, 2000) (finding facts to support an intrusion upon seclusion claim where the plaintiffs had a reasonable expectation that their conversations with fake "coworkers," who were secret agents of their employer, would remain private, and that any disclosures obtained through this deception were not voluntary disclosures).

As Defendant has failed to meet its burden to demonstrate Plaintiff has not plausibly alleged his claim and Defendant is clearly on notice of this claim and can formulate a defense, its motion to dismiss Plaintiff's intrusion upon seclusion claim should be denied.

*iii.* *Plaintiff Sufficiently Alleged Breach of Contract*

Plaintiff sufficiently alleged a contract implied in Defendant's conduct: Plaintiff provided monetary compensation to Defendant in exchange for medical care. Compl. ¶¶ 271-81. As a condition of medical care, Defendant required its patients to provide their private, confidential, health information. *Id.* In return, Defendant provided its patients with promises or terms of the contract through its conduct, privacy policies, elsewhere—its implied, implicit, elevated duty as health care provider, and good faith duties—to keep that private, confidential, health information secure and confidential. *Id.* These are terms that were not only provided in the Privacy Policies but were also implied by conduct. When, in the course of conduct, health care providers require patients to provide confidential information, the implied promise is that health care providers will keep this *confidential* information *confidential*—in the same condition it received it. Defendant failed to do this, and thus breached its contractual obligations. *Krupa*, 2023 WL 143140; *Kurowski III*, 2023 WL 8544084; *Lozada*, 2018 IL App (1st) 180320-U.[9]

Defendant asks the court to dismiss this claim based on the idea that plaintiff has an express contract claim, rather than an implied one. MTD p. 11. While Plaintiff appreciates the concession that he has a valid express contract claim, Defendant's argument is legally incorrect—at this stage of litigation the Court need not resolve questions of alternative claims or theories. *See, e.g., Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 366 (7th Cir. 2017) ("The Federal Rules of Civil Procedure—which allow alternative and even inconsistent pleadings and take a permissive view of amendments—are drafted flexibly so parties may tailor their theories as they conduct discovery and learn more about the case."); *Langston v. Mid-Am. Intercollegiate Athletics Ass'n*, 448 F. Supp. 3d 938, 954 (N.D. Ill. 2020) ("the Federal Rules of Civil Procedure

[9] *See also* Exhibit A-5 (listing orders denying similar motions to dismiss contract claims)

allow [a plaintiff] to allege breaches of express and implied contract in the alternative.").

Defendant reiterates its inappropriate argument on its attached privacy policies, which Plaintiff already addressed above. *See Kurowski II,* at *851 (rejecting such argument in the context of breach of contract). Finally, Defendant argues Plaintiff failed to sufficiently allege damages. But Illinois law is clear: "A defrauded purchaser is entitled to damages which will give him the 'benefit of his bargain'"—a harm which Plaintiff alleged and which is solely sufficient. *Posner v. Davis*, 76 Ill. App. 3d 638, 644–45 (1979); Compl. ¶ 159(c), (j); *see also, e.g.*, *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979) ("The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of "personal" information, E. g., information relating to the patient's mental or physical condition or the physician's diagnosis or treatment."); *City of Chicago v. Michigan Beach Hous. Co-op.*, 297 Ill. App. 3d 317, 324 (1998) ("Benefit-of-the-bargain damages are developed by 'assessing the difference between the actual value of the property sold and the value the property would have had if the representations had been true.'"); *Santorini Cab Corp. v. Banco Popular N. Am.*, 2013 IL App (1st) 122070, ¶ 26 ("The measure of damages for breach of contract is the amount that will compensate the aggrieved party for the loss 'which either fulfillment of the contract would have prevented or which the breach of it has entailed.'"). Plaintiff further alleged decreased value of his private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant's unauthorized sale of Plaintiff's Private Information, increased risk of future harm, and statutory damages. Compl. ¶ 159; *see e.g., In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022) (damages sufficient for breach of implied contract include "loss of the economic value of purchases"). Defendant does not even engage with these allegations.

*iv. Plaintiff Sufficiently Alleged Unjust Enrichment*

Plaintiff sufficiently alleged unjust enrichment when he alleged he conferred his PHI upon

Defendant under the promise it would not disclose his PHI, Defendant disclosed his PHI, and it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiff's PHI under the premise of confidentiality. Compl. ¶¶ 282-89; *see Lozada*, at ¶ 37.[10]

Defendant argues unjust enrichment is not a standalone claim. "Rather, it is condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence or, alternatively, it may be based on contracts which are implied in law." *Lozada*, ¶ 35 (citations omitted). Thus Plaintiff's claim is proper as pleaded, in combination with Plaintiff's contract and Illinois state statutory claim. And again, claims in the alternative are allowed under the federal pleading standard at this stage.

Defendant also argues Plaintiff failed to allege Defendant retained any benefit. MTD p. 13. Plaintiff absolutely alleged he conferred a monetary benefit on Defendant—Plaintiff alleged he paid Defendant for medical services, and the services he paid for were supposed to include reasonable privacy and data security protections for his Private Information, but due to Defendant's Disclosure, Plaintiff did not receive the privacy and security protections for which he paid. Compl. ¶¶ 282-89. These allegations are sufficient. *See Lozada*, ¶ 37 ("Plaintiffs alleged that they conferred a benefit on [defendant] by paying for data security services; [defendant] accepted payment but did not to provide those services; it would be unjust for [defendant] to retain the conferred benefit; and [defendant's] retention of the conferred benefit violates principles of justice, equity, and good conscience."). Defendant's motion to dismiss must be denied.

*v. Plaintiff Sufficiently Alleged Breach of the Duty of Confidentiality*

Disclosures which violate the statutory privilege between a patient and their healthcare provider define what is actionable under a contract theory. *Geisberger*, 72 Ill. App. 3d at 438.

[10] *See* Exhibit A-6 (listing orders allowing unjust enrichment claims).

Three statutes set forth Defendant's duty to maintain the confidentiality of Plaintiff's sensitive Private Information: the Medical Patients' Rights Act, 410 ILCS 50/3 § 3(a)[11], § 735 ILCS 5/8-802 of the Illinois Code of Civil Procedure[12], and HIPAA.[13]

A plaintiff brings a cause of action under a breach of the implied duty of confidentiality theory when a healthcare provider discloses her "personal" information, *e.g.,* information relating to the patient's mental or physical condition or the physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438. Here, Plaintiff alleges that he received healthcare services from Defendant, Defendant agreed to keep his Private Information confidential, Defendant is bound by at least three statutes which establish the physician-patient privilege, and Defendant breached the implied duty of confidentiality to Plaintiff by intentionally deploying online tracking technology on its Website which transmitted Plaintiff's Private Information to Third Parties like Facebook. Compl. ¶¶ 31, 97-106, 108-111, 140-143, 157-158, 291-299. Therefore, Plaintiff has adequately pled a breach of the implied duty of confidentiality claim under Illinois law.

Defendant cites *Kurowski* to suggest that Plaintiff's claim fails because plaintiff has not alleged "the disclosure of any information related to the provision of treatment." MTD p. 13-14.

---

[11] (a) The right of each patient to care consistent with sound nursing and medical practices, to be informed of the name of the physician responsible for coordinating his or her care, to receive information concerning his or her condition and proposed treatment, to refuse any treatment to the extent permitted by law, and *to privacy and confidentiality of records except as otherwise provided by law*. (emphasis added).

[12] *No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character*, necessary to enable him or her professionally to serve the patient, except only (1) in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide, (2) in actions, civil or criminal, against the physician for malpractice, (3) with the expressed consent of the patient . . . (emphasis added).

[13] 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501, 164.508(a)(3), 164.514(b)(2)(i) provides that a covered healthcare entity "*must obtain an authorization for any use or disclosure of protected health information for marketing*." (emphasis added).

Defendant also, again, falsely claims that its Privacy Policy "expressly provides for the disclosure of personal information." As discussed extensively *supra*, Defendant's Privacy Policy does not say anything of the sort. In fact, it states that it may disclose its patients' Private Information only with their *express written authorization*. Compl Ex. C. Thus, the Court should reject this argument.

Furthermore, Plaintiff's allegations are not analogous to those made in *Kurowski*. Here, Plaintiff alleges that Defendant disclosed the following: his seeking of medical treatment, his searches for treatment locations, his location via the zip code he searched, his searches for physicians, including the names of the physicians he searched for and viewed, and/or their specialties, the mental health and primary care treatments he viewed, his status as a patient of Defendant, information concerning his use of the patient portal, including what appointments he scheduled, and his *identity* – to Facebook and other technology companies. Compl. ¶ 157. Plaintiff further alleges that after he used Defendant's website, eerily personal advertisements for "mental health outpatient clinics" from Village began appearing in his Facebook feed and he began to see other seemingly tailored advertisements related to ADHD and depression. *Id.* ¶ 151. Such allegations clearly state information relating to Plaintiff's mental or physical condition and his physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438. Indeed, the *Kurowski* court acknowledged that allegations setting forth unauthorized disclosures of a patient's mental or physical condition, the patient's name, and violations of the statutory patient-privilege would be actionable under a breach of implied duty of confidentiality theory. *Kurowski I*, at 940-41. Therefore, Defendant failed to meet its burden on this claim as well, and its motion must be denied.

*vi. Plaintiff Sufficiently Alleged her Illinois Consumer Fraud and Deceptive Practices Act ("ICFA")*

Next, Defendant contends Plaintiff's IFCA claim must fail because plaintiff allegations that Defendant promised not to use Plaintiff's PHI for marketing purposes prior to obtaining

consent, "is simply not plausible given [Defendant's] Privacy Policy. MTD p. 14. Defendant states, without support, that Plaintiff's allegations of deception are "bald assertion[s]" and "conclusory allegations" that are insufficient to state an ICFA claim. *Id.* This is an absurd argument. First, as discussed above, Defendant's Privacy Policy makes an express promise to seek its patients' written authorization for any use of their Private Information for marketing activities. Compl. Ex. C. Plaintiff alleges that, despite this promise, Defendant indeed disseminated Plaintiff's Private Information for marketing purposes without his authorization or consent. Compl. ¶¶ 7, 19, 27, 47, 81, 99, 105-108, 142-144. It is unclear how these allegations are conclusory or how they could be a "bald assertions." In fact, Plaintiff's allegations of deception are plead with the specificity required under Illinois law. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 497 (1996) (holding that representations are alleged with sufficient specificity when they set forth "what the statement was, when it was made, who made it, and to whom it was made.") Moreover, Plaintiff's allegations are sufficient to state in ICFA claim. *See In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 526 (N.D. Ill. 2011) (finding that defendant ignoring its obligations to prevent exposure of Plaintiff's personal information constituted an unfair practice under ICFA).

Defendant then claims that Plaintiff has failed to plead an actual pecuniary loss. MTD p. 15. This argument ignores Plaintiff's Complaint. Under ICFA, actual damages includes any economic loss, and Plaintiff has alleged suffering monetary damages and diminution of his Private Information. Compl. ¶ 159. Plaintiff further alleged, as outlined in the claims above, that he paid for medical services and confidentiality of information, which he did not receive. *Id.* These allegations are sufficient at the pleadings stage. *See Michaels*, 830 F. Supp. 2d at 527 (finding lost money sufficient for ICFA claim). Accordingly, Plaintiff has extensively alleged that Defendant intentionally implemented the pixel trackers to boost its own profits. As such, Plaintiff has

sufficiently alleged unfair and deceptive conduct under ICFA.[14]

*vii. Plaintiff Sufficiently Alleged Defendant Violated the Illinois Wiretap Act*

The Court should also deny Defendant's motion to dismiss Plaintiff's claim under the Illinois Eavesdropping Statute, 720 ILCS 5/14-2. As with its motion to dismiss Plaintiff's negligence claims, Defendant's motion to dismiss Plaintiff's claim under the Illinois Eavesdropping statute relies on its contention that its Privacy Policy disclosed its use of tracking technologies. However, as discussed above, Plaintiff's allegations that "[w]ithout Plaintiff's or Class Members' knowledge, authorization, or consent, ***Defendant*** used the Pixel imbedded and concealed into the source code of its Online Platforms to secretly record and transmit Plaintiff's and Class Members' private communications to hidden third parties" must be taken as true for purposes of the Defendant's motion, and those allegations are sufficient to show that Defendant used its trackers "in a surreptitious manner, for the purpose of transmitting or recording all or part of any private conversation to which [it] is a party" without Plaintiff's consent, in violation of 720 Ill. Comp. Stat. 5/14-2(a), -4. Thus, Plaintiff adequately stated a claim for relief under the statute and the Court should deny Defendant's motion. *See, e.g.*, *Aspen Dental*, at *2–3; *Kurowski IV*, at *9; *Loyola*, at *10; *see also Hartley*, at *3 (allowing federal wiretap claim).

*viii. Plaintiff Sufficiently Alleged Violation of Electronic Communications Privacy Act*

The Court should also deny Defendant's Motion to Dismiss Plaintiffs claims under the Electronic Communications Privacy Act. Defendant relies on the "one party consent" provisions of the ECPA. MTD p. 16-17. However, as Defendant acknowledges, the one-party consent provision is not available if the disclosure itself constitutes a tort or a criminal act. 18 U.S.C. § 2511(2)(d). While Defendant asserts, in the most conclusory manner possible that its disclosure

[14] Courts across the country have allowed claims just like Plaintiffs' here to proceed. *See* Exhibit A-9 (listing orders denying similar motions to dismiss consumer protection claims)

was not a crime or tort, the caselaw under the Act is otherwise. *See Aspen Dental*, at *3; *Kurowski IV*, at *6; *Loyola*, at *7; *Hartley*, at *3. The Court should deny Defendant's Motion.

The Court should likewise deny Defendant's motion to dismiss Plaintiff's other ECPA claims, Counts X and XII. Defendant asserts, as its primary basis to dismiss those claims that it is "not an electronic communication service." MTD p. 17. But Defendant's argument rests on a misreading of the statute. The statute imposes liability on any "person or entity ***providing*** an electronic communication service to the public." 18 U.S.C. § 2511(3)(a) (emphasis added). There is no question that Defendant "provided," *i.e.*, made available, its website. Accordingly, Defendant is a party that can be liable under the ECPA, and the Court should deny Defendant's motion.

*ix. Plaintiff Sufficiently Alleged Violation of the Computer Fraud and Abuse Act*

The Court should also deny Defendant's Motion to Dismiss Plaintiff's claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Defendant's only basis for its motion to dismiss this count is its position that Plaintiff did not suffer "damage or loss" by reason of the violation. MTD p. 18. However, Defendant's argument ignores Plaintiff's allegations, specifically that Defendant's misconduct caused "loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value" under 18 U.S.C. § 1030(c)(4)(A)(i)(I), inter alia, because of the secret transmission of Plaintiff's and the Class Members' Private Information as set forth in detail herein, which were never intended for public consumption. That allegation should be taken as true for purposes of Defendant's Motion. Again, the Court should deny the Motion.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: October 14, 2024

Respectfully submitted by,

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (*Pro Hac Vice*)
Andrew E. Mize (*Pro Hac Vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss, Bar No. 6340331
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops (*Pro Hac Vice* forthcoming)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

*Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2024, a true and correct copy of the foregoing was served electronically by the Court's e-filing system on all counsel of record in accordance with the Rules of Civil Procedure.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV