**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANGEL RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE PRACTICE MANAGEMENT COMPANY, LLC D/B/A VILLAGE MEDICAL D/B/A VILLAGEMD,<br><br>Defendant. | Civil Action No. 1:24-cv-02882<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM IN SUPPORT OF DEFENDANT VILLAGE PRACTICE MANAGEMENT COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..........1

II. THE COURT SHOULD CONSIDER THE PRIVACY POLICY THAT IS INCORPORATED BY REFERENCE AND CENTRAL TO THE CLAIMS..........2

III. PLAINTIFF FAILED TO ALLEGE THAT VILLAGEMD DISCLOSED ANY PHI OR PII THROUGH THE VISIT OF PUBLIC WEBPAGES. ..........4

IV. PLAINTIFF FAILS TO STATE ANY CLAIMS ..........5

A. Plaintiff Fails to State a Claim for Negligence. ..........6

1. Plaintiff fails to plausibly allege a duty that was breached and damages..........6

2. Plaintiff fails to adequately allege negligence *per se* because none of the statutes that he relies on intended to impose strict liability..........7

B. Plaintiff Cannot State A Claim for Intrusion Upon Seclusion Resulting From the Mere Disclosure of Information. ..........8

C. Plaintiff Fails to State a Claim for Breach of Implied Contract Because the SAC Alleges Express Contracts and Plaintiff Fails to Allege Damages. ..........10

D. Plaintiff Fails to State a Claim for Unjust Enrichment. ..........11

E. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality..........12

F. Plaintiff Fails to Adequately Allege a Deceptive or Unfair Act and Pecuniary Damages to State an ICFA Claim. ..........13

G. VillageMD Did Not Violate the Illinois Eavesdropping Statute. ..........14

H. Plaintiff's Claims for Violation of the ECPA Should be Dismissed..........15

I. Plaintiff Fails to State a Claim for Computer Fraud and Abuse Act Because He Did Not Suffer any Damage or Loss..........16

V. CONCLUSION ..........16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
187 Ill.2d 386 (1999) .......... 7

*Archey v. Osmose Utilities Servs., Inc.*,
2021 WL 3367156 (N.D. Ill. Aug. 3, 2021) .......... 11

*Arroyo v. Seattle Reproductive Medicine*, PLLC,
2024 WL 4288083 (Wash.Super. Sep. 23, 2024) .......... 3

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 16

*Bell v. Milwaukee Bd. of Sch. Dirs.*,
2022 U.S. Dist. LEXIS 235714 (E.D. Wis. Dec. 21, 2022) .......... 5

*In re Boeing 737 MAX Pilots Litig.*,
638 F. Supp. 3d 838 (N.D. Ill. 2022) .......... 7

*City of Chicago v. Beretta U.S.A. Corp.*,
213 Ill.2d 351 (2004) .......... 7

*Doe v. Genesis Health System*,
2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) .......... 10

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) .......... 8

*Flores v. Aon*,
2023 IL App (1st) 230140 .......... 7, 9, 11

*Forrest v. Universal Sav. Bank, F.A.*,
507 F.3d 540 (7th Cir. 2007) .......... 14

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022) .......... 16

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) .......... 8, 9

*Hartman v. Meta Platforms, Inc.*,
2024 WL 421330 (S.D. Ill. Sep. 17, 2024) ....................2

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp.2d 299 (E.D.N.Y. 2005) ....................16

*Karon v. CNU Online Holdings, LLC*,
2019 WL 3202822 (N.D. Ill. July 16, 2019) ....................3

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................*passim*

*LaBella Winnetka, Inc. v. Village of Winnetka*,
628 F.3d 937 (7th Cir. 2010)....................5

*Lozada v. Advoc. Health & Hosps. Corp.*,
2018 IL App (1st) 180320-U....................12

*Maness v. Santa Fe Park Enters., Inc.*,
298 Ill.App.3d 1014 (1998)....................10

*Marcatante v. City of Chi.*,
657 F.3d 433, 440 (7th Cir. 2011) ....................10

*McCready v. eBay, Inc.*,
453 F.3d 882 (7th Cir. 2006)....................14

*McCulley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024)....................9

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011)....................14

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) ....................9

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ....................7, 12

*Quicken Loans v. Downing*,
2012 U.S. Dist. LEXIS 144272 (S.D. Ind. Oct. 5, 2012) ....................6

*Vita v. New England Baptist*,
2024 WL 4558621 (Mass. Oct. 24, 2024)....................15

*In re VTech Data Breach Litig.*,
2018 WL 1863953 (N.D. Ill. Apr. 18, 2018)....................10

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ....... 7

**Rules and Statutes**

Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030 ....... 16

Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511, 2520, 2702 ....... 15

Federal Trade Commission Act ("FTC Act") ....... 7

Health Insurance Portability and Accountability Act ("HIPAA") ....... 7

Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") ....... 13, 14

Illinois Eavesdropping Statute, 720 ILCS 5/14-2(a)(2) ....... 14

## I. INTRODUCTION

Plaintiff, an alleged patient of defendant Village Practice Management, LLC ("VillageMD"), asserts twelve claims arising from his use of VillageMD's website, which allegedly employed tracking pixels that disclosed website activities to third parties, such as Meta Platforms, Inc. While a cursory read of the Second Amended Complaint ("SAC") seemingly indicates nefarious conduct by VillageMD in sharing plaintiff's personally identifying information ("PII") and protected health information ("PHI"), a closer look quickly establishes the lack of merit in each of his claims.

First, the SAC states that the use of the website is "governed by the terms of the VillageMD Privacy Policy" and that by using the website, visitors "consent to all actions" taken by VillageMD with respect to their "information in compliance with the Privacy Policy." The Privacy Policy expressly discloses the use of third party tracking technologies and using such pixels to send advertisements—the very essence of plaintiff's lawsuit. Plaintiff objects to VillageMD's reliance on the Privacy Policy in its motion to dismiss because he chose not to attach it to the complaint. Yet, plaintiff fails to identify even a *single* case that supports keeping the Privacy Policy out.

Second, plaintiff fails to actually allege that any pixels are on pages that require the entry or use of PHI or PII. The SAC references numerous webpages, all of which are public webpages accessible to anyone that do not require the visitor to enter any PHI or PII. From there, plaintiff makes the sweeping conclusion that VillageMD is disclosing PHI or PII by mischaracterizing what can easily be confirmed by visiting the URL in the SAC. Indeed, plaintiff fails to even address any of the arguments by VillageMD regarding these general webpages. Instead, plaintiff implores the Court to just take his allegations as true despite their conclusory nature.

Plaintiff's other claims fail for numerous reasons, including the failure to allege damages. The opposition largely fails to meaningfully address any of VillageMD's arguments, often recasting the SAC's allegations, citing to inapposite case law (and sometimes to no law at all), and even selectively quoting a case to say that it stands for something totally different from what it actually says. No matter how plaintiff tries to spin it, there is no basis for any claims against VillageMD. As this is already plaintiff's *second* amended complaint, he should not be granted leave to further amend.

## II. THE COURT SHOULD CONSIDER THE PRIVACY POLICY THAT IS INCORPORATED BY REFERENCE AND CENTRAL TO THE CLAIMS.

Plaintiff unpersuasively argues that just because a court *may* consider a document incorporated by reference, a court does not necessarily *need* to. But there is no question that the Court should consider the Privacy Policy by virtue of plaintiff's own reliance on its terms and acknowledgement that such policy governs the provision of the collection of PHI and PII on VillageMD's website (SAC ¶ 103). Despite attaching other documents, such as the Terms of Use and the Joint Notice of Privacy Practices, plaintiff avoids attaching the most critical document, the actual Privacy Policy. Plaintiff should not be allowed to use the Privacy Policy to his own advantage, argue that VillageMD breached the same, and then attempt to prevent VillageMD from introducing the actual document.

The only relevant case that plaintiff relies on actually bolsters VillageMD's position. In *Hartman v. Meta Platforms, Inc.*, 2024 WL 421330, at *3–4 (S.D. Ill. Sep. 17, 2024), Meta sought to introduce 11 documents, "even though several of them are not mentioned in Plaintiffs' Complaint." In evaluating the first document, the court easily granted judicial notice by finding that it was "*the* critical document to the resolution of Meta's motion to dismiss." *Id.* at 5 (emphasis in original). In evaluating the other documents, the inquiry focused on whether the documents were

mentioned in plaintiffs' complaint or "central" to the claims. The reason that certain privacy notices were not ultimately considered was because the publication date of the documents was dated *after* the relevant time period, and thus only offered a "snapshot" of the terms despite plaintiffs' relationship with Meta over the "ten-plus years." *Id.* at 8. Compared to here, the Privacy Policy on its face reflects October 15, 2019 as the effective date, with the revised date of August 14, 2020. Plaintiff allegedly visited VillageMD's website on January 2023 to October 2023, and he has been a patient since January 2023. SAC, ¶ 148. Accordingly, the policy directly governs the parties' relationship and understanding regarding the collection and use of plaintiff's data, to which, plaintiff, himself, admits he consented to.[1] *Id.*, ¶ 103.

Plaintiff also cites to two cases that are either inapposite or completely unhelpful. *Karon v. CNU Online Holdings, LLC*, 2019 WL 3202822, at *2 (N.D. Ill. July 16, 2019) concerned a redacted agreement that was referenced "obliquely, if any at all" and portions of a website that "are outside the complaint altogether[.]" *Arroyo v. Seattle Reproductive Medicine*, PLLC, 2024 WL 4288083, at *1 (Wash.Super. Sep. 23, 2024) had no analysis—just a single sentence from the court denying the request for judicial notice without any explanation.

Finally, plaintiff's argument that the Privacy Policy somehow fails to disclose that the site "shares patients' personally identifiable information with third parties, much less that it does so for marketing purposes" is just wrong. The Privacy Policy expressly states:

> We may use third-party vendors to perform certain services on behalf of us or the Service, such as hosting the Service, designing and/or operating the Service's features, tracking the Service's activities, using sharing technology that allows users to share

[1] Plaintiff argues that the Privacy Policy is unauthenticated because it could have been changed at any time. The Privacy Policy states that it was last revised on August 14, 2020, nearly four years before plaintiff's original complaint was filed and over two years before he became a patient. Plaintiff provides no reason to believe that the Privacy Policy is not authentic, particularly where he attached other documents from the very same website in support of his complaint and argued other aspects of the Privacy Policy supported his claims.

> content on this Site through social media, and analytics. **We may provide these vendors with access to user information, or they may directly collect your information to carry out the services they are performing for you or for us.** Third-party analytics and other service providers may set and access their own tracking technologies on your device, and **they may otherwise collect or have access to information about you, potentially including personal information.** We are not responsible for those third-party technologies or activities arising out of them.
>
> We may also work with certain third parties to provide us with information regarding traffic on the Service **to serve advertisements** elsewhere online, and to provide us with information regarding the use of the Service and the effectiveness of our **advertisements**.

*See* Dkt. No 40-1 at 7 (emphasis added). Nor does any other provision—including "Unless you expressly consent to let us to do so, your personally identifiable information, including your e-mail address, will not be sold, rented, licensed, or otherwise shared with third parties"—change the fact that the third party pixels on the website are expressly disclosed and consented to by plaintiff when he accepted the Terms of Use. Accordingly, the Court should take judicial notice of the Privacy Policy.

## III. PLAINTIFF FAILED TO ALLEGE THAT VILLAGEMD DISCLOSED ANY PHI OR PII THROUGH PIXELS ON GENERAL WEBPAGES.

Plaintiff argues that he has sufficiently alleged that VillageMD disclosed PHI or PII by pointing to conclusory allegations without addressing any of VillageMD's arguments about why such allegations are insufficient. For example, he argues that he alleged that VillageMD disclosed his "activities on the patient portal" without even referencing the extensive argument by VillageMD establishing that the complaint does not actually allege—nor could it—that such "activities" on the patient portal were disclosed. They are on the pre-patient portal, which are public webpages that do not require any patient information. This is easily confirmed by clicking

on the URL that plaintiff provides in his complaint.[2] Just because plaintiff conflates the two very different types of webpages on the patient portal and on the general website, the Court does not need to accept such conclusory allegations as true. Similarly, the other generalized allegations made by plaintiff regarding disclosure of "Plaintiff's status as a patient, identity, browsing history, including seeking of medical treatment, searches for treatment locations, searches for a doctor including for primary care and mental health treatment, research for mental health and primary care treatment, Plaintiff's location, use of the patient portal, and scheduling appointments"—does not effectively demonstrate that any actual PHI or PII was disclosed. For example, plaintiff's status as a patient does not indicate disclosure of any confidential health information. Browsing history, research about medical conditions, or searches for doctors also does not mean that plaintiff's medical records or PHI were shared, particularly if plaintiff is just looking at general webpages. Based on the SAC, plaintiff failed to allege a single webpage that *actually* disclosed any PHI or PII. This is precisely why plaintiff can only make conclusory allegations that PHI or PII was disclosed on "information and belief"—as such allegations are entirely unsupported and without any basis.[3]

## IV. PLAINTIFF FAILS TO STATE ANY CLAIMS

Even assuming plaintiff had sufficiently alleged that VillageMD disclosed PHI or PII to Facebook through the use of the Meta Pixel, all of plaintiff's claims still fail for the reasons below.

---

[2] Courts may take judicial notice of undisputed material hosted on a party's public website. *See, e.g.*, *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010); *see also Bell v. Milwaukee Bd. of Sch. Dirs.*, 2022 U.S. Dist. LEXIS 235714, at *3 (E.D. Wis. Dec. 21, 2022) (court taking into consideration of various facts on "Bell's website at the URL provided in the complaint").

[3] Although outside the context of this motion, plaintiff is unable to make such allegations in good faith because VillageMD does not actually have pixels on any webpage that requires PHI or PII, such as the actual patient portal.

### A. Plaintiff Fails to State a Claim for Negligence.

#### 1. Plaintiff fails to plausibly allege a duty that was breached and damages.

Plaintiff argues that he sufficiently alleged breach of a duty despite the Privacy Policy because "plaintiff's allegations are not directed towards 'third parties' or their actions" (Opposition at 15)—rather, the allegations are towards VillageMD. In support of this argument, plaintiff cherry-picks a sentence from the Privacy Policy which states, "third parties may automatically collect information about you" to presumably argue that it only discloses third parties' conduct, as opposed to any conduct by VillageMD. But the sentences before and after provide: "[w]e may use third-party vendors," "[w]e may provide these vendors with access to user information[,]" and "[w]e may also work with certain third parties to provide us with information regarding traffic on the Service to serve advertisements[.]" Dkt. No. 40-1 at 7. "We" is in clear reference to VillageMD, which directly informs website visitors that VillageMD is the entity using third-party providers to use tracking technologies. Although a breach of duty can be a question of fact, if only a single inference can be drawn, the Court may decide the issue as a question of law. *Quicken Loans v. Downing*, 2012 U.S. Dist. LEXIS 144272, at *31 (S.D. Ind. Oct. 5, 2012) ("The issue regarding a breach of duty 'can be a question of law, however, when the facts are undisputed and only a single inference can be drawn from the facts.'"). There is only one inference to be drawn here—there is no breach of any duty for using "tracking technologies" on a website to collect information when plaintiff has consented to that very conduct.

Plaintiff also contends that he has properly alleged damages by claiming "fear, anxiety and worry" about the status of his private health information. But this does not stem from anything that VillageMD did. Plaintiff cannot claim emotional damages over something that he knew and consented to, particularly as he failed to even allege the disclosure of any actual PHI or PII. Plaintiff's own self-imposed fear, anxiety, or worry, even if true, is therefore not recoverable. *See*

*In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 858 (N.D. Ill. 2022) ("Under Illinois law, proximate cause 'is established only if the defendant's conduct is so closely tied to plaintiff's injury that he should be held legally responsible for it.'") (citing *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351 (2004)).

**2. Plaintiff fails to adequately allege negligence *per se* because none of the statutes that he relies on intended to impose strict liability.**

Plaintiff's negligence per se claim must be dismissed because it is well established that a "violation of a statute constitutes negligence *per se* only when it is clear that the legislature intended for the act to impose strict liability." *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024) (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 187 Ill.2d 386, 240 (1999)). Because neither the FTC Act, HIPAA, nor any of the other statutes or rules referenced by plaintiff impose strict liability, plaintiff's claim must be dismissed.

Plaintiff argues that the FTC Act can serve as the basis of his negligence per se claim. Plaintiff selectively quotes from *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 28, 242 N.E.3d 340, 355 to claim: "[a]s the Illinois Court of Appeals explained, 'a defendants' alleged violations of the FTC Act c[an] be offered as prima facie evidence of defendant's negligence.'" Opposition at 9. But plaintiff ***omits*** the second part of the sentence. The full sentence reads: "While defendant's alleged violations of the FTC Act could be offered as prima facie evidence of defendant's negligence, ***they do not constitute negligence per se***." *Id.* (emphasis added). Plaintiff also cites to *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760 (C.D. Ill. 2020), which did not discuss the requirement of strict liability for a negligence per se claim, was decided prior to *Flores*, and concerned a data breach.

Accordingly, plaintiff's negligence per se claim must be dismissed.

### B. Plaintiff Cannot State A Claim for Intrusion Upon Seclusion Resulting From the Mere Disclosure of Information.

Plaintiff's claim for intrusion upon seclusion should be dismissed because there is no "intrusion" that forms the basis for the claim, which is separate and distinct from a "disclosure" of information. *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) ("disclosures of personal private information do[] not support a claim for unauthorized intrusion.").

Despite acknowledging that plaintiff's claim hinges on VillageMD allegedly implementing "secret trackers to ***disclose*** that Private Information to unauthorized third parties" (Opposition at 10 (emphasis added))—plaintiff contends that he has sufficiently alleged a claim by twisting his own allegations and making inconsistent arguments. First, plaintiff claims that his allegations are somehow different from *Hartley v. Univ. of Chicago Med. Ctr.,* ("*Hartley*") 2023 WL 7386060, at *3 (N.D. Ill. Nov. 8, 2023) and *Kurowski v. Rush Sys. for Health* ("*Kurowski*") 659 F. Supp. 3d 931, 943–44 (N.D. Ill. 2023), which dismissed intrusion upon seclusion claims because the intrusion was carried out by *third parties* as opposed to the defendant. Rather, plaintiff contends that the "invasion was carried out by *Defendant* when it installed trackers on its website." Opposition at 11. But plaintiff could not complain if VillageMD employed trackers on its own website and did not disclose the information they obtained to anyone else, because plaintiff willingly (and presumably necessarily) provided his PII and PHI to his own healthcare provider. And of course, this is also not what he alleged. *E.g.,* SAC, ¶ 1 ("Plaintiff brings this class action to address Defendant's outrageous, illegal, and widespread practice of ***disclosing*** the confidential Personally Identifying Information") (emphasis added), ¶ 108 ("Defendant ***disclosed*** Plaintiff's and Class Members' Private Information and confidential communications to Facebook and other third parties via the Meta Pixel and other tracking technologies for marketing purposes") (emphasis

added), ¶ 109 ("Defendant ***disclosed*** to Facebook the Private Information and communications that Plaintiff and the Class Members submitted to Defendant's Website") (emphasis added).

Plaintiff then cites to *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, *30 (D. Ariz. May 10, 2024), which analyzed the claim under ***California*** law, to say that *McCulley* "explained why the *Hartley* and *Kurowski* reasoning is unpersuasive." Opposition at 11. Clearly, *McCulley* did not follow *Kurowski* because "that case interpreted Illinois law to determine whether the disclosure of PII is offensive. To utilize the Illinois standard here would defy established choice of law principles and the Erie doctrine." *Id.* at 32. And *McCulley* did not even reference *Hartley*, although it would have not made a difference given its application of Illinois law. Plaintiff then makes a sweeping (and erroneous) statement that such "reasoning has been adopted by numerous Courts around the country, including by the Illinois First District Appellate Court." Opposition at 12. In doing so, he cites to *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, *16 (D. Or. Aug. 28, 2024)—another completely inapposite Ninth Circuit case. He also cites to *Flores*, *supra*, 2023 IL App (1st) 230140, ¶ 51, 242 N.E.3d 340, 360, which did not address this issue, as it merely discussed whether various information accessed by third parties were considered private facts. Plaintiff then cites to a string of cases in Footnote 7 to argue vaguely that "the plaintiffs' claims" were allowed to proceed in cases involving a healthcare provider allegedly having hidden website trackers. Notwithstanding that the allegations in such cases are much more detailed, none of them allowed a claim for intrusion upon seclusion to proceed and plaintiff's arguments are at best misleading.

Plaintiff also argues that he never consented to VillageMD sharing his information with third parties for marketing purposes. Again, as discussed above, this is demonstrably untrue by the express terms of the Privacy Policy. Regardless of whether there are other provisions in the Privacy

Policy that states that VillageMD will generally obtain consent in disclosing a patient's information, the specific disclosure that the website uses third-parties who may "collect your information" and "may set and access their own tracking technologies" and "may otherwise collect or have access to information about you" defeats plaintiff's claims that disclosure of his information by the pixels was an unauthorized intrusion. Dkt. No. 40-1 at 7.

### C. Plaintiff Fails to State a Claim for Breach of Implied Contract Because the SAC Alleges Express Contracts and Plaintiff Fails to Allege Damages.

Plaintiff's claim for breach of implied contract fails as a matter of law because the SAC affirmatively alleged the existence of one or more express contracts that nullify an implied contract claim. Plaintiff does not dispute this principle of law or the existence of the express contracts alleged; instead, he argues that the "Court need not resolve questions of alternative claims or theories." Opposition at 13. But regardless of any alternative relief, the issue is that plaintiff does not have a *viable theory* for a claim for breach of implied contract based on the factual allegations set forth in the SAC. Simply put, he fails to state any facts to support an implied contract given his affirmative allegations of an express contract covering his relationship with VillageMD.[4] *See Marcatante v. City of Chi.*, 657 F.3d 433, 440 (7th Cir. 2011) (citing *Maness v. Santa Fe Park Enters., Inc.*, 298 Ill.App.3d 1014 (1998)); *see also Doe v. Genesis Health System*, 2024 WL 3890164, at *9 (C.D. Ill. Aug. 21, 2024) (dismissing breach of implied contract claim because "Plaintiff does not cite an Illinois case allowing claims for express and implied contracts arising from the same documents or promises"); *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *4 (N.D. Ill. Apr. 18, 2018) (finding plaintiffs' breach of contract based on the implied contract

---

[4] Plaintiff's opposition asserts that VillageMD has conceded "an express contract claim" (Opp. at 13), yet VillageMD makes no such concession. VillageMD only argued that plaintiff cannot allege an *implied* contract where he has alleged an *express* contract. To be clear, VillageMD does not concede that there is any basis for a breach of contract claim based on the facts alleged in the SAC.

cannot exist because "once again, express contracts exist on the same subject-matter—the Privacy Policy and the online services terms").

Finally, plaintiff's contract claim fails for lack of monetary damages. Plaintiff does not even attempt to make any argument that he has alleged "actual monetary damage" (because he can't). Plaintiff instead resorts to the "kitchen sink" approach: alleging a broad, generalized spectrum of purported damages that are unrecoverable (because they are personal injury damages, not breach of contract damages), implausible, and conclusory (e.g., emotional harm, loss of privacy, vague references to "revenues, profits, and savings," and increased risk of future harm.). *See, e.g.*, *Flores v. Aon Corp*., 2023 IL App (1st) 230140, ¶ 34 ("declin[ing] to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages"); *Archey v. Osmose Utilities Servs., Inc.*, 2021 WL 3367156, at *2 (N.D. Ill. Aug. 3, 2021) (dismissing for failure to allege any actual loss or injury); *but see In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022) (finding plaintiffs alleged *concrete monetary losses*, including $100.00 for a spam blocker and lost time dealing with the consequences of a data breach).

VillageMD's arguments regarding the impact of its Privacy Policy is independently fatal to plaintiff's breach of implied contract claim.

**D. Plaintiff Fails to State a Claim for Unjust Enrichment.**

Plaintiff's unjust enrichment claim fails because (1) Illinois does not recognize this claim as a separate cause of action, and (2) plaintiff fails to allege that VillageMD unjustly retained any benefit conferred by plaintiff.

In response to the first point, plaintiff states that his "claim is proper as pleaded, in combination with Plaintiff's contract and Illinois state statutory claim." *See* Opposition at 15. This

is the precise reason why plaintiff's claim for unjust enrichment fails—it rests upon the same purported improper conduct alleged in plaintiff's other claims, which similarly fail to state a claim. *See* SAC, ¶ 284. As a result, it fails as an independent theory of liability.

As to the second point, the opposition attempts to argue a benefit conferred to VillageMD by contending "Plaintiff alleged he paid Defendant for medical services, and the services he paid for were supposed to include reasonable privacy and data security protections[.]" Opposition at 15 (citing SAC ¶¶ 282–89). But it is an implausible allegation that plaintiff paid VillageMD for the purpose of data security protections as opposed to what he *actually* paid VillageMD for: receiving health care services—and plaintiff fails to allege *any* details evidencing an agreement from VillageMD that would indicate that it accepted money from plaintiff to protect his data. *See, e.g.*, *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 766 (C.D. Ill. 2020) (finding no benefit conferred in exchange for protection of personal information because "payments were for food and gas"). Notably, plaintiff also cites to *Lozada v. Advoc. Health & Hosps. Corp*., 2018 IL App (1st) 180320-U, which dismissed an unjust enrichment claim because, similar to here, "plaintiffs alleged the existence of an agreement" which "runs afoul of the principle that a properly pleaded count for unjust enrichment cannot include allegations of an express contract."

### E. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality.

Plaintiff apparently agrees that his claim for breach of the duty of confidentiality is limited to "[d]isclosures which violate the statutory privilege between a patient and their health care provider[.]" Opposition at 15. He, however, disagrees over whether any disclosure by VillageMD violates the statutory physician patient privilege. It clearly doesn't.

Plaintiff contends that the physician-patient privilege is violated by pointing to conclusory allegations that his PHI and PII was disclosed, despite the SAC referencing only public webpages

that do not require, or disclose, any such information. As discussed above in Section IV, *supra*, plaintiff completely fails to address any of VillageMD's arguments establishing that every single specific webpage that is mentioned in the SAC does ***not*** require any PHI or PII. Plaintiff fails to distinguish how his allegations are different from *Kurowski*, which dismissed the same claim given that plaintiff was interacting with a public webpage that anyone can go on—not just a patient seeking a physician's diagnosis or treatment. *See Kurowski,* 659 F. Supp. 3d at 941 ("this hypothetical illustrates what occurs when a user interacts with Rush's public webpage, not the MyChart portal. The 'GET' and 'POST' requests described in the complaint 'can be made by any visitor to Rush's website, whether patient or not.'"). Moreover, the allegations concerning receiving advertisements relating to ADHD and depression does not mean that it was the result of trackers on VillageMD's webpage. In the modern internet era, there are a variety of ways to get targeted advertising, including visiting other websites or even doing Google searches. Without more, plaintiff's claim for breach of the implied duty of confidentiality must be dismissed.

**F. Plaintiff Fails to Adequately Allege a Deceptive or Unfair Act and Pecuniary Damages to State an ICFA Claim.**

Plaintiff next argues that he has established an ICFA claim because he alleged a deceptive act given a statement in the Privacy Policy that VillageMD will not use private information of its patients unless they expressly consent. But as discussed above, plaintiff continues to ignore the relevant section regarding third party trackers that VillageMD discloses is on its website, which discloses exactly what he is complaining about. Plaintiff also ignores the fact that the SAC fails to allege any actual disclosure of PHI or PII. As such, there can be no deceptive conduct.

Plaintiff also claims that he has "alleged suffering monetary damages and diminution of his Private Information." Opposition at 18 (citing SAC, ¶ 159). However, not only are these allegations conclusory and vague, but like in *Kurowski,* these purported damages do not amount

to an actual pecuniary loss. *See* 683 F.Supp.3d at 845–47 (rejecting argument of monetary loss by overpaying for healthcare services and that there was a loss of value of personally identifiable patient data). Plaintiff cites to *In re Michaels Stores Pin Pad Litig.* for the proposition that his alleged payment "for medical services and confidentiality of information" is sufficient to allege actual pecuniary loss. Opposition at 18; 830 F. Supp. 2d 518, 527 (N.D. Ill. 2011). But in *Michaels*, plaintiff "suffered monetary losses from unauthorized bank account withdrawals and/or related bank fees charged to their accounts"—a very different set of facts than here. Plaintiff does not, and cannot, allege that he did not receive medical services that he paid for, due to any pixels on the VillageMD website. Accordingly, the Court should dismiss plaintiff's ICFA claim.

### G. VillageMD Did Not Violate the Illinois Eavesdropping Statute.

Plaintiff argues that he adequately alleged a violation of the Illinois Eavesdropping Statute because his allegations that VillageMD used pixels to secretly record and transmit plaintiff's communications to third parties must be taken as true. Even so, plaintiff completely ignores VillageMD's Privacy Policy, which as discussed, fully discloses the use of tracking technologies on its website and contradicts plaintiff's allegations. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) (To the extent an exhibit or judicially noticed document contradicts the complaint's allegations, the exhibit controls); *see also McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (the court is not bound by the party's characterization of an exhibit). As such, in light of the Privacy Policy, even if the use of the pixel can constitute an intentional eavesdropping, it is not done in a "surreptitious manner" or without "consent of all other parties." None of the cases cited by plaintiff that allowed a wiretapping claim to survive considered a

privacy policy that discloses tracking technologies to which plaintiff acknowledged consent in his pleading.[5]

### H. Plaintiff's Claims for Violation of the ECPA Should be Dismissed.

Plaintiff contends that he has stated a valid claim under the ECPA by virtue of one sentence. Opposition at 19 ("While Defendant asserts, in the most conclusory manner possible that its disclosure was not a crime or tort, the caselaw under the Act is [sic] otherwise."). But none of the cases cited by plaintiff applies to the scenario at hand—allegations arising from alleged tracking technologies on a website that were disclosed by a Privacy Policy that was consented to by the plaintiff, and which did not actually share any PHI or PII.

Plaintiff further states that his other ECPA claims under Count X and Count XII should survive because "Defendant's argument [that it is not an electronic communication service provider] rests on a misreading of the statute." *See* Opposition at 20. But it is plaintiff who is misreading the statute. Plaintiff fails to distinguish, reference, or even mention any of the cases cited by VillageMD. Nor does plaintiff offer a single case in support of his position. This is because courts have uniformly held that companies that merely purchase or use electronic communications services in the ordinary course of business, such as VillageMD, are not electronic communications services under the ECPA. *See Kurowski*, 659 F. Supp. 3d at 940 ("Unlike Epic—the licensor of

[5] Very recently, the Massachusetts Supreme Court in *Vita v. New England Baptist*, 2024 WL 4558621 (Mass. Oct. 24, 2024), held that the Massachusetts Wiretap Act was limited to communications between individuals and did not extend to cover a user's browsing on a website. Notably, the court found that the Act did not cover web browsing activity "because there appears to be a difference in kind and not degree between interactions on a website available to the public and private conversations in your house or on your telephone." The Court found browsing and accessing information published on a website to be "significantly different from having a conversation or sending a message to another person." *Id.* at 10. The allegations are extremely similar to here, which concerned alleged interactions with the hospitals' websites, such as accessing information about doctors and medical conditions. As such, it is dubious whether plaintiff's claims here even fall within the protection of Illinois Eavesdropping Statute.

the MyChart platform on which patients can communicate with their provider—hospital systems such as Rush are not in the electronic communications business."); *see also Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003–04 (W.D. Wash. 2022) ("A company that merely utilizes electronic communications in the conduct of its own business [here, Amazon's "Alexa"] is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp.2d 299, 307 (E.D.N.Y. 2005) (Jetblue's passenger reservations system is not an electronic communications service).

### I. Plaintiff Fails to State a Claim for Computer Fraud and Abuse Act Because He Did Not Suffer any Damage or Loss.

Finally, plaintiff contends that he has stated a claim for violation of the Computer Fraud and Abuse Act because he has properly alleged a "damage or loss" as required under the statute. Plaintiff points to one allegation: "Defendant's misconduct caused 'loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value' under 18 U.S.C. § 1030(c)(4)(A)(i)(I), inter alia, because of the secret transmission of Plaintiff's and the Class Members' Private Information . . . which were never intended for public consumption." Opposition at 20. But this is a mere recitation of the elements under the statute and such allegations are completely conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As explained above at length, plaintiff has not suffered any "damage or loss" as a result of any alleged conduct undertaken by VillageMD.

## V. CONCLUSION

Based on the foregoing, VillageMD respectfully requests the Court to grant its motion to dismiss in its entirety and dismiss the SAC with prejudice.

Dated: November 4, 2024

By: *<u>/s/ Jeffrey B. Margulies</u>*

Edward Casmere
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607
Tel: (312) 964-7800
Fax: (312) 964-7799
ed.casmere@nortonrosefulbright.com

Yvonne K. Puig (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Tel: (512) 536-2450
Fax: (512) 536-4598
yvonne.puig@nortonrosefulbright.com

Jeffrey B. Margulies
Eva Yang (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
555. South Flower Street, 41st Floor
Los Angeles, California 90071
Tel: (213) 892-9400
Fax: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com

***Counsel for Defendant Village Practice Management Company, LLC***

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 4, 2024 a true and correct copy of the foregoing Rule 12(b)(6) Motion to Dismiss was served on counsel of record via the Court's electronic filing system.

*/s/ Eva Yang*
Eva Yang