**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

ANGEL RODRIGUEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VILLAGE PRACTICE MANAGEMENT COMPANY, LLC D/B/A VILLAGE MEDICAL D/B/A VILLAGEMD,

Defendant.

Civil Action No. 1:24-cv-02882

Judge John J. Tharp, Jr.

**MEMORANDUM IN SUPPORT OF DEFENDANT VILLAGE PRACTICE MANAGEMENT COMPANY'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................ 1

II. RELEVANT FACTUAL ALLEGATIONS ........................................................................ 2

III. LEGAL STANDARD........................................................................................................ 4

IV. PLAINTIFF'S FAILURE TO PLAUSIBLY ALLEGE DISCLOSURE OF PHI OR PII IS FATAL TO COUNT I THROUGH VII. ............................................................................ 5

V. PLAINTIFF FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED. ........................................................................................................................ 6

A. Plaintiff Fails to State a Claim to Support Any Cognizable Theories of Negligence..... 6

1. Plaintiff fails to plausibly allege a duty that was breached or damages. ...................... 6

2. Plaintiff fails to adequately allege negligence *per se* because neither the FTC Act nor HIPAA imposes strict liability. ............................................................................ 8

B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion Because There is No Liability Resulting From the Mere Disclosure of Information. ................................... 10

C. Plaintiff Fails to State a Claim for Breach of Implied Contract Because There Is An Express Contract and Plaintiff Failed to Allege Damages. ......................................... 11

D. Plaintiff Fails to State a Claim for Unjust Enrichment. .............................................. 12

E. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality. ..... 13

F. Plaintiff Fails to Adequately Allege a Deceptive or Unfair Act and Pecuniary Damages to State an ICFA Claim. ........................................................................................... 14

G. VillageMD Did Not Violate the Illinois Eavesdropping Statute.................................. 16

H. Plaintiff's Claim for Violation of the ECPA Should be Dismissed. ............................ 17

I. VillageMD is Not an Electronic Communications Service for Purposes of the ECPA under Sections 2511(a)(3) and 2702. ......................................................................... 19

J. Plaintiff Fails to State a Claim for Computer Fraud and Abuse Act Because He Did Not Suffer any Damage or Loss. ........................................................................................ 20

VI. CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
718 N.E.2d 181 (Ill. 1999) ....... 9

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780, 806 (N.D. Tex. 2024) ....... 9

*Archey v. Osmose Utilities Servs., Inc.*,
2021 WL 3367156 (N.D. Ill. Aug. 3, 2021) ....... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....... 5, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....... 8

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ....... 15

*Berry v. City of Chicago*,
181 N.E.3d 679 (Ill. 2020) ....... 8

*Bogenberger v. Pi Kappa Alpha Corp., Inc.*,
104 N.E.3d 1110 (Ill. 2018) ....... 7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ....... 4, 5, 15

*Cassetica Software, Inc. v. Computer Sciences Corp.*,
09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009) ....... 20

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ....... 12

*Cowper v. Nyberg*,
28 N.E.3d 768 (Ill. 2015) ....... 6

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ....... 10

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 1st 2023) ....... 6, 10, 12, 13

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022)....................20

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025).................... *passim*

*Hartley v. Univ. of Chicago Med. Ctr.*,
22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....................11

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) ....................4

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) ....................12

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989)....................12

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp.2d 299 (E.D.N.Y. 2005) ....................20

*Kim v. Karter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ....................15

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .................... *passim*

*Kurowski v. Rush Sys. for Health*,
683 F.Supp.3d 836 (N.D. Ill. 2023) ....................15

*Marcatante v. City of Chi.*,
657 F.3d 433 (7th Cir. 2011) ....................11, 12

*Price ex rel. Massey v. Hickory Point Bank & Tr., Tr. No. 0192*,
841 N.E.2d 1084 (Ill. App. Ct. 4th 2006) ....................9

*Mayer v. Midwest Physician Admin. Servs., LLC*,
2025 WL 963779 (N.D. Ill. Mar. 31, 2025)....................17

*Navistar, Inc. v. New Balt. Garage, Inc.*,
11-CV-6269, 2012 WL 4338816 (N.D. Ill. Sep. 20, 2012) ....................20

*New v. Verizon Commc'ns, Inc.*,
635 F. Supp. 2d 773 (N.D. Ill. 2008) ....................11

*Noyola v. Board of Education of the City of Chicago*,
688 N.E.2d 81 (Ill. 1997)....................9

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ....................................................................13

*Pucillo v. Nat'l Credit Sys., Inc.*,
66 F.4th 634 (7th Cir. 2023) ....................................................................10

*Rockford Memorial Hosp. v. Havrilesko*,
858 N.E.2d 56 (Ill. Ct. App. 2d 2006) ....................................................................15

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ..........................18

*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004) ....................................................................10

*U.S. v. Wood*,
925 F.2d 1580 (7th Cir. 1991) ....................................................................4

*Uni*Quality, Inc. v. Infotronx, Inc*.,
974 F.2d 918 (7th Cir. 1992) ....................................................................6

*Virnich v. Vorwald*,
664 F.3d 206 (7th Cir. 2011) ....................................................................4

*White v. DaimlerChrysler Corp.*,
856 N.E.2d 542 (Ill. App. Ct. 1st 2006)....................................................................15

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) ....................................................................4

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ....................................................................9

*Worix v. MedAssets, Inc.*,
869 F. Supp. 2d 893 (N.D. Ill. 2012) ....................................................................4

*Yu v. Int'l Bus. Machs. Corp.*,
732 N.E.2d 1173 (Ill. Ct. App. 1st 2000)....................................................................8

**Rules and Statutes**

45 C.F.R. Part 160 and Part 164, Subparts A and C ....................................................................9

45 C.F.R. Part 160 and Part 164, Subparts A and E ....................................................................9

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 ..............................................2, 20

Electronic Communications Privacy Act 18 U.S.C. § 2511 ....................................1, 2, 17, 18, 19

Federal Trade Commission Act ("FTC Act") ..........................................................................9, 10

Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(6)..................................................4, 5

Health Insurance Portability and Accountability Act ("HIPAA") ....................................9, 10, 18

Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").................................1, 14, 15, 16

Illinois Eavesdropping Statute 720 ILCS 5/14 ...................................................................1, 16, 17

Illinois Medical Patient Rights Act...................................................................................................9

Illinois Personal Information Protection Act ....................................................................................9

Stored Communications Act 18 U.S.C. § 2702 ..............................................................................19

## I. INTRODUCTION

Plaintiff's Second Amended Complaint ("SAC") asserts claims against Village Practice Management Company, LLC ("VillageMD") arising from its use of the Meta Pixel, which is a snippet of code on portions of the VillageMD website used to track conversions and optimize advertising in partnership with Meta Platforms, Inc. ("Meta"). The basis of plaintiff's twelve-count complaint is that the Meta Pixel deployed on VillageMD's website improperly disclosed personally identifying information ("PII") and protected health information ("PHI") to Meta without prior authorization. All of plaintiff's claims fail for a myriad of reasons.

First, plaintiff fails to plausibly allege that VillageMD actually collected PHI or PII from him and then disclosed such information to a third party. The current allegations only focus on the use of the pixel on informational or pre-portal log in webpages that do ***not*** require website users to enter any PHI or PII. This is fatal to Counts I through VII. Second, the operative VillageMD Privacy Policy that plaintiff references in the SAC, incorporated into the Terms of Use to which he consented, expressly discloses the use of third-party tracking technologies, information that is collected from website users, and the various purposes for which it is collected. Plaintiff's allegations that he did not consent to such uses are simply implausible. The Privacy Policy is fatal to plaintiff's claims for negligence (Count I), negligence *per se* (Count II), breach of implied contract (Count IV), unjust enrichment (Count V), breach of the implied duty of confidentiality (Count VI), violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (Count VII), violation of the Illinois Eavesdropping Statute (Count VIII), and violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1) (Count IX). Those claims additionally fail for other defects, including the failure to adequately allege damages.

For the claims that remain, plaintiff fails to set forth any entitlement to relief. Courts in this district have consistently dismissed intrusion upon seclusion claims (Count III) where the conduct at issue concerns a disclosure or publication of information, such as here, as opposed to an unauthorized intrusion. Likewise, plaintiff fails to allege any violation of sections 2511(3)(a) (Count X) and 2702 (Count XI) of the ECPA because VillageMD is not an "electronic communication service." It is a health care provider. Moreover, plaintiff's claim for violation of the Computer Fraud and Abuse Act ("CFAA") (Count XII) must be dismissed because plaintiff fails to allege any "damage" or "loss" as required by the CFAA. As plaintiff has already amended his complaint twice, the most recent of which was *after* VillageMD filed its motion to dismiss, the Court should dismiss plaintiff's SAC with prejudice.

## II. RELEVANT FACTUAL ALLEGATIONS

Plaintiff's SAC[1] centers around VillageMD's purported use of "tracking technologies," on its website, www.villagemedical.com, that allegedly act like a "bug" on website visitors' web browsers. SAC, ¶ 15. Although the SAC now contains more information about other purported "trackers" on the website, the Meta Pixel forms the basis for all claims. *See*, *e.g., id.*, ¶¶ 75–94, 109. The Meta Pixel is described as a snippet of code that can track information about a website visitor, including a visitor's search terms, button clicks, and form submissions. *Id.*, ¶ 14. Plaintiff alleges that the Meta Pixel was used on VillageMD's website and online platforms, which

[1] Plaintiff filed the initial complaint on April 10, 2024 under a pseudonym. Following the Court's order denying plaintiff's motion to proceed under a pseudonym, plaintiff filed an amended complaint on May 2, 2024 ("FAC"). VillageMD moved to dismiss the FAC on July 8, 2024. Plaintiff then sought leave of Court to file the instant SAC. Given the number of allegations and lengthy complaint, the parties agreed to extend page limits to 20 pages for VillageMD's motion to dismiss [ECF 37]. VillageMD moved to dismiss the SAC on September 13, 2024 [ECF 40]. Following a stipulation to stay this case pending mediation, the Court denied VillageMD's motion to dismiss without prejudice. VillageMD therefore renews its motion to dismiss in accordance with the scheduling order approved by the Court [ECF 57].

surreptitiously forced plaintiff to transmit details about his website interaction to third parties without his consent. *Id.*, ¶ 10.

Notably, plaintiff confirms that the "transmission" to third parties "*only* occurs on webpages that contain the Pixel"—as a website owner can "disable it on pages that do implicate patient privacy." *Id.*, ¶ 54 (emphasis added). Plaintiff details VillageMD's alleged use of the Meta Pixel on specific webpages: the homepage (*id.*, ¶ 113), appointment page (*id.*, ¶ 117), locator page (*id.*, ¶ 122), providers page (*id.*, ¶ 129), pre-portal login page for the patient portal (*id.*, ¶ 133), informational page for retrieving medical records (*id.*, ¶ 134), and services page (*id.*, ¶ 135). The SAC contains screenshots purportedly showing the location of pixel, to demonstrate the existence of the Meta Pixel on those pages. *Id.*, ¶¶ 113, 117, 123, 129-30, 133, 135. The SAC also provides the exact URLs for these pages and alleges that the "c_user" cookie is transmitted to Facebook and, together with the data Facebook itself collects, Facebook can identify users. *Id.*, ¶¶ 113-35, 137. ***None*** of these webpages require the submission of any PHI or PII regarding the website visitor as they are merely informational or pages that do not require patients to enter any personal information. *See id.* ¶¶ 113-35.

However, "[i]nformation gathered and maintained via the athena Patient Portal *is* personally identifiable and protected health information." [ECF 7-2] at 7 (emphasis added). The SAC *never* alleges that the Meta Pixel is actually utilized on the actual patient portal that would require a visitor to enter their PHI and/or PII. Instead, plaintiff alleges "on information and belief" that the Meta Pixel disclosed to Facebook "Private Information" of website visitors in exchange for marketing benefits. *E.g., id.*, ¶¶ 140, 141, 143.

Plaintiff acknowledges that the VillageMD Privacy Policy is "incorporated into [the] Terms of Use," which states, "'[b]y using the Digital Service, you consent to all actions taken by

us with respect to your information in compliance with the Privacy Policy.'" *Id.*, ¶ 103. While failing to attach the Privacy Policy, plaintiff alleges that the Terms of Use does not disclose the "use of the Meta Pixel, or that it will share patients' private information, including PHI, with third parties uninvolved in their treatment, for marketing purposes, without their authorization," and that the disclosure of such information violates VillageMD's privacy policies. *Id.*, ¶¶ 105–107. But the Privacy Policy contains specific disclosures under "Third-party Analytics Providers and Ad Servers" that provides detailed information regarding the use of tracking technologies for marketing purposes. *See* Exhibit A.[2] The assertion that VillageMD is sharing plaintiff's and other consumers' PII and PHI without their knowledge and consent is, as plaintiff's own pleading demonstrates, baseless and implausible.

## III. LEGAL STANDARD

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897 (N.D. Ill. 2012) (quoting *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011)). To survive a motion to dismiss under Rule 12(b)(6), a claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

[2] The Court "may take into consideration documents incorporated by reference to the pleadings." *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (citations omitted); *see also Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (Court may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice") (collecting cases).

statements, do not suffice." *Camasta*, 761 F.3d at 736 (*quoting Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009)).

## IV. PLAINTIFF'S FAILURE TO PLAUSIBLY ALLEGE DISCLOSURE OF PHI OR PII IS FATAL TO COUNT I THROUGH VII.

Despite having an opportunity to amend *after* previewing VillageMD's motion to dismiss, the SAC still fails to plausibly allege that VillageMD actually disclosed plaintiff's PHI or PII to third parties. This is fatal to plaintiff's claims alleged in Count I through VII. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks removed).

At the heart of Counts I to VII is VillageMD's purported wrongful disclosure of sensitive PII and PHI through the use of the Meta Pixel that allegedly tracks information about a website visitor. And yet, when confronted with making such allegations, the SAC switches from specific facts of the Meta Pixel being on some webpages that *don't* collect PII or PHI to purely conclusory allegations "on information and belief" that PII and PHI was actually shared. *E.g.,* SAC, ¶¶ 140, 141, 143.

While plaintiff provides the URL for VillageMD's homepage (*id*., ¶ 113), locator page (*id*., ¶ 122), providers page (*id*., ¶ 129), informational page for retrieving medical records (*id*., ¶ 134), and services page (*id*., ¶ 135) as using the Meta Pixel, all of these webpages only provide information about VillageMD or its healthcare services or healthcare providers. Even pages that require some information from visitors, such as the appointment (*id*., ¶ 117) or pre-portal login page (*id*., ¶ 133), do not require any PHI or PII. Although the SAC seemingly conflates the pre-patient portal as the patient portal, the two are completely different. SAC, ¶¶ 132–33. A simple click of the URL provided in the SAC, https://www.villagemedical.com/patient-portal, conclusively demonstrates that the pre-patient portal does *not* require a website visitor to enter any

personal information. *Id.* Despite clearly having the ability to determine whether the Meta Pixel tool is used or not on the actual patient portal or any pages requiring any PHI or PII, such allegations are, significantly, missing.

Yet, plaintiff alleges "[*o*]*n information and belief*, Defendant shared, traded, or sold Plaintiff's and Class Members' Private Information with Facebook in exchange for improved targeting and marketing services and reduced marketing costs." *Id.*, ¶ 143 (emphasis added). The allegation made on information and belief is without any factual support regarding the "information" that "belief" is based. Accordingly, plaintiff's threadbare and conclusory allegations that VillageMD uses the Meta Pixel to collect and transmit plaintiff's PHI or PII should be disregarded. *See, e.g. Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (in context of a fraud claim, "allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions"). Without such allegations, Counts I through VII should be dismissed.

## V. PLAINTIFF FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even assuming plaintiff had sufficiently alleged that VillageMD disclosed PHI or PII to Facebook through the use of the Meta Pixel, all of plaintiff's claims still fail for the reasons below.

### A. Plaintiff Fails to State a Claim to Support Any Cognizable Theories of Negligence.

1. Plaintiff fails to plausibly allege a duty that was breached or damages.

"To state a claim for negligence, a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of plaintiff's injuries." *Flores v. Aon Corp.*, 242 N.E.3d 340, 353-54 (Ill. App. Ct. 1st 2023) (citing *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015)). To determine "whether there is a duty of care under the common law, courts look at (1) the reasonable

foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* at 354 (citing *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 104 N.E.3d 1110, 1124-25 (Ill. 2018)).

Plaintiff alleges that VillageMD breached its duty of care for the privacy and confidentiality of plaintiff's and class members "Private Information" by allegedly disclosing such information to third parties. SAC, ¶ 239. However, this allegation is implausible in light of VillageMD's Privacy Policy. The Privacy Policy, incorporated into the Terms of Use, requires "consent to all actions taken by [VillageMD] with respect to [a website visitor's] information," (*id.*, ¶ 103), and expressly contemplates tracking technologies by third parties. Specifically, the Privacy Policy expressly and conspicuously provides that "[t]hird party analytics and other service providers may set and access their own tracking technologies on your device, and they may otherwise collect or have access to information about you, potentially including personal information." Ex. A. VillageMD also discloses that "third parties may automatically collect information about you using their own cookies or other technologies, or may otherwise collect or have access to information about your visits to this Service and other websites, your IP address, your ISP, the browser you use to visit a Service and other usage information." *Id.* Moreover, "[i]nformation collected may be used, among other things, to deliver advertising targeted to your interests and to better understand the usage and visitation of our website and the other sites tracked by these third parties." *Id.* Consequently, VillageMD could not have breached a duty to disclose the use of the Meta Pixel if the Privacy Policy did just that.

Even if plaintiff alleged a duty that was breached, he failed to adequately allege any cognizable damages to support a negligence claim. Illinois law requires a "legally cognizable present injury or damage" to sustain a negligence claim. *Yu v. Int'l Bus. Machs. Corp.*, 732 N.E.2d

1173, 1177 (Ill. Ct. App. 1st 2000). Plaintiff's purported damages are nothing more than a kitchen-sink of non-specific damages, including: money damages, advertisements, use of information for advertising purposes, increased risk of future harm, embarrassment, humiliation, frustration, emotional distress, the unauthorized access of their Private Information by third parties, improper disclosure of their Private Information, lost benefit of the bargain, lost value of PHI/PII and diminution in value, and lost time and money incurred to mitigate and remediate the effects of use of the information. SAC, ¶¶ 243-44. Each of these purported damages is completely conclusory or otherwise not a cognizable present injury. Plaintiff fails to provide any information or specific facts supporting his claim for money damages, embarrassment, humiliation, frustration, emotional distress, lost benefit of the bargain, lost value of PHI/PII, and lost time he allegedly suffered. There are no details for how plaintiff suffered any of these alleged harms by virtue of visiting webpages related to searches for health care providers, physician information, or an appointment page with generic options that any visitor can click. Any allegations regarding emotional distress resulting from this are simply implausible. *See Iqbal*, 556 U.S. at 678 (courts are not required to accept legal conclusions couched as factual allegations) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, vague references to an unspecified "increased risk of future harm" is not a cognizable present injury sufficient to state a negligence claim. *See Berry v. City of Chicago*, 181 N.E.3d 679, 688-89 (Ill. 2020). It is also not plausible to plead damages for "unauthorized access" or "improper disclosure" of PHI or PII when the Privacy Policy expressly discloses and requires consent to tracking technologies used on the website.

2. Plaintiff fails to adequately allege negligence *per se* because neither the FTC Act nor HIPAA imposes strict liability.

Plaintiff's negligence *per se* theory fares no better. Where a statute or ordinance is designed to protect human life or property, Illinois law provides that the statute establishes the required

standard of care and "fix[es] the measure of legal duty." *Price ex rel. Massey v. Hickory Point Bank & Tr., Tr. No. 0192*, 841 N.E.2d 1084, 1089 (Ill. App. Ct. 4th 2006) (quoting *Noyola v. Board of Education of the City of Chicago*, 688 N.E.2d 81, 84–85 (Ill. 1997)). However, a "violation of a statute constitutes negligence *per se* only when it is clear that the legislature intended for the act to impose strict liability." *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024) (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999)).

Plaintiff alleges that the standard of care is established by the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, the Illinois Medical Patient Rights Act, Illinois Personal Information Protection Act.[3] However, there is no authority that any of these statutes, laws, or rules intended to impose strict liability, and plaintiff fails to make any allegation stating the same. *See Wittmeyer,* 2024 WL 182211, at *4 (dismissing negligence per se claim because "plaintiffs, however, do not allege that either the FTCA or HIPAA imposes strict liability; nor does the Court have any authority before it that would a support a finding of strict liability"); *see also Flores v. Aon Corp.*, 242 N.E.3d at 355 (there is "no support for the notion that the legislature clearly intended to impose strict liability for FTC Act violations"). And even if the standard of care can be established, the current allegations fail to show that VillageMD violated any statute by engaging in routine internet

[3] To the extent plaintiff relies on HHS guidance to establish the standard of care (*e.g.*, SAC, ¶¶ 5–8), the district court in *American Hospital Association v. Becerra* recently vacated the guidance's description of the combination of an individual's IP address and a website visit addressing specific health conditions or providers as "individually identifiable health information" ("IIHI," a subset of PHI), because it was inconsistent with HIPAA's definition of IIHI. 738 F. Supp. 3d 780, 806 (N.D. Tex. 2024).

practices that did not disclose any PHI or PII, particularly in light of the Privacy Policy. Accordingly, plaintiff fails to sufficiently allege a claim for negligence *per se*.

**B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion Because There is No Liability Resulting From the Mere Disclosure of Information.**

"Intrusion upon seclusion occurs when a person intrudes ... upon the solitude or seclusion of another or his private affairs or concerns and this intrusion would be highly offensive to a reasonable person." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023). Illinois courts have held that "the core of this tort is the offensive prying into the private domain of another" with examples of such prying being "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020). Courts have held that "disclosures of personal private information do[] not support a claim for unauthorized intrusion." *Id.* (quoting *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004)) (internal citations omitted).

The basis for plaintiff's intrusion upon seclusion claim is the "disclosure of the substance and nature" of PHI and PII to "third parties without the knowledge and consent of plaintiff and Class Members is an intentional intrusion[.]" SAC, ¶ 263. Putting aside the fact that the Privacy Policy *does* inform plaintiff that his information could be disclosed, courts have consistently dismissed similar intrusion upon seclusion claims because it is the *intrusion* that creates liability for this claim, not the subsequent disclosure or publication of private personal information. *See Hannant v. Culbertson*, 2025 WL 2413894, at *15 (C.D. Ill. Aug. 20, 2025) (dismissing pixel based intrusion claim as "[p]laintiff voluntarily utilized Defendant's Online Platforms, thereby volunteering the information which she asserts was wrongfully disclosed"); *Hartley v. Univ. of Chicago Med. Ctr.,* 22 C 5891, 2023 WL 7386060, at *3 (N.D. Ill. Nov. 8, 2023) (dismissing, with

prejudice, an intrusion upon seclusion claim based on allegations that the defendant employed the Meta Pixel and disclosed plaintiff's sensitive health information); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 943–44 (N.D. Ill. 2023) (dismissing a claim for intrusion upon seclusion based on allegations that third-party source code on a website disclosed plaintiff's personally identifiable patient data to third parties). The same conclusion must be reached here.

**C. Plaintiff Fails to State a Claim for Breach of Implied Contract Because There Is An Express Contract and Plaintiff Failed to Allege Damages.**

"In Illinois, in order to prove an implied contract the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract." *New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782–83 (N.D. Ill. 2008). However, "an implied contract cannot coexist with an express contract on the same subject." *Marcatante v. City of Chi.*, 657 F.3d 433, 440 (7th Cir. 2011).

Plaintiff alleges that as a condition of receiving care from VillageMD he provided "Private Information" by which VillageMD "agreed to safeguard and protect such information, in their Privacy Policies and elsewhere, to keep such information secure and confidential[.]" SAC, ¶ 273. Given that plaintiff affirmatively alleges the existence of one or more express contracts, including the Terms of Use and the Privacy Policy, that govern the parties' obligations and expectations with respect to the protection of PHI and PII, there cannot *also* be an implied contract on the same subject. *See Marcatante*, 657 F.3d at 443 (dismissing implied contract claim "[b]ecause there is an express contract that governed the plaintiffs' wages").

But even if it were proper to imply additional terms to the existing contract—which it is not—this claim is not plausible because, as discussed in Section V(A), *supra*, the Privacy Policy specifically discloses the use of tracking technologies and information collected from website visitors. Ex. A. Moreover, "[t]o successfully make a breach of implied contract claim, a plaintiff

must allege actual monetary damages." *Flores v. Aon Corp.*, 242 N.E.3d at 356; *see also Archey v. Osmose Utilities Servs., Inc.*, 2021 WL 3367156, at *3-4 (N.D. Ill. Aug. 3, 2021); *Hannant*, 2025 WL 2413894, at *16 (dismissing implied contract claim in healthcare pixel case for failure to allege "actual monetary damages"). Plaintiff fails to do so here. To the extent plaintiff vaguely references "money damages" (*e.g.*, SAC, ¶ 280), such allegations are entirely conclusory and must be disregarded.

**D. Plaintiff Fails to State a Claim for Unjust Enrichment.**

In Illinois, to recover damages on a theory of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Moreover, "[u]just enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019); *see also Cleary*, 656 F.3d at 517 ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

Plaintiff's unjust enrichment claim rests on the same purported improper conduct alleged in plaintiff's other claims—namely, the purported disclosure of his PHI and PII to third parties through the use of the Meta Pixel. SAC, ¶ 284. Given that unjust enrichment is not a separate cause of action in Illinois and plaintiff's other claims fail for the reasons stated herein, the claim similarly fails as an independent theory of liability. *See Hannant*, 2025 WL 2413894, at *17 (dismissing unjust enrichment claim in light of dismissal of other claims). But even assuming *arguendo* that

any of plaintiff's related claims survive, plaintiff still fails to plausibly allege that VillageMD unjustly retained any benefit conferred by plaintiff. Any "monetary compensation" and "sensitive medical information" that plaintiff provided to VillageMD was for the purpose of receiving healthcare services. Plaintiff's allegations are insufficient here since he provided "sensitive medical information" and "monetary compensation" in order to allow VillageMD to provide him health care services, not as part of some other transaction that enriched VillageMD. *See Flores v. Aon Corp.*, 242 N.E.3d at 356-57 (finding no unjustly retained benefit because plaintiff was adequately compensated for labor through wages and any "personal information" was an "administrative necessity" for insurance services); *see also Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 766 (C.D. Ill. 2020) (finding no alleged benefit conferred in exchange for protection of personal information because "payments were for food and gas"). And even if plaintiff somehow sufficiently alleged that a benefit was conferred, there can be no unjustly retained benefit in light of the Privacy Policy.

### E. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality.

Plaintiff's claim for breach of the implied duty of confidentiality is based on the patient-health care provider relationship which implies a contract. Specifically, plaintiff contends that VillageMD agreed to keep plaintiff's "Private Information and communications confidential as part of establishing and maintaining the healthcare services in the provider/patient relationship between Defendant and plaintiff and Class Members." SAC, ¶ 292. However, "Illinois law does not recognize a cause of action in tort for this conduct"—and even so, "its scope is limited to disclosures that violate the statutory physician-patient privilege." *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 940 (N.D. Ill. 2023) (*Kurowski I*); *see also Hannant*, 2025 WL 2413894, at *17 (dismissing breach of implied duty of confidentiality claim and "join[ing] the

other federal courts that have declined to break new ground in this area of [Illinois] law"). In *Kurowski I*, the court dismissed plaintiff's breach of the implied duty of confidentiality claim because plaintiff "fail[ed] to allege the disclosure of any information related to the provision of treatment to her or other similarly situated Rush patients." *Id.* Specifically, the allegations concerned "what occurs when a user interacts with Rush's public webpage, not the MyChart portal." *Id.* at 941. And, exactly like here, "even if one could reasonably infer that this information identifies an individual patient by name, this sort of disclosure does not violate physician-patient statutory privilege." *Id.* Regardless, similar to Plaintiff's negligence claim, there are no plausible allegations of any implied promises in light of the Privacy Policy that expressly provides for the disclosure of personal information. *See* Ex. A. Accordingly, this claim must be dismissed.

### F. Plaintiff Fails to Adequately Allege a Deceptive or Unfair Act and Pecuniary Damages to State an ICFA Claim.

"In order to state a claim under the ICFA, a plaintiff must show: (1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during the course of conduct involving trade or commerce." *Camasta*, 761 F.3d at 739 (internal quotation marks omitted). "An individual suing under the ICFA must 'plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss.'" *Kurowski*, 659 F. Supp. at 942 (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019)).

Here plaintiff alleges that VillageMD "promised" not to use plaintiff's PHI for marketing purposes prior to obtaining consent, but that allegation is simply not plausible given the Privacy Policy. SAC, ¶ 307. Illinois Courts have held that "[t]he bald assertion of deception is insufficient to state a claim; the deceptive manner of the omission must be stated with specificity and particularity." *Rockford Memorial Hosp. v. Havrilesko*, 858 N.E.2d 56, 64 (Ill. Ct. App. 2d 2006);

*see also White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 546 (Ill. App. Ct. 1st 2006). Plaintiff's conclusory allegation of deception fails this standard.

Plaintiff further fails to allege an actual pecuniary loss. "[T]he element of actual damages [under the ICFA] 'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta*, 761 F.3d at 739 (quoting *Kim v. Karter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). For example, in *Kurowski II*, the court dismissed plaintiff's ICFA claim finding that no actual, pecuniary loss was alleged. *Kurowski v. Rush Sys. for Health*, 683 F.Supp.3d 836, 845–47 (N.D. Ill. 2023) (*Kurowski II*). The court rejected plaintiff's argument that she suffered monetary loss by overpaying for healthcare services, that defendant overcharged patients, and that there was a loss of value of her personally identifiable patient data. *Id.* at 846 (no pecuniary loss where plaintiff alleged "she somehow overpaid to use Rush's *free* web properties" and where the "Seventh Circuit has repeatedly rejected the benefit of the bargain theory of damages for non-products liability") (emphasis in original). These allegations are exceedingly similar to plaintiff's purported damages, which are alleged to be that "confidential information" is "no longer private"; "Defendant eroded the essential confidential nature of the doctor-patient relationship"; VillageMD took "something of value" and "derived" some unknown "benefit"; plaintiff did not get the "full value of the medical services"; and "Defendant's actions diminished the value" of plaintiff's personal information. SAC, ¶ 311. Not only are these allegations conclusory and vague, but like in *Kurowski II* or *Hannant,* these purported damages do not amount to an actual pecuniary loss. *See* 683 F.Supp.3d at 845–47; 2025 WL 2413894, at *8-9 (addressing the same damages theories). Accordingly, the Court should dismiss plaintiff's ICFA claim.

### G. VillageMD Did Not Violate the Illinois Eavesdropping Statute.

Under the Illinois Eavesdropping Statute ("IES"), a person is liable for eavesdropping if he or she intentionally and knowingly "[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." 720 ILCS 5/14-2(a)(2). The statute also imposes liability for an eavesdropper who "[u]ses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties." *Id.* at (a)(5). Plaintiff claims that VillageMD violated both sections by allegedly intentionally recording and/or acquiring plaintiff's private electronic communications using the pixel and other similar tracking technologies on its online platforms. SAC, ¶ 321.

Plaintiff cannot invoke 720 ILCS 5/14-2(a)(2), as that section is limited to "private conversations," which are limited to *oral* conversations. 720 ILCS 5/14-1(d) (defining "[p]rivate conversation" as "any oral communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation."). Here, since "[p]laintiffs complain about typed communications and not oral ones, they have not alleged a Section 14-2(a)(2) violation." *Hannant*, 2025 WL 2413894, at *10 (quoting *Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 WL 963779, at *4 (N.D. Ill. Mar. 31, 2025)). As to plaintiff's claim under 720 ILCS 5/14-2(a)(5), that section is inapplicable, as "there must be adequate allegations of a violation of another subsection of section 14-2(a) to invoke section 14-2(a)(5)." *Hannant*, 2025 WL 2413894, at *10. As in *Hannant*, since plaintiff has failed

to put forward adequate allegations that VillageMD violated a different section of the IES, he cannot avail himself of 14-2(a)(5). *Id.*; *see also Mayer*, 2025 WL 963779, at *4 ("Plaintiffs must first allege a violation of Section 14-2(a)(1), (a)(2), (a)(3), or (a)(4) to plead a claim under Section 14-2(a)(5).").

Moreover, plaintiff's allegations are implausible because the Privacy Policy fully discloses the use of tracking technologies on the website. As such, even if the use of the pixel can constitute an intentional eavesdropping, it is not done in a "surreptitious manner" or without "consent of all other parties." VillageMD would also not be using or disclosing any information to which it "reasonably should know was obtained from a private conversation" given the express disclosures in the Privacy Policy. Accordingly, plaintiff's claim for violation of the Illinois Eavesdropping Statute must be dismissed.

**H. Plaintiff's Claim for Violation of the ECPA Should be Dismissed.**

The ECPA provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication." 18 U.S.C. § 2511(1)(a). There is also liability for those who intentionally use or disclose the contents of an intercepted communication. 18 U.S.C. §§ 2511(1)(c), (d). However, under the so-called "party exception," a party to the communication does not violate the act unless the disclosure itself constitutes a tort or a criminal act. 18 U.S.C. § 2511(2)(d). As VillageMD is a party to the communication, plaintiff needs to satisfy the crime or tort exception.

Generally, HIPAA provides for criminal and civil penalties against a person "who knowingly ... discloses individually identifiable health information [('IIHI')] to another person." 42 U.S.C. § 1320d-6. Pursuant to 42 U.S.C. § 1320d(6), IIHI is defined as:

> [A]ny information, including demographic information collected from an individual, that—(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

As discussed above, plaintiff merely alleged disclosure of information on publicly available webpages. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (disclosure of URL viewing publicly available medical information did not trigger HIPAA liability). To the extent that plaintiff argues that his patient status was disclosed and this violates HIPAA, such allegations are conclusory and without any detail. For example, plaintiff vaguely alleges that VillageMD disclosed to Facebook the following activities: "browsing activities," seeking of "medical treatment," searches for "treatment locations," plaintiff's "location," searches for "primary care and/or family medicine physicians," "mental health and primary care treatments," plaintiff's "status as a patient," and "Other information concerning Plaintiff's use of the patient portal." SAC ¶ 157. However, plaintiff does not allege whether he actually contacted any medical provider, what specific medical records he viewed as opposed to the publicly available website page providing generic information about medical records, or that he even logged into the patient portal. These allegations are strikingly similar to the complaint in *Hannant*, in which the court dismissed the ECPA claim as plaintiff needed to put forth more factual detail to plausibly allege that IIHI was disclosed:

> But when discussing her own experiences, the specificity is replaced by vague generalities. She alleges that she "used the Website and Online Platforms to: find a specific physician, to research treatments, including information related to an MRI test, to search for treatment information; to find out how to obtain medical records; to use the patient portal, and more." *Id.* ¶ 134. But she does not

> allege that she actually contacted any specific physician, that she actually obtained any of her medical records, nor even that she logged into the patient portal.

2025 WL 2413894, at *5. Accordingly, plaintiff's ECPA claim fails.

### I. VillageMD is Not an Electronic Communications Service for Purposes of the ECPA under Sections 2511(3)(a) and 2702.

The ECPA also imposes liability against a "person or entity providing an electronic communication service to the public" if it intentionally divulges the contents of any communication to a party that is not the intended recipient. 18 U.S.C. § 2511(3)(a). Moreover, "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Plaintiff alleges that VillageMD violated both sections in Counts X and XI.

Both claims fail because VillageMD is alleged to be "a massive medical system which provides treatments to patients," (SAC, ¶ 9), not an electronic communication service. Courts have uniformly held that companies that merely purchase or use electronic communications services in the ordinary course of business, such as VillageMD, are not electronic communications services. *See Kurowski I*, 659 F. Supp. 3d at 940 ("Unlike Epic—the licensor of the MyChart platform on which patients can communicate with their provider—hospital systems such as Rush are not in the electronic communications business."); *see also Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003–04 (W.D. Wash. 2022) ("A company that merely utilizes electronic communications in the conduct of its own business [here, Amazon's "Alexa"] is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp.2d 299, 307-10 (E.D.N.Y. 2005) (Jetblue's passenger reservations system is not an electronic communications service).

### J. Plaintiff Fails to State a Claim for Computer Fraud and Abuse Act Because He Did Not Suffer any Damage or Loss.

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, provides for the entry of civil injunctive relief as well as the recovery of money damages against a person that knowingly or intentionally accesses a computer without authorization in certain scenarios. *See* 18 U.S.C. § 1030. However, only a person who has suffered a "damage" or "loss" can bring a civil action. *Id.* § 1030(g). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). "Courts have interpreted the CFAA's definition of damage to include the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'" *Navistar, Inc. v. New Balt. Garage, Inc.*, 11-CV-6269, 2012 WL 4338816, at *7 (N.D. Ill. Sep. 20, 2012) (quoting *Cassetica Software, Inc. v. Computer Sciences Corp.*, 09 C 0003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009)). The CFAA defines the term "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). Plaintiff completely fails to allege any impairment to his computer or any cost he incurred in responding to purported losses, which is fatal to his claim. Regardless, there are no allegations that VillageMD knowingly or intentionally accessed plaintiff's computer without authorization. As such, plaintiff's CFAA claim fails. *See Hannant*, 2025 WL 2413894, at *7 (dismissing CFAA claim on similar allegations).

## VI. CONCLUSION

Based on the foregoing, VillageMD respectfully requests the Court to grant its motion to dismiss in its entirety and dismiss the SAC with prejudice.

Dated: April 27, 2026

By: */s/ Jeffrey B. Margulies*

Edward Casmere
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607
Tel: (312) 964-7800
Fax: (312) 964-7799
ed.casmere@nortonrosefulbright.com

Yvonne K. Puig (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Tel: (512) 536-2450
Fax: (512) 536-4598
yvonne.puig@nortonrosefulbright.com

Jeffrey B. Margulies
Eva Yang (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Tel: (213) 892-9400
Fax: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com

***Counsel for Defendant Village Practice Management Company, LLC***

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on April 27, 2026 a true and correct copy of the foregoing Memorandum of Law In Support of VillageMD's Rule 12(b)(6) Motion to Dismiss was served on counsel of record via the Court's electronic filing system.

By: */s/ Eva Yang*
Eva Yang