**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**AT CHICAGO**

| | |
|---|---|
| JOHN DOE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE PRACTICE MANAGEMENT COMPANY, LLC *d/b/a* VILLAGE MEDICAL *d/b/a* VILLAGEMD,<br><br>Defendant. | No. 1:24-cv-02882<br><br>Honorable John J. Tharp, Jr.<br><br>Honorable Albert Berry, III |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT VILLAGE PRACTICE MANAGEMENT COMPANY'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 4

I. The Court cannot consider information outside the Complaint. .......... 4

II. The Complaint alleges the improper disclosure of Plaintiff's PII and PHI. .......... 6

III. Plaintiff states a claim for negligence and negligence *per se*. .......... 7

A. Plaintiff sufficiently alleges breach of Defendant's duty of confidentiality. .......... 8

B. Plaintiff sufficiently alleges negligence per se under the FTC Act and HIPAA. .......... 9

IV. Plaintiff states a claim for Intrusion Upon Seclusion. .......... 10

V. Plaintiff sufficiently alleged his claim for breach of implied contract. .......... 12

VI. Plaintiff states a claim for unjust enrichment. .......... 14

VII. Plaintiff states a claim for breach of the implied duty of confidentiality. .......... 15

VIII. Plaintiff alleges a deceptive or unfair act and pecuniary damages sufficient to support his ICFA claim. .......... 17

IX. Plaintiff states claims for violations of the ECPA. .......... 19

A. Defendant cannot establish that the one-party consent exception applies. .......... 19

B. Defendant provides an electronic communication service. .......... 20

X. Plaintiff alleges damages sufficient to state a claim under the CFAA. .......... 20

CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D., et al., v. Aspen Dental Management, Inc.*,
2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ....................1, 19

*Allison Theys v. Dental Intelligence, Inc.*,
2026 WL 636743 (N.D. Ill. Mar. 6, 2026)....................8, 9

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2008)....................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*City of Chicago v. Michigan Beach Hous. Co-op.*,
297 Ill. App. 3d 317 (1998) ....................14

*Connick v. Suzuki Motor Co.*,
174 Ill. 2d 482 (1996) ....................18

*Coy v. Washington Cnty. Hosp. Dist.*,
372 Ill. App. 3d 1077 (2007) ....................1

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140....................2, 10, 12

*Geisberger v. Willuhn*,
72 Ill. App. 3d 435 (1979) ....................14, 15, 16, 17

*Gunn v. Cont'l Cas. Co.*,
968 F.3d 802 (7th Cir. 2020) ....................4

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)....................19

*Hartley v. Univ. Of Chicago Med. Ctr.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ....................2, 11, 19

*Hartley v. Univ. of Chicago Med. Ctr.*,
2025 WL 2802317 (N.D. Ill. Oct. 1, 2025)....................1, 19

*Hartman v. Meta Platforms, Inc.*,
2024 WL 4213302 (S.D. Ill. Sept. 17, 2024)....................5

*Howard v. Renal Life Link, Inc.*,
2010 WL 4483323 (N.D. Ill. Nov. 1, 2010) ....................7

*Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*,
849 F.3d 355 (7th Cir. 2017) ....................13

*Johnson v. K mart Corp*
311 Ill. App. 3d 573 (1st Dist. Jan. 13, 2000)....................12, 13

*Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*,
55 F.4th 517 (7th Cir. 2022) ....................4

*Karon v. CNU Online Holdings, LLC*,
2019 WL 3202822 (N.D. Ill. July 16, 2019)....................5

*In re Kemper Sports Mgmt. Data Breach Litig.*,
2026 WL 25820 (N.D. Ill. Jan. 5, 2026) ....................8

*Krupa v. TIC Int'l Corp.*,
2023 WL 143140 (S.D. Ind. Jan. 10, 2023)....................2, 7, 13

*Kurowski et al. v. Rush*,
2024 WL 3455020 (N.D. Ill. July 18, 2024)....................1, 11, 17, 19

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)....................1, 11, 13

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .................... *passim*

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................1, 6, 11, 13

*Langston v. Mid-Am. Intercollegiate Athletics Ass'n*,
448 F. Supp. 3d 938 (N.D. Ill. 2020) ....................13

*Lawlor v. N. Am. Corp. of Ill.*,
2012 IL 112530 (2012) ....................10

*Lozada v. Advoc. Health & Hosps. Corp.*,
2018 IL App (1st) 180320-U ....................2, 13, 14, 15

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024)....................12

*McClain v. Cap. Vision Servs., LLC*,
2026 WL 710926 (N.D. Ill. Mar. 13, 2026).................... *passim*

*McCulley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) ....................11, 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................19

*In re Michaels Stores Pin Pad Litig.*,
830 F.Supp.2d 518 (N.D. Ill. 2011) ....................18

*Moore v. Wausau Club*,
777 F. Supp. 619 (N.D. Ill. 1991) ....................11

*Nazzaro v. Tecta Am. Corp.*,
2025 WL 2604790 (N.D. Ill. Sept. 9, 2025) ....................8

*Olson v. Ferrara Candy Co.*,
275 N.E.3d 439, *appeal denied,* 273 N.E.3d 805 (Ill. 2025) ....................8

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ....................9

*Posner v. Davis*,
76 Ill. App. 3d 638 (1979) ....................14

*Santorini Cab Corp. v. Banco Popular N. Am.*,
2013 IL App (1st) 122070....................14

*Smith v. Facebook Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................19

*Smith, et al. v. Loyola University Medical Center*,
2024 WL 3338941 (N.D. Ill. July 9, 2024).................... *passim*

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................1, 7, 8, 19

*Swanson v. Citibank*,
614 F.3d 400 (7th Cir. 2010) ....................4

*Swearingen v. Momentive Specialty Chemicals, Inc.*,
662 F.3d 969 (7th Cir. 2011) ....................9

*Thompson v. Gordon*,
241 Ill.2d 428 (2011) ....................9

*Vance v. Bureau of Collection Recovery LLC*,
2011 WL 881550 (N.D. Ill. Mar. 11, 2011)....................7

*Vincent v. Medtronic, Inc.*,
221 F. Supp. 3d 1005 (N.D. Ill. 2016) ....................4

*Wall v. Domnick Cunningham & Whalen, PLLC*,
2017 WL 5891330 (N.D. Ill. Nov. 28, 2017) ....................9

**Statutes**

18 U.S.C. § 1030 ....................20

18 U.S.C. § 2511 ....................19, 20

42 U.S.C. §§ 1320d et seq. .................... *passim*

410 ILCS 50/3 § 3(a) ....................16

735 ILCS 5/8-802 ....................16

**Regulations**

45 C.F.R. § 164.501 ....................16

45 C.F.R. § 164.508 ....................16

45 C.F.R. § 164.514 ....................16

**Other Authorities**

Second Restatement of Torts § 892B (1979) ....................11

# **INTRODUCTION**

Defendant Village Practice Management Company, LLC d/b/a Village Medical d/b/a VillageMD ("Defendant"), purposefully installed third-party trackers on its website. When patients like Angel Rodriguez ("Plaintiff") visited the website, including authenticated portions like the patient portal and appointment scheduler, the trackers recorded patients' confidential health communications with Defendant. The trackers then disclosed those communications along with identifying information to third parties like Facebook and Google without patient consent or knowledge.

"Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at 1083. Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiff's personal, private, confidential health information to third parties.

Illinois state courts, Illinois federal courts—including this District—the Seventh Circuit, and courts across the country all agree—allegations like Plaintiff's state claims. *See, e.g.*, *McClain v. Cap. Vision Servs., LLC*, 2026 WL 710926 (N.D. Ill. Mar. 13, 2026); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025); *Hartley v. Univ. of Chicago Med. Ctr.*, 2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) ("*Hartley II*"); *Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*"); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*"); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*"); *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*"); *Kurowski v. Rush Sys. for Health*,

683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*"); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*"); *Hartley v. Univ. Of Chicago Med. Ctr.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley I*"); *see also Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) (denying motion to dismiss in data breach context); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 (same); *see also* Ex. A-1 (listing 100+ orders denying similar motions in online tracking cases with substantially similar allegations).

Defendant offers no valid legal reason that the result should differ here. Plaintiff states his claims,[1] Defendant failed to meet its heavy burden, and the Court should deny Defendant's motion.

**FACTUAL BACKGROUND**

Defendant functions as a trusted Illinois healthcare provider. SAC ¶¶ 32, 38-43. Plaintiff is Defendant's patient and has received healthcare services from Defendant, including primary care and mental health treatment. *Id.* ¶¶ 148-59. As part of his medical care and at Defendant's direction and encouragement, Plaintiff relied on Defendant's website to communicate confidential patient information, including: to browse the Website; to find a doctor on the "Find a provider" function, to wit, the names of his primary care and family practice providers, including for his mental health; to search for practice locations closer to his home; to research treatments for mental health and primary care. *Id*. Plaintiff also used the patient portal, including to schedule appointments. *Id.*

Plaintiff reasonably expected that his communications with Defendant were confidential and would not be transmitted to or intercepted by a third party—in essence, that the information would be safeguarded according to Defendant's Privacy Policies and the law. *Id.* Plaintiff did not consent to Defendant's Disclosure of his Private Information to third parties. *Id.* ¶¶ 14, 144, 147.

[1] Plaintiff voluntarily dismisses his claim for violations of the Illinois Eavesdropping Statute.

Indeed, Defendant promises patients in its own Privacy Policies that "***[w]e will not use or disclose your health information . . . unless you authorize us, in writing*** . . . Specific examples of uses or disclosures requiring written authorization include the use of psychotherapy notes, marketing activities, the sale of your health information and most uses and disclosures for which we are compensated." *Id.* ¶ 100 (internal citation omitted, emphasis added).

Unfortunately, Defendant does share protected health information without written authorization. *Id.* ¶¶ 1, 24. Defendant does so via "trackers" or "tracking technologies," that it knowingly configured and implemented into its Website. *Id.* ¶¶ 1, 10. These trackers collected and transmitted patients' Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") (collectively, "Private Information") to Facebook, Google, Adobe, New Relic, Microsoft, AdRoll, Datadog, AppNexus, and potentially others (the "Third Parties"), without patients' knowledge or authorization (the "Disclosure"). *Id.* This Private Information included that Plaintiff was seeking medical treatment, searches for treatment locations, Plaintiff's location, Plaintiff's searches for medical care, the mental health and primary care treatments Plaintiff viewed, Plaintiff's status as a patient, Plaintiff's use of the patient portal, Plaintiff's scheduling of appointments, and Plaintiff's identity. *Id.* ¶ 157.

Defendant's Disclosure was made for the purpose of marketing its services, enhancing its marketing efforts, and bolstering its profits. *Id.* ¶¶ 1, 7, 19, 27, 47, 55, 71. The Third Parties, in turn, sold Plaintiff's Private Information to fourth-parties. *Id.* ¶¶ 19, 55, 81, 88. As a direct result of Defendant's and the Third Parties' sale of his Private Information, Plaintiff receives targeted advertisements directly related to the treatment he sought from, and Private Information he shared with, Defendant. *Id.* ¶ 159. Because of Defendant's actions, Plaintiff suffered injuries, including monetary damages, loss of privacy, statutory damages, unauthorized disclosure of and access to

his Private Information to third parties and fourth parties, use of his Private Information for advertising purposes, embarrassment, humiliation, frustration, emotional distress, diminution of the value of his Private Information, lost benefit of his bargain, and increased risk of future harm from further unauthorized use and disclosure of his Private Information. *Id.*

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Vincent v. Medtronic, Inc.*, 221 F. Supp. 3d 1005, 1007 (N.D. Ill. 2016) (citation omitted). The court "accept[s] as true all well-pleaded facts in the complaint and draw[s] reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). A complaint should be dismissed only if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Put differently, a complaint is sufficient so long as it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank,* 614 F.3d 400, 404 (7th Cir. 2010). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

## ARGUMENT

### I. The Court cannot consider information outside the Complaint.

Defendant's motion attempts to introduce a purported copy of its privacy policy as Exhibit A to its motion. The Court may not consider this unauthenticated document.

Defendant makes little argument for Exhibit A's inclusion, referencing only the general standard that the Court *may* consider documents incorporated by reference. ECF 61 at 4 n.2; *see*

*Hartman v. Meta Platforms, Inc.*, 2024 WL 4213302, at *8 (S.D. Ill. Sept. 17, 2024) ("eligibility under the incorporation-by-reference doctrine does not mandate the Court's consideration of extraneous documents at the motion to dismiss stage"). Contrary to Defendant's vague argument, consideration of Defendant's Exhibit A or links to its current website would be inappropriate at this stage. Because Exhibit A and the website's links are unauthenticated, Plaintiff and the Court cannot determine, for example, the date the content was generated or the extent to which it overlaps or differs from the Joint Notice of Privacy Practices and other privacy disclosures cited in the Complaint. *See* ECF 34-3. This is especially concerning where, as here, Defendant operates and controls the Website and, therefore, has the authority and capacity to alter, amend and revise the Website's content—including the privacy policy—at any time. Consideration of such purported evidence is inappropriate at the pleading stage. *See Hartman*, 2024 WL 4213302, at *8-9 (refusing to consider Defendant's attachments on motion to dismiss, including privacy policies, reasoning "it is entirely possible that prior versions of the privacy notices contained different language" and that "it does not capture the full spectrum of terms, conditions, and disclosures that Plaintiffs agreed to"); *Karon v. CNU Online Holdings, LLC*, 2019 WL 3202822, at *2 (N.D. Ill. July 16, 2019) (declining to consider printed portions of defendant's website that were "outside the complaint altogether and inappropriate for judicial notice.").

But even considering Defendant's purported evidence, the privacy policies still establish Plaintiff's non-consent. Defendant asserts that it provides detailed information regarding the use of tracking technologies for marking purposes, but the policies attached and cited by Defendant state: "Unless you expressly consent to let us do so, your personally identifiable information, including your e-mail address, ***will not be sold, rented, licensed, or otherwise shared with third***

***parties***." ECF 61-1 at 3 (emphasis added).[2] The parties never agreed that Defendant would share patients' personally identifiable information with third parties, much less that it would do so for marketing purposes.[3] Under Illinois law, Defendant's argument must be rejected. *See Kurowski II*, 683 F. Supp. 3d at 851 (rejecting defendant's disclosure/consent argument where, "In both the T&Cs and the various privacy policies and statements incorporated within them, [defendant] makes a series of promises not to share or sell patients' personally identifiable information or their confidential health information without their consent.").[4]

**II. The Complaint alleges the improper disclosure of Plaintiff's PII and PHI.**

Defendant asserts that Plaintiff failed to allege Defendant's disclosure of PHI or PII and contends that Plaintiff's allegations are conclusory or relate only to webpages that do not collect PII or PHI. ECF 61 at 5-6.[5] Defendant misstates or otherwise ignores Plaintiff's allegations.

Focusing first on Defendant's argument about the patient portal, Defendant implicitly concedes that patient portal activities *do* require PHI and PII. And Plaintiff plainly alleged that Defendant disclosed Plaintiff's "activities on the patient portal." SAC ¶ 20. Like the Court, Defendant must accept this factual allegation as true at this stage. Defendant's argument further ignores Plaintiff's allegations that, from his use of Defendant's website, Defendant disclosed: Plaintiff's status as a patient, identity, browsing history, including seeking of medical treatment,

---

[2] Notably, Defendant's Exhibit is also clearly incomplete, leaving Plaintiff and the Court to guess as to what is omitted. For example, page 5 of 10 ends with the heading "What are cookies?" but the first line of page 6 of 10 begins: "and to make our site more convenient, useful, valuable, and appealing to you." ECF 61-1.

[3] While Defendant may point to its policy that "we may share that [non-personally identifiable] information with business partners, third-party vendors working on our behalf, or our health and wellness sponsors," Defendant *also* states that such disclosure is "to improve our Service," not for the purpose of marketing. ECF 61-1 at 4. This does not apply to the disclosures at issue here. Plaintiff has cleared pled that the disclosures at issue were personally identifiable. *E.g.*, SAC ¶¶ 15, 20, 109, 136-40, 146, .

[4] Defendant references its attached Privacy Policies throughout its argument, and Plaintiff objects on the same bases throughout without reiterating the arguments ad nauseum.

[5] Defendant again asks the Court to look at its outside-the-complaint website by clicking a URL. As above, this is inappropriate on motion to dismiss.

searches for treatment locations, searches for a doctor including for primary care and mental health treatment, research for mental health and primary care treatment, location, use of the patient portal, and scheduling of appointments. *Id.* ¶¶ 150, 157. Defendant does not deign to explain how these allegations are not protected PHI or PII, and Defendant may not simply disregard these facts to obtain dismissal.

Defendant also argues that Plaintiff's "information and belief" allegations fail to meet the pleading standard. First, Plaintiff's allegations are backed with detailed factual support, including 147 factual background paragraphs. *See* SAC ¶¶ 1-147. Furthermore, Defendant itself admits that its citation is "in context of a fraud claim." ECF 61 at 6. Defendant's reference to the heightened pleading standard of Rule 9(b) entirely fails to meet its Rule 12 burden of showing Plaintiff's claims failed under Rule 8(a). *See, e.g.*, *Vance v. Bureau of Collection Recovery LLC*, 2011 WL 881550, at *3 (N.D. Ill. Mar. 11, 2011) ("The Seventh Circuit has specifically recognized that there is nothing *per se* improper about pleading allegations 'upon information and belief.'"). Indeed, "allegations based on 'information and belief' are acceptable under Rule 8(a)." *Howard v. Renal Life Link, Inc.*, 2010 WL 4483323, at *3 (N.D. Ill. Nov. 1, 2010). Again, Defendant's attempt to disregard Plaintiff's factual allegations cannot support its request for dismissal. The motion fails.

## III. Plaintiff states a claim for negligence and negligence *per se*.

Defendant's disclosure of Plaintiff's Private Information breached Defendant's duty of confidentiality under common law, the FTC Act, HIPAA, industry standards, and Illinois statute, causing Plaintiff's injury. SAC ¶¶ 4-6, 168-95, 249-57. Illinois courts find such claims meritorious. *See, e.g.*, *Loyola*, 2024 WL 3338941, at *7; *Krupa*, 2023 WL 143140; *Stein*, 2025 WL 580556, at *9.[6]

[6] *See also* Exs. A-3, A-4 (listing orders allowing negligence and negligence per se claims).

**A. Plaintiff sufficiently alleges breach of Defendant's duty of confidentiality.**

"[T]he complaint plausibly alleges a duty to prevent the disclosure of [Plaintiff's] private health information." *Loyola*, 2024 WL 3338941, at *7. This duty, arises under, for example, the "Illinois' Personal Information Protection Act ('PIPA') [which] requires data collectors. . . to protect this information from 'unauthorized access, acquisition, destruction, use, modification, or disclosure.'" *Id.* Defendant breached this duty by disclosing Plaintiff's information to unauthorized Third Parties. Indeed, as this District recognized in a substantively identical case challenging online tracking, "multiple recent decisions from this District and one decision from the Illinois Appellate Court have rejected defendant's position" that "Illinois does not recognize a common law duty to safeguard personal information." *McClain*, 2026 WL 710926, at *6-7 (citing *Allison Theys v. Dental Intelligence, Inc.*, 2026 WL 636743, at *8 (N.D. Ill. Mar. 6, 2026); *In re Kemper Sports Mgmt. Data Breach Litig.*, 2026 WL 25820, at *6 (N.D. Ill. Jan. 5, 2026); *Nazzaro v. Tecta Am. Corp.*, 2025 WL 2604790, at *3 (N.D. Ill. Sept. 9, 2025); and *Olson v. Ferrara Candy Co.*, 275 N.E.3d 439, 459, *appeal denied,* 273 N.E.3d 805 (Ill. 2025)); *Stein*, 2025 WL 580556, at *9.

Defendant's argument that it did not breach its duty also rewrites Plaintiff's allegations. Defendant contends that it disclosed that it placed trackers on its website and that Plaintiff consented to that action because its privacy policy states: "third parties may automatically collect information about you using their own cookies or other technologies, or may otherwise collect or have access to information about your visits to this Service and other websites, your IP address, your ISP, the browser you use to visit a Service and other usage information." ECF 61 at 7. However, this disclosure does not cover many improperly shared data points, such as Plaintiff's status as a patient, search for medical treatment, treatment locations, or a doctor, and appointment scheduling. *Id.* ¶¶ 150, 157. Further, Plaintiff's allegations are not directed towards "third parties" or their actions; rather, it specifically alleges that "***Defendant*** knowingly configured and implemented into

***its website,*** . . . code-based tracking devices known as 'trackers' or 'tracking technologies,' which collected and transmitted patients' Private Information to Facebook, and other third parties, without patients' knowledge or authorization." SAC ¶ 10. In other words, the tracking and data transmission that Plaintiff attacks was implemented by Defendant on its website and included data points far beyond those discussed in the alleged "third party disclosure."

Moreover, as the Seventh Circuit has observed, under Illinois law, "breach of duty . . . present[s] a question[] of fact." *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) (citing *Thompson v. Gordon*, 241 Ill.2d 428 (2011)). Such factual questions cannot be resolved on a motion to dismiss. *Wall v. Domnick Cunningham & Whalen, PLLC*, 2017 WL 5891330, at *3 (N.D. Ill. Nov. 28, 2017).

Finally, Defendant makes a meagre argument that Plaintiff failed to allege sufficient damages. But as this District recognized in *Loyola*, the damages element is met where, as here, "plaintiffs allege that they have suffered 'fear, anxiety and worry' about the status of, and the loss of control over, their private health information." 2024 WL 3338941, at *7; SAC ¶ 159(h). *See also McClain*, 2026 WL 710926, at *7 (holding plaintiff alleged damages based on substantively identical allegations). Defendant's motion is inconsistent with Illinois law and should be denied.

**B. Plaintiff sufficiently alleges negligence per se under the FTC Act and HIPAA.**

Defendant's contention that Plaintiff's negligence *per se* claim fails because HIPAA and the FTC Act do not provide for strict liability is incorrect. This District recently recognized that HIPAA ***can*** support a claim for negligence *per se* where, like here, "Plaintiff[] input [his] information into a scheduling tool." *Theys*, 2026 WL 636743, at *13. Illinois' federal courts similarly have held that "the FTC Act can serve as the basis of a negligence per se claim." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760-61 (C.D. Ill. 2020). Courts around the country agree and have found that similar allegations state a negligence *per se* claim. The same result is proper here.

## IV. Plaintiff states a claim for Intrusion Upon Seclusion.

To state a claim for intrusion upon seclusion, a plaintiff must allege: "(1) . . . an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Flores*, 2023 IL App (1st) 230140, ¶ 51. Here, Plaintiff sufficiently pled an intrusion upon seclusion claim by alleging that he had a reasonable expectation of privacy in communicating his sensitive Private Information to Defendant—his medical provider—on its website, and Defendant utilized secret trackers to disclose that Private Information to unauthorized third parties without Plaintiff's consent, an act that is highly offensive to a reasonable person which caused Plaintiff embarrassment, humiliation, frustration, and emotional distress. SAC ¶¶ 12, 15, 25, 73-74, 108-11, 140-45, 152-59, 196. Courts in Illinois and across the country have found that similar claims have merit. *See, e.g.*, *Flores*, 2023 IL App (1st) 230140, ¶ 52; *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 (2012).[7]

Defendant argues that because its "Privacy Policy informs Plaintiff that his information could be disclosed," Plaintiff's claim somehow fails. ECF 61 at 10. However, this assertion is baseless as Defendant's Privacy Practices states the opposite:

> Specific examples of uses or ***disclosures requiring written authorization*** include the use of psychotherapy notes, ***marketing activities***, ***the sale of your health information*** and most uses and disclosures for which we are compensated.

SAC, Ex. C (emphasis added). Plaintiff alleges repeatedly that Defendant disclosed Plaintiff's Private Information for marketing purposes and that Plaintiff never consented to Defendant sharing his Private Information with Third Parties for such purposes. SAC ¶¶ 7, 19, 27, 47, 81, 99, 105-08, 142-44, 156, 196. Accordingly, the Court should disregard this argument.

---

[7] *See also* Ex. A-6 (listing orders denying similar motions to dismiss privacy claims).

Defendant next cites *Hartley I* and *Kurowski I* for the proposition that disclosure or publication of private Personal Information by the healthcare provider is not an "intrusion."[8] ECF 61 at 10. But these cases are unpersuasive given the allegations here. The *Hartley I* and *Kurowski* courts dismissed the plaintiffs' intrusion upon seclusion claims because "the allegedly intercepted communications were intended to reach [the defendant healthcare provider]" and the "actual intrusion upon patients' seclusion, via interception of their communications, [was] carried out by third parties." *Hartley I*, 2024 WL 1886909, at *7; *Kurowski I*, 659 F. Supp. 3d at 943-44. In contrast, here, Plaintiff alleged that the invasion was carried out by ***Defendant*** when it used trackers installed on its website to share Private Information with unauthorized Third Parties. *See* SAC ¶¶ 22, 47, 110. As at least one district court has held, *Hartley I* and *Kurowski I* are unpersuasive in this context:

> the voluntariness of [the plaintiffs'] actions is immaterial to the intrusion upon seclusion claim. Plaintiffs allege that they were unaware that their [PHI] would be disclosed to third parties. Thus, any consent given to Defendant to use [the PHI] for a limited purpose was invalid for Defendant's larger ultimate purpose.

*McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, *30 (D. Ariz. May 10, 2024). The court then cited the Second Restatement of Torts § 892B (1979)—which Illinois has adopted[9]—and which states:

> If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

*Id*. That those plaintiffs did not consent to third party technology companies gaining access to their

[8] In each of these cases, the plaintiffs' claims involving the defendant healthcare provider sharing PHI with third party technology companies via hidden website trackers were allowed to proceed in subsequent rulings by the same court. *See Kurowski II*, 683 F. Supp. 3d 836; *Kurowski III*, 2023 WL 8544084; *Kurowski IV*, 2024 WL 3455020; *Hartley I*, 2024 WL 1886909.

[9] *See Moore v. Wausau Club*, 777 F. Supp. 619, 620 (N.D. Ill. 1991).

Private Information was sufficient to sustain an intrusion upon seclusion claim. Such reasoning has been adopted by numerous courts around the country, including by the Illinois First District Appellate Court. *See, e.g.*, *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024); *Flores*, 2023 IL App (1st) 230140; Ex. A-6.

The Court should not reward Defendant's deception and should follow the well-reasoned authority above. As in *McCulley*, Plaintiff alleges that Defendant placed hidden trackers on its website with knowledge that the Private Information Plaintiff input into the website would be transferred to Third Parties. SAC ¶¶ 12, 15, 25, 72-74, 108-11, 140-43, 154-56. Thus, Plaintiff cannot be said to have "voluntarily" provided his Private Information to Defendant for this purpose when the tracking technologies Defendant employed were invisible to him. *Id.* Furthermore, Defendant a healthcare provider, made affirmative representations to Plaintiff, its patient, that it was not collecting or selling his personally identifying Private Information. *Id.* ¶¶ 99-107. These allegations are sufficient to state a claim for intrusion upon seclusion under Illinois law. *See Johnson v. K mart Corp*., 311 Ill. App. 3d 573, 579 (1st Dist. Jan. 13, 2000) (finding facts to support an intrusion upon seclusion claim where the plaintiffs had a reasonable expectation that their conversations with fake "coworkers," who were secret agents of their employer, would remain private, and that any disclosures obtained through this deception were not voluntary disclosures).

Defendant not met its burden to demonstrate Plaintiff has not plausibly alleged his claim and Defendant is clearly on notice of this claim and can formulate a defense. Its motion to dismiss Plaintiff's intrusion upon seclusion claim should be denied.

## V. Plaintiff sufficiently alleged his claim for breach of implied contract.

Plaintiff sufficiently alleged a contract implied in Defendant's conduct: Plaintiff provided monetary compensation to Defendant in exchange for medical care. SAC ¶¶ 271-81. As a condition of his medical care, Defendant required its patients to provide their private, confidential, health

information. *Id.* In return, Defendant provided its patients with promises or terms of the contract through its conduct, privacy policies, and elsewhere—its implied, implicit, elevated duty as health care provider, and good faith duties—to keep that private, confidential, health information secure and confidential. *Id.* These are terms that were not only provided in the Privacy Policies but were also implied by conduct. When, in the course of conduct, health care providers require patients to provide confidential information, the implied promise is that health care providers will keep this *confidential* information *confidential*—in the same condition it received it. Defendant failed to do so and thus breached its contractual obligations. *Krupa*, 2023 WL 143140; *Kurowski III*, 2023 WL 8544084; *Lozada*, 2018 IL App (1st) 180320-U.[10]

Defendant asks the Court to dismiss this claim because Plaintiff has an express contract claim, rather than an implied one. ECF 61 at 11. While Plaintiff appreciates the concession that he has a valid express contract claim, Defendant's argument is legally incorrect. At this stage of the litigation, the Court need not resolve questions of alternative claims or theories. *See, e.g., Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 366 (7th Cir. 2017) ("The Federal Rules of Civil Procedure—which allow alternative and even inconsistent pleadings and take a permissive view of amendments—are drafted flexibly so parties may tailor their theories as they conduct discovery and learn more about the case."); *Langston v. Mid-Am. Intercollegiate Athletics Ass'n*, 448 F. Supp. 3d 938, 954 (N.D. Ill. 2020) ("the Federal Rules of Civil Procedure allow [a plaintiff] to allege breaches of express and implied contract in the alternative.").

Defendant reiterates its incorrect consent argument based on its attached privacy policies, addressed above. *See Kurowski II*, 683 F. Supp. 3d at 851 (rejecting such argument in the context of breach of contract). Finally, Defendant argues Plaintiff failed to sufficiently allege damages. But

[10] *See also* Ex. A-4 (listing orders denying similar motions to dismiss contract claims).

Illinois law is clear: "A defrauded purchaser is entitled to damages which will give him the 'benefit of his bargain,'" a harm Plaintiff alleged, and which is solely sufficient. *Posner v. Davis*, 76 Ill. App. 3d 638, 644–45 (1979); SAC ¶ 159(c), (j); *see also, e.g.*, *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979) ("The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of "personal" information, E.g., information relating to the patient's mental or physical condition or the physician's diagnosis or treatment."); *City of Chicago v. Michigan Beach Hous. Co-op.*, 297 Ill. App. 3d 317, 324 (1998) ("Benefit-of-the-bargain damages are developed by 'assessing the difference between the actual value of the property sold and the value the property would have had if the representations had been true.'"); *Santorini Cab Corp. v. Banco Popular N. Am.*, 2013 IL App (1st) 122070, ¶ 26 ("The measure of damages for breach of contract is the amount that will compensate the aggrieved party for the loss 'which either fulfillment of the contract would have prevented or which the breach of it has entailed.'"). Plaintiff further alleged decreased value of his private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant's unauthorized sale of Plaintiff's Private Information, increased risk of future harm, and statutory damages. SAC ¶ 159; *see e.g., In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022) (damages sufficient for breach of implied contract include "loss of the economic value of purchases"). Defendant does not even engage with these allegations. Its motion should be denied.

## VI. Plaintiff states a claim for unjust enrichment.

Plaintiff sufficiently alleged unjust enrichment when he alleged he conferred his PHI upon Defendant under the promise it would not disclose his PHI, Defendant disclosed his PHI, and it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiff's PHI under the false premise of confidentiality. SAC ¶¶ 282-89; *see McClain*, 2026 WL 710926, at *8; *Lozada*, 2018 IL App (1st) 180320-U at ¶ 37. *See also* Ex. A-5 (listing orders

allowing unjust enrichment claims).

Defendant argues unjust enrichment is not a standalone claim. "Rather, it is condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence or, alternatively, it may be based on contracts which are implied in law." *Lozada*, 2018 IL App (1st) 180320-U ¶ 35 (internal citations omitted). Plaintiff's claim is proper as pleaded, in combination with Plaintiff's contract and Illinois state statutory claim. And again, claims in the alternative are allowed under the federal pleading standard at this stage.

Defendant also argues Plaintiff failed to allege Defendant retained any benefit. ECF 61 at 13. Plaintiff absolutely alleged he conferred a monetary benefit on Defendant—Plaintiff alleged he paid Defendant for medical services, and the services he paid for were supposed to include reasonable privacy and data security protections for his Private Information, but due to Defendant's Disclosure, Plaintiff did not receive the privacy and security protections for which he paid. SAC ¶¶ 282-89. These allegations are sufficient. *See Lozada*, 2018 IL App (1st) 180320-U ¶ 37 ("Plaintiffs alleged that they conferred a benefit on [defendant] by paying for data security services; [defendant] accepted payment but did not to provide those services; it would be unjust for [defendant] to retain the conferred benefit; and [defendant's] retention of the conferred benefit violates principles of justice, equity, and good conscience."). The motion should be denied. *See McClain*, 2026 WL 710926, at *8.

**VII. Plaintiff states a claim for breach of the implied duty of confidentiality.**

Disclosures which violate the statutory privilege between a patient and their healthcare provider define what is actionable under a contract theory. *Geisberger*, 72 Ill. App. 3d at 438.

Three statutes set forth Defendant's duty to maintain the confidentiality of Plaintiff's

sensitive Private Information: the Medical Patients' Rights Act, 410 ILCS 50/3 § 3(a),[11] 735 ILCS 5/8-802,[12] and HIPAA.[13]

A plaintiff brings a cause of action under a breach of the implied duty of confidentiality theory when a healthcare provider discloses his "personal" information, *e.g.*, information relating to the patient's mental or physical condition or the physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438. Here, Plaintiff alleges that he received healthcare services from Defendant, Defendant agreed to keep his Private Information confidential, Defendant is bound by at least three statutes which establish the physician-patient privilege, and Defendant breached the implied duty of confidentiality to Plaintiff by intentionally deploying online tracking technology on its Website which transmitted Plaintiff's Private Information to unauthorized Third Parties. SAC ¶¶ 31, 97-106, 108-11, 140-43, 157-58, 291-99. Therefore, Plaintiff has adequately pled a breach of the implied duty of confidentiality claim under Illinois law.

Defendant cites *Kurowski I* to suggest that Plaintiff's claim fails because he has not alleged "the disclosure of any information related to the provision of treatment." ECF 61 at 13-14. Defendant also, again, falsely claims that its Privacy Policy "expressly provides for the disclosure of personal information." As discussed *supra*, Defendant's Privacy Policy does not say anything of the sort. In fact, the parties agreed that Defendant may disclose its patients' Private Information

[11] "(a) The right of each patient to care consistent with sound nursing and medical practices, to be informed of the name of the physician responsible for coordinating his or her care, to receive information concerning his or her condition and proposed treatment, to refuse any treatment to the extent permitted by law, and *to privacy and confidentiality of records except as otherwise provided by law*." (emphasis added).

[12] "*No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character*, necessary to enable him or her professionally to serve the patient, except only (1) in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide, (2) in actions, civil or criminal, against the physician for malpractice, (3) with the expressed consent of the patient . . ." (emphasis added).

[13] 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501, 164.508(a)(3), 164.514(b)(2)(i) provides that a covered healthcare entity "*must obtain an authorization for any use or disclosure of protected health information for marketing*." (emphasis added).

only with their *express written authorization*. SAC, Ex. C. Furthermore, Plaintiff's allegations are not analogous to those made in *Kurowski*. Here, Plaintiff alleges that Defendant disclosed the following: his seeking of medical treatment, his searches for treatment locations, his location via the zip code he searched, his searches for physicians, including the names of the physicians he searched for and viewed, and/or their specialties, the mental health and primary care treatments he viewed, his status as a patient of Defendant, information concerning his use of the patient portal, including what appointments he scheduled, and his *identity* – to Facebook and other technology companies. SAC ¶ 157. Plaintiff further alleges that after he used Defendant's website, eerily personal advertisements for "mental health outpatient clinics" began appearing in his Facebook feed and he began to see other seemingly tailored advertisements related to ADHD and depression. *Id.* ¶ 151. Such allegations clearly state information relating to Plaintiff's mental or physical condition and his physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438. Indeed, the *Kurowski* court acknowledged that allegations setting forth unauthorized disclosures of a patient's mental or physical condition, the patient's name, and violations of the statutory patient-privilege *would be actionable* under a breach of implied duty of confidentiality theory. *Kurowski I*, 659 F. Supp. 3d at 940-41. Defendant failed to meet its burden as to Plaintiff's claim for breach of the implied duty of confidentiality. The motion must be denied.

## VIII. Plaintiff alleges a deceptive or unfair act and pecuniary damages sufficient to support his ICFA claim.

Next, Defendant contends Plaintiff's IFCA claim must fail because Plaintiff's allegations that Defendant promised not to use Plaintiff's PHI for marketing purposes prior to obtaining consent, "is simply not plausible given [Defendant's] Privacy Policy." ECF 61 at 14. Defendant states, without support, that Plaintiff's allegations of deception are "bald assertion[s]" and "conclusory allegations" that are insufficient to state an ICFA claim. *Id.* at 12. This argument is

absurd.

First, as above, Defendant's Privacy Policy expressly promises to seek its patients' written authorization for any use of their Private Information for marketing activities. SAC, Ex. C. Plaintiff alleges that, despite this promise, Defendant disseminated Plaintiff's Private Information for marketing purposes ***without his written authorization or consent***. SAC ¶¶ 7, 19, 27, 47, 81, 99, 105-08, 142-44. It is unclear how these allegations are conclusory or how they could be "bald assertions." Plaintiff's allegations of deception plainly are pleaded with the specificity required under Illinois law. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 497 (1996) (holding that representations are alleged with sufficient specificity when they set forth "what the statement was, when it was made, who made it, and to whom it was made."). Plaintiff's allegations are sufficient to state in ICFA claim. *See In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 526 (N.D. Ill. 2011) (finding that defendant ignoring its obligations to prevent exposure of Plaintiff's personal information constituted an unfair practice under ICFA).

Defendant next argues that Plaintiff failed to plead an actual pecuniary loss. ECF 61 at 14-15. This argument, again, ignores Plaintiff's allegations. Under the ICFA, actual damages include any economic loss, and Plaintiff has alleged suffering monetary damages and diminution of the value of his Private Information. SAC ¶ 159. Plaintiff further alleged, as outlined in the claims above, that he paid for medical services and confidentiality of information that he did not receive. *Id.* These allegations are sufficient at the pleadings stage. *See Michaels*, 830 F. Supp. 2d at 527 (finding lost money sufficient for ICFA claim). Accordingly, Plaintiff has extensively alleged that Defendant intentionally implemented the pixel trackers to boost its own profits, at Plaitniff's expense. Plaintiff has sufficiently alleged unfair and deceptive conduct under ICFA.[14]

[14] Courts across the country have allowed similar claims to proceed. *See* Ex. A-7 (listing orders denying motions to dismiss consumer protection claims).

## IX. Plaintiff states claims for violations of the ECPA.

### A. Defendant cannot establish that the one-party consent exception applies.

Defendant relies on the ECPA's "one party consent" provisions. ECF 61 at 17. However, as Defendant concedes, the one-party consent provision is inapplicable if the disclosure itself constitutes a tort or a criminal act. 18 U.S.C. § 2511(2)(d). Here, Plaintiff alleges Defendant's disclosure violated HIPAA, FTC Standards, and related regulations. SAC ¶¶ 168-84. As this District has held, the one-party consent provision is unavailing in such cases. *See Hartley II*, 2025 WL 2802317, at *3; *Aspen Dental*, 2024 WL 4119153, at *3; *Kurowski IV*, 2024 WL 3455020, at *6; *Loyola*, 2024 WL 3338941, at *7; *Hartley I*, 2024 WL 1886909, at *3; *Stein*, 2025 WL 580556, at *4-6.

Defendant cites *Smith v. Facebook Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017); however, the very District that decided *Smith* distinguished it from cases like this one: "Unlike in *Smith*, . . . the Pixel captures information that connects a particular user to a particular healthcare provider—*i.e.*, patient status—which falls within the ambit of information protected under HIPAA." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *see also* SAC ¶¶ 50, 109, 137-38 (alleging pixels at issue disclosed patient status and information identifying users). And, unlike in *Hannant*, cited by Defendant, Plaintiff specifically alleges that he "used the Website and Online Platforms to: . . . find a doctor" and "used the patient portal, including to schedule appointments." SAC ¶ 150; *cf. Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (dismissing ECPA claim where complaint did not allege "even that [plaintiff] logged into the patient portal"). As this District has recognized, *Hannant* is not persuasive where these types of allegations are present. *See, e.g.*, *Hartley II*, 2025 WL 2802317, at *6.

As in *Hartley I*, *Hartley II*, *Aspen Dental*, *Kurowski IV*, and *Loyola*, the motion fails.

**B. Defendant provides an electronic communication service.**

Defendant next asserts that it is "not an electronic communication service." ECF 61 at 19-20. But Defendant's argument rests on a misreading of the statute, which imposes liability on any "person or entity ***providing*** an electronic communication service to the public." 18 U.S.C. § 2511(3)(a) (emphasis added).

Here, Plaintiff alleges that Defendant facilitates communications between customers and third parties via its website. Defendant's own authorities confirm that a medical provider may be "in the electronic communications business" when, like here, "patients can communicate with their provider" via the defendant's platform. *See* ECF 61 at 19 (citing *Kurowski I*, 659 F. Supp. 3d at 940, for this proposition). Defendant's website performs exactly that function. *See* SAC ¶ 150 (alleging Plaintiff used Defendant's website to find a provider and schedule an appointment); *see also* SAC ¶ 42. As Defendant's own authorities show, its motion should be denied.

## X. Plaintiff alleges damages sufficient to state a claim under the CFAA.

The Court should also deny Defendant's motion to dismiss Plaintiff's claim for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Defendant's only argument for dismissal of this count is its position that Plaintiff did not suffer "damage or loss" by reason of the violation. ECF 61 at 20. Defendant ignores Plaintiff's allegations, specifically that Defendant's misconduct caused "loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value," SAC ¶ 390, because of the secret transmission of Plaintiff's and the Class Members' Private Information as set forth in detail herein, which were never intended for public consumption or unauthorized sharing for marketing purposes. That allegation must be taken as true for purposes of Defendant's motion. The Court should deny the motion.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion in its entirety.

Dated: May 27, 2026

Respectfully submitted,

/*s/Samuel Strauss*
Samuel J. Strauss, Bar No. 6340331
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops (*pro hac vice*)
Lisa M. La Fornara (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
llafornara@cohenmalad.com

J. Gerard Stranch, IV (*pro hac vice*)
Andrew E. Mize (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com
amize@stranchlaw.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Samuel J. Strauss, hereby certify that on May 27, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 27th day of May, 2026.

Respectfully submitted,

*/s/Samuel Strauss*

Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com