**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANGEL RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE PRACTICE MANAGEMENT COMPANY, LLC D/B/A VILLAGE MEDICAL D/B/A VILLAGEMD,<br><br>Defendant. | Civil Action No. 1:24-cv-02882<br><br>Judge John J. Tharp, Jr. |

# REPLY IN SUPPORT OF DEFENDANT VILLAGE PRACTICE MANAGEMENT COMPANY'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. The Privacy Policy is Properly Before the Court. ..... 2
B. Plaintiff Still Fails to Plausibly Allege the Disclosure of PHI or PII. ..... 4
C. Plaintiff Fails to State a Claim for Negligence or Negligence per se. ..... 5
*1. There is No Plausible Theory Supporting a Breach of any Duty or Damages* ..... 5
*2. Plaintiff fails to adequately allege negligence per se because neither the FTC Act nor HIPAA imposes strict liability.* ..... 7
D. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion. ..... 8
E. Plaintiff Fails to State a Claim for Breach of Implied Contract. ..... 10
F. Plaintiff Fails to State a Claim for Unjust Enrichment. ..... 13
G. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality. ..... 14
H. Plaintiff Fails to Adequately Allege an ICFA Claim. ..... 15
I. Plaintiff's ECPA Claims Remains Deficient. ..... 16
*1. Plaintiff Cannot Establish the Crime-Tort Exception* ..... 16
*2. VillageMD is Not an Electronic Communications Service for Purposes of the ECPA under Sections 2511(a)(3) and 2702.* ..... 17
J. Plaintiff Fails to State a Claim Under the CFAA. ..... 18
III. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
718 N.E.2d 181 (Ill. 1999) .......... 8

*Archey v. Osmose Utilities Servs., Inc.*,
2021 WL 3367156 (N.D. Ill. Aug. 3, 2021) .......... 11, 12

*Archon Constr. Co. v. U.S. Shelter, LLC*,
413 Ill.Dec. 791, 78 N.E.3d 1067 (Ill. App. Ct. 2017) .......... 10

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 16

*In re Boeing 737 MAX Pilots Litig.*,
638 F. Supp. 3d 838 (N.D. Ill. 2022) .......... 7

*Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .......... 2

*City of Chicago v. Beretta U.S.A. Corp.*,
213 Ill.2d 351 (2004) .......... 7

*City of Chicago v. Michigan Beach Housing Co-op.*,
696 N.E.2d 804 (Ill. App. Ct. 1998) .......... 12

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) .......... 8

*Doe v. Genesis Health System*,
2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) .......... 11

*Flores v. Aon Corp.*,
242 N.E.3d, 356 (Ill. App. Ct. 2023) .......... 11

*Geisberger v. Willuhn*,
390 N.E.2d 945 (Ill. App. Ct. 1979) .......... 12, 13, 15

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) .......... 11, 14, 15, 17

*Hartley v. Univ. of Chicago Med. Ctr.*,
2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) (*Hartley III*)........................................................17

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) (*Hartley I*) ................................................8, 9, 10

*Hartman v. Meta Platforms*,
2024 WL 4213302 (S.D. Ill. Sept. 17, 2024) ...................................................................3

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) (*Kurowski I*)........................................................ *passim*

*Lewerentz v. 1411 State Parkway Condo. Ass'n*,
748 F. Supp. 3d 582 (N.D. Ill. 2024), *appeal dismissed*, 2025 WL 1014637
(7th Cir. Apr. 1, 2025) ...........................................................................................16

*Lozada v. Advocate Health & Hosps. Corp.*,
2018 WL 7080045 (Ill. App. Ct. Dec. 24, 2018)............................................................13, 14

*Maness v. Santa Fe Park Enters., Inc.*,
298 Ill.App.3d 1014 (1998) ....................................................................................11

*Marcatante v. City of Chi.*,
657 F.3d 433 (7th Cir. 2011) ....................................................................................11

*McClain v. Cap. Vision Servs., LLC*,
2026 WL 710926 (N.D. Ill. Mar. 13, 2026)...................................................................7

*McCulley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) ..........................................................9

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ..........................................................................16

*Muir v. Nature's Bounty, Inc.*,
2017 WL 4310650 (N.D. Ill. Sept. 28, 2017) .................................................................13

*Nguyen v. Abbott Labs., Inc.*,
2026 WL 579206 (N.D. Ill. Mar. 2, 2026).....................................................................16

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ..........................................................................8

*Podraza v. Nourish, Inc.*,
2026 U.S. Dist. LEXIS 86073 (N.D. Ill. Apr. 20, 2026) ......................................................11

*Podraza v. Nourish, Inc.*,
2026 WL 1078554 (N.D. Ill. Apr. 20, 2026) ..................................................................10

*Posner v. Davis*,
395 N.E.2d 133 (Ill. App. Ct. 1979) ....................12

*Quicken Loans v. Downing*,
2012 U.S. Dist. LEXIS 144272 (S.D. Ind. Oct. 5, 2012)....................6

*Santorini Cab Corp. v. Banco Popular N. Am.*,
999 N.E.2d 46 (Ill. App. Ct. 2013) ....................12

*Schur v. L.A. Weight Loss Centers, Inc.*,
577 F.3d 752 (7th Cir. 2009) ....................6

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................17

*Smith, et al. v. Loyola University Medical Center*,
2024 WL 3338941 (N.D. Ill. July 9, 2024)....................7, 17

*Theys v. Dental Intelligence, Inc.*,
2026 WL 636743 (N.D. Ill. Mar. 6, 2026)....................8

*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004) ....................8

*In re VTech Data Breach Litig.*,
2018 WL 1863953 (N.D. Ill. Apr. 18, 2018) ....................11

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ....................7

*Yu v. Int'l Bus. Machs. Corp.*,
732 N.E.2d 1173 (Ill. Ct. App. 1st 2000)....................7

**Rules and Statutes**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030....................18

Electronic Computer Privacy Act, 18 U.S.C. § 2510(15)....................16, 17

HIPAA, 42 U.S.C. § 1320d(6)(B)....................17

Fed. R. Evid 106 ....................4

## I. INTRODUCTION

Plaintiff, a patient of defendant Village Practice Management, LLC ("VillageMD"), asserts twelve claims arising from his visits to publicly accessible, unauthenticated webpages on villagemd.com that allegedly employed tracking pixels that disclosed information regarding his website activities to third parties including Meta Platforms, Inc. These "website activities" included learning about certain providers, searching for locations, visiting an informational webpage about medical records, visiting the appointment page with generic dropdown options, and visiting the pre-portal log-in page. The Second Amended Complaint ("SAC") identifies specific unauthenticated webpages that plaintiff alleges contain tracking pixels. While a simple click on these links confirms that these webpages did not collect protected health information ("PHI") or personally identifiable information ("PII"), plaintiff's opposition paints his interactions with these public pages as disclosing plaintiff's "seeking of medical treatment" or plaintiff's "status as a patient" or "the mental health and primary health treatments" that plaintiff viewed. SAC ¶ 157. Such allegations are unsupported and implausible.

Moreover, VillageMD's Privacy Policy, which is properly before the Court as plaintiff does not dispute that is central to the complaint and that is alleged in the SAC as being incorporated into the Terms of Use to which plaintiff consented (SAC ¶ 103), *expressly discloses* the use of third-party tracking technologies on these unauthenticated webpages and that information collected on them may be disclosed and used to deliver targeted advertising. Plaintiff's repeated reference of the Privacy Policy in the SAC and selective attachment of various website terms is precisely the reason the Privacy Policy should be considered under the incorporation-by-reference doctrine.

The SAC suffers from numerous other defects, including the failure to allege damages. Overall, the opposition fails to meaningfully overcome, and in some cases to even address, VillageMD's arguments. Plaintiff relies on conclusory allegations, cites to inapposite case law, and oftentimes completely ignores the authority cited by VillageMD. As plaintiff has already amended his complaint twice, with the most recent amendment coming after VillageMD filed its motion to dismiss, the SAC should be dismissed with prejudice.

## II. ARGUMENT

### A. The Privacy Policy is Properly Before the Court.

Plaintiff argues that the Court should not consider VillageMD's Privacy Policy notwithstanding his repeated references to it in the SAC. Plaintiff does not argue that the Privacy Policy is not central to his complaint, nor can he deny that the SAC expressly alleges that the website is "governed by the terms of the VillageMD Privacy Policy" (SAC ¶ 103). Plaintiff only argues that it is unauthenticated.

First, the Privacy Policy on its face provides that the "Effective Date" is October 15, 2019 with a revised date of August 14, 2020 (exactly the same dates as the website's Terms the Use which plaintiff does attach). As the SAC repeatedly refers to VillageMD's Privacy Policy, which also forms the basis for a variety of his claims, it is "central" to the complaint and can be properly considered. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (The "incorporation-by-reference" doctrine allows courts to consider "documents attached to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to his claim.") (internal quotation and citation omitted). Nonetheless, VillageMD concurrently submits the declaration of Rebecca Graziano to authenticate the Privacy Policy.

The two cases plaintiff cite are inapposite. In *Hartman v. Meta Platforms*, 2024 WL 4213302 (S.D. Ill. Sept. 17, 2024), the court declined to consider the privacy policy because the defendant generated it after the plaintiff interacted with the defendant's software. 2024 WL 4213302 at 8-9. The exact opposite is true here. Plaintiff purports to have begun his relationship with VillageMD in 2023, SAC ¶ 148, and Exhibit A is the version of the Privacy Policy shows an "Effective Date" of October 15, 2019. ECF 6-1. Likewise, *Karon v. CNU Online Holdings, LLC*, is inapposite because the defendant wanted the court to consider two documents, an agreement which was "referenced 'obliquely, if at all'" and printed portions of a website which were "outside the complaint all-together." *See* 2019 WL 3202822 at *2 (N.D. Ill. July 16, 2019).

Finally, plaintiff's argument that the Privacy Policy somehow fails to disclose that the site "shares patients' personally identifiable information with third parties, much less that it does so for marketing purposes" is just wrong. The Privacy Policy expressly states:

> We may use third-party vendors to perform certain services on behalf of us or the Service, such as…tracking the Service's activities, using sharing technology that allows users to share content on this Site through social media, and analytics….Third-party analytics and other service providers may set and access their own tracking technologies on your device, and they may otherwise collect or have access to information about you, ***potentially including personal information***….We may also work with certain third parties to provide us with information regarding traffic on the Service ***to serve advertisements elsewhere online***, and to provide us with information regarding the use of the Service and the effectiveness of our advertisements.

ECF No. 61-1 at 5 (emphasis added).

The Privacy Policy expressly informs users that there are third-party analytics on the website and that information about a visitor's activities on the publicly accessible portions of it may be shared with third parties. Parsing through the conclusory characterizations that such publicly accessible webpages collect PHI, the policy defeats the majority of plaintiff's claims,

which he admits requires "consent to all actions taken by [VillageMD] with respect to [plaintiff's] information in compliance with the Privacy Policy." SAC, ¶ 103. Pursuant to Fed. R. Evid 106 and the rule of completeness, defendant should be allowed to introduce the entire Privacy Policy to prevent plaintiff from cherry-picking select provisions and presenting an incomplete and misleading picture. Otherwise, it opens the floodgate to unnecessary litigation over conduct that was expressly consented to by plaintiff (which is conveniently not attached to the SAC).

### B. Plaintiff Still Fails to Plausibly Allege the Disclosure of PHI or PII.

In response to VillageMD's argument that plaintiff failed to plausibly allege that the website improperly disclosed his PHI or PII, plaintiff claims that the single, factually unsupported, allegation in the SAC that defendant disclosed "activities on the patient portal" (which is different from public webpages) is sufficient. Plaintiff asserts that VillageMD, like the Court, must accept this factual allegation as true. The Court need not, however, accept conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This allegation is threadbare as there are zero details about what "activities" on the patient portal that were purportedly disclosed to third parties. This deficient pleading is likely the result of the fact that VillageMD does *not* have any trackers on its patient portal and, accordingly, plaintiff cannot make specific factual allegations about tracking on the portal in good faith.

Next, plaintiff argues that defendant disclosed "[p]laintiff's status as a patient, identity, browsing history, including seeking of medical treatment, searches for treatment locations, searches for a doctor including for primary care and mental health treatment, research for mental health and primary care treatment, location, use of the patient portal, and scheduling of appointments." Opposition at 6-7. But these are implausible characterizations that plaintiff draws that are not supported by any specific factual allegations in the SAC. Indeed, the SAC provides

*specific* webpages and URLs for these webpages that plaintiff contends contain the Meta pixel. *See* ¶¶ 113-135. All of these webpages are public facing, unauthenticated webpages that do not collect *any* PHI or PII from visitors. For example, plaintiff's reference that VillageMD disclosed his "status" as a patient comes from paragraph 119, which alleges that the URL string from booking an appointment contains information about a patient's status as follows: https://www.villagemedical.com/book-an-appointment#/select-appointment-details?date=2024-04-11&marketKey=vmd-ri-pvd&isExistingPatient=true. But the URL created by a web browser occurs as a part of standard browser behavior and does not necessarily mean the information is transmitted in a manner in which the individual can be identified. Indeed, the SAC fails to allege that the URL string is sent to Meta in an unhashed or unencrypted manner that allows identification of the visitor. The remaining allegations are either conclusory or consistent with paragraphs 113-115 that detail the pixel being on publicly available, unauthenticated webpages, including VillageMD's homepage, an informational page about medical records, searches for physicians, searches for office locations, or generic descriptions about VillageMD's services. *Any* person can visit those pages and look at information on them, just like they can search for similar information on Google or Bing. Plaintiff's assertion that using publicly accessible, unauthenticated web pages results in the transmission of *his* or any putative class member's personal information is implausible.

**C. Plaintiff Fails to State a Claim for Negligence or Negligence per se.**

*1. There is No Plausible Theory Supporting a Breach of any Duty or Damages*

Plaintiff's negligence claim fails because there are no facts to support the concept that VillageMD owed a duty or breached it in light of the Privacy Policy that discloses the tracking technology at issue. In response, plaintiff argues that the Privacy Policy did not disclose "many improperly shared data points, such as Plaintiff's status as a patient, search for medical treatment,

treatment locations, or a doctor, and appointment scheduling." Opposition at 8. As stated above, plaintiff's conclusory characterization of the disclosure of information is implausible. The specific webpages that plaintiff alleges containing the Meta pixel did not actually reveal his status as a patient as plaintiff never alleged that the URL string was sent to Meta in an unhashed or unencrypted manner that would identify plaintiff. Plaintiff's references to searches for medical treatment, treatment locations, appointments, or doctors are all on publicly accessible webpages that did not collect any PHI or PII. The Privacy Policy squarely discloses that "third parties" may "collect or have access to information about your visits" to the website. *See* ECF 61-1 at 5.

Plaintiff's argument that the Privacy Policy only discloses third parties' conduct is also unpersuasive. Plaintiff cherry-picks a sentence from the Privacy Policy which states, "third parties may automatically collect information about you" but ignores other sentences. They provide: "[w]e may use third-party vendors," "[w]e may provide these vendors with access to user information[,]" and "[w]e may also work with certain third parties to provide us with information regarding traffic on the Service to serve advertisements[.]" ECF No. 61-1 at 7. "We" is in clear reference to VillageMD, which directly informs website visitors that VillageMD is the entity using third-party providers to use tracking technologies.

Plaintiff next argues that breach of duty is a question of fact. That is sometimes true, but in instances like this one, where only a single inference can be drawn, the Court may decide the issue as a question of law. *Quicken Loans v. Downing*, 2012 U.S. Dist. LEXIS 144272, at *31 (S.D. Ind. Oct. 5, 2012). And even if breach is a question of fact, "[w]hether a duty exists is a question of law." *Schur v. L.A. Weight Loss Centers, Inc*., 577 F.3d 752, 766 (7th Cir. 2009). Here, no duty exists because VillageMD disclosed that these publicly available webpages that plaintiff used to

search for generic information, location, or doctors, contain tracking technologies. ECF No. 61-1 at 5.

Plaintiff's damages argument fails as well. Illinois law requires a "legally cognizable present injury or damage" to sustain a negligence claim. *Yu v. Int'l Bus. Machs. Corp.*, 732 N.E.2d 1173, 1177 (Ill. Ct. App. 1st 2000). Plaintiff's alleged damages—emotional distress, lost benefit of the bargain, lost value of personal information, and time spent—are unsupported by any details and are thus entirely conclusory. Moreover, even if they were adequately pled, plaintiff's damages do not plausibly stem from any of VillageMD's conduct. Plaintiff cannot claim emotional damages over something that he knew and consented to, particularly as he failed to even allege the disclosure of any actual PHI or PII. *See In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 858 (N.D. Ill. 2022) ("Under Illinois law, proximate cause 'is established only if the defendant's conduct is so closely tied to plaintiff's injury that he should be held legally responsible for it.'") (citing *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351 (2004)). Plaintiff misplaces reliance on *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) and *McClain v. Cap. Vision Servs., LLC*, 2026 WL 710926 (N.D. Ill. Mar. 13, 2026), both of which did not involve a privacy policy that accurately disclosed the conduct that allegedly caused plaintiff harm.

2. *Plaintiff fails to adequately allege negligence per se because neither the FTC Act nor HIPAA imposes strict liability.*

Plaintiff argues that his negligence per se claim survives without addressing any of the authority cited by VillageMD, which provides: a "violation of a statute constitutes negligence *per se* only when it is clear that the legislature intended for the act to impose strict liability." *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024) (citing

*Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999)). Plaintiff also does not argue that HIPAA or the FTC Act imposes strict liability.

Instead, plaintiff cites two cases that supposedly "recently recognized" that HIPAA can support a negligence per se claim. This is an overstatement. First, *Theys v. Dental Intelligence, Inc.*, 2026 WL 636743 (N.D. Ill. Mar. 6, 2026) expressly rejected reliance on HIPAA to support a negligence claim and did not address negligence per se at all. 2026 WL 636743, at *9 (rejecting plaintiffs' attempt to allege negligence by pleading a breach of HIPAA as "HIPAA do[es] not create a private right of action"). Second, *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020) indicates in dicta that the FTC Act can serve as the basis of a negligence per se claim. The *Perdue* court did not rely on Illinois law given the various choice of law issues, and nonetheless dismissed plaintiff's negligence per se claim based on the economic loss doctrine. Importantly, the defendant did not argue, and the court did not consider, that Illinois law requires an act to impose strict liability as a basis for a negligence per se claim.

### D. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.

Plaintiff's intrusion upon seclusion claim is equally deficient. Under Illinois law, "the core of this tort is the offensive prying into the private domain of another" with examples of such prying being "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (quotations omitted). Courts have held that "disclosures of private personal information do[] not support a claim for unauthorized intrusion." *Id*. (quoting *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004)) (internal citations omitted).

Multiple decisions by this court hold that disclosure or publication of private personal information by a healthcare provider does not constitute an "intrusion." *Hartley v. Univ. of*

*Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (*Hartley I*); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 943-44 (N.D. Ill. 2023) (*Kurowski I*). Plaintiff's attempt to distinguish these cases is unpersuasive. He claims they differ because he alleges that VillageMD, not third parties, committed the intrusion. But that is precisely what the plaintiffs in *Hartley I* and *Kurowski* alleged. Kurowski alleged that the hospital "deploy[ed] third-party source code that caused personally identifiable patient data to be disclosed to third parties." 659 F. Supp. 3d at 943. In *Hartley I*, the plaintiff alleged that "every time a patient clicks on to a web page, UCMC links the patient's identity to the communication and transmits the data to Facebook to analyze it for UCMC'S commercial use." 2023 WL 7386060, at *1. In both cases, the Court held that intrusion upon seclusion was not viable because mere disclosure does not support that tort. *Hartley I*, 2023 WL 7386060 at *2-3; *Kurowski I*, 659 F. Supp. 3d at 943-44. Moreover, plaintiff himself repeatedly sets forth that this is a case about disclosure, not intrusion. E.g., SAC, ¶ 1 ("Plaintiff brings this class action to address VillageMD's outrageous, illegal, and widespread practice of ***disclosing*** the confidential Personally Identifying Information") (emphasis added), ¶ 108 ("Defendant ***disclosed*** Plaintiff's and Class Members' Private Information and confidential communications to Facebook and other third parties via the Meta Pixel and other tracking technologies for marketing purposes") (emphasis added), ¶ 109 ("Defendant ***disclosed*** to Facebook the Private Information and communications that Plaintiff and the Class Members submitted to Defendant's Website") (emphasis added).

Plaintiff's reliance on a District of Arizona case, *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, *30 (D. Ariz. May 10, 2024), is unavailing. Plaintiff claims that *McCulley* should govern because the court relied on the Restatement (Second) of Torts to reach its conclusion. However, *Hartley I* also relied on the Restatement in dismissing, with prejudice, a

claim for intrusion upon seclusion, reasoning that "[s]ince Plaintiff is complaining about what she thinks UCMC told Facebook, her complaints are with the publication, and not any intrusion, which she probably initiated." 2023 WL 7386060 at *3. Likewise, plaintiff complains about what VillageMD disclosed to third parties, not the result of any self-initiated "intrusion."

Finally, the Privacy Policy further supports dismissal of the claim as it discloses that there are tracking technologies on the unauthenticated public portions of the website that "may collect or have access to information about your visits" and "information may be used, among other things, to deliver advertising targeted to your interests." *See* ECF 61-1 at 5. This is wholly consistent with the statement that plaintiff cites in defendant's Privacy Practices which provide that written authorization is required for disclosure of *PHI*, including "use of psychotherapy notes, marketing activities, the sale of your health information and most uses and disclosures for which we are compensated." *See* ECF 61 at 10.

**E. Plaintiff Fails to State a Claim for Breach of Implied Contract.**

Plaintiff's attempt to salvage his implied contract claim misses the mark. Rather than address VillageMD's argument, plaintiff mischaracterizes its position as resting on a prohibition of alternative pleading. VillageMD does not contend that alternative pleading is impermissible; rather, plaintiff's own *factual* allegations foreclose his claims.[1]

As this court recently stated "[a]n implied contract claim can be pleaded in the alternative to an express contract claim, but the existence of an express contract precludes an implied contract from governing the same subject matter." *Podraza v. Nourish, Inc.*, 2026 WL 1078554, at *12 (N.D. Ill. Apr. 20, 2026) (emphasis added) (citing *Archon Constr. Co. v. U.S. Shelter, LLC*, 413

[1] Plaintiff's opposition incorrectly asserts that VillageMD has conceded "an express contract claim" (Opp. at 13). VillageMD only argued that plaintiff cannot allege an implied contract where he has alleged an express contract. Even though an express contract was alleged, plaintiff has not alleged that an express contract was breached.

Ill.Dec. 791, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017)); *see also Marcatante v. City of Chi.*, 657 F.3d 433, 440 (7th Cir. 2011) (citing *Maness v. Santa Fe Park Enters., Inc.*, 298 Ill.App.3d 1014 (1998)); *see also Doe v. Genesis Health System*, 2024 WL 3890164, at *9 (C.D. Ill. Aug. 21, 2024) (dismissing breach of implied contract claim because "Plaintiff does not cite an Illinois case allowing claims for express and implied contracts arising from the same documents or promises"); *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *4 (N.D. Ill. Apr. 18, 2018) (finding plaintiffs' breach of contract based on the implied contract cannot exist because "once again, express contracts exist on the same subject-matter—the Privacy Policy and the online services terms").

As plaintiff does not dispute that there is an express contract, his breach of implied contract claim must be dismissed. Even if the claim could be set forth, "[t]o successfully make a breach of implied contract claim, a plaintiff must allege actual monetary damages." *Flores v. Aon Corp.*, 242 N.E.3d, 340, 356 (Ill. App. Ct. 2023); *see also Archey v. Osmose Utilities Servs., Inc.*, 2021 WL 3367156, at *2 (N.D. Ill. Aug. 3, 2021); *Hannant v. Culbertson*, 2025 WL 2413894 at *16 (C.D. Ill. Aug. 20, 2025) (dismissing implied contract claim in healthcare pixel case for failure to allege "actual monetary damages"); *Podraza*, 2026 WL 1078554, at *13 (dismissing breach of implied contract claim because the "only alleged damages in this case are the loss of privacy and the diminution of the value of Plaintiffs' personal information."). Plaintiff makes no effort to demonstrate that he has alleged "actual monetary damages," nor could he. Instead, plaintiff resorts to cataloguing a broad and generalized spectrum of purported damages (emotional harm, loss of privacy, vague references to "revenues, profits, and savings," and increased risk of future harm) that are either unrecoverable as being personal injury damages rather than breach of contract damages, implausible, or wholly conclusory. *See, e.g., Flores*, 242 N.E.3d, at 356 ("declin[ing] to

hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages"); *Archey v. Osmose Utilities Servs., Inc.*, 2021 WL 3367156, at *2 (N.D. Ill. Aug. 3, 2021) (dismissing for failure to allege any actual loss or injury); *but see In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022) (finding plaintiffs alleged concrete monetary losses, including $100.00 for a spam blocker and lost time dealing with the consequences of a data breach).

None of the cases that plaintiff cites support the proposition that he has adequately alleged monetary harm in a breach of implied contract claim. *First*, two of the cases on which plaintiff relies concern damages in fraud actions, not implied contract claims. *Posner v. Davis*, 395 N.E.2d 133 (Ill. App. Ct. 1979), for example, concerns damages for fraudulent concealment, and the court held that the plaintiffs had failed to prove the value of the house they had purchased as compared to the damaged house they received. 395 N.E.2d at 138. Moreover, this was only examined after the plaintiffs had already established liability for fraud. *Id.* *City of Chicago v. Michigan Beach Housing Co-op.*, 696 N.E.2d 804 (Ill. App. Ct. 1998), is similarly unavailing. The discussion of "benefit-of-the-bargain" damages in that case is confined to causes of action sounding in fraud, and the court's opinion does not address implied contracts at all. 696 N.E.2d 804, 809-10.

Plaintiff's contract related authorities fare no better. *Santorini Cab Corp. v. Banco Popular N. Am.*, 999 N.E.2d 46 (Ill. App. Ct. 2013), merely recites the general rule that expectation damages are the norm in contract claims, which involved a review of a summary judgment damages calculation in a case about a breach of contract over taxi medallions. *See generally* 999 N.E.2d 46. It does nothing to show that plaintiff has met his pleading burden. Nor does *Geisberger v. Willuhn*, 390 N.E.2d 945 (Ill. App. Ct. 1979). There, the court found that the plaintiff had not adequately pleaded a cause of action for breach of implied contract because that cause of action

was co-extensive with plaintiff's inadequately pleaded breach of confidence claim. 390 N.E.2d at 947-48. The court did not address the damages which must be pleaded in an implied contract claim. *Id.* Lastly, *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573 (N.D. Ill. 2022) held that damages were adequately alleged because each plaintiff had "plead[ed] some type of lost time" dealing with the consequences of a data breach. 631 F. Supp. 3d 573 at 587. This is not a data breach case and there are no facts suggesting that plaintiff lost any time dealing with any consequences resulting from the use of pixels on publicly available webpages.

**F. Plaintiff Fails to State a Claim for Unjust Enrichment.**

Plaintiff claims that his unjust enrichment claim survives based on his implied contract theory and his Illinois statutory claim. Neither argument holds water.

As with his implied contract claim, an unjust enrichment claim predicated on an implied contract cannot survive when the plaintiff has pleaded an express contract. "Where the plaintiff alleges [unjust enrichment based on an implied contract], the existence of an express contract between the parties on the same subject matter as the alleged implied-in-law contract defeats the claim because the express contract crowds out the possibility of an implied contract." *Muir v. Nature's Bounty, Inc.*, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017). One of plaintiff's own cases agrees. *Lozada v. Advocate Health & Hosps. Corp.*, 2018 WL 7080045, at *7 (Ill. App. Ct. Dec. 24, 2018) ("While a plaintiff is permitted to plead unjust enrichment in the alternative to a breach of contract claim, unjust enrichment 'is inapplicable where an express contract, oral or written, governs the parties' relationship.'").

Plaintiff's fallback on his Illinois statutory claim, predicated on the ICFA, fails as well. As addressed in the Motion and below, plaintiff cannot state an ICFA claim. Because no predicate

claim exists for unjust enrichment to latch onto, this claim must be dismissed. See *Hannant*, 2025 WL 2413894, at *17 (dismissing unjust enrichment claim in light of dismissal of other claims).

Finally, contrary to plaintiff's suggestion, he does not allege that he paid any money to VillageMD in exchange for data protection services. Plaintiff alleges that he conferred "a monetary benefit upon Defendant ***in the form of valuable sensitive medical information***" (SAC ¶ 284, emphasis added). Elsewhere he alleges that he is a "patient" who has been "receiving healthcare services from Village and physicians in Village's network[.]" SAC ¶ 148. Although plaintiff alleges that he suffered damages "equal to the difference in value between their purchases made with reasonable data privacy practices and procedures that Plaintiff and Class Members paid for," plaintiff provides no other detail as to what payments he made for "reasonable data privacy practices." SAC ¶ 287. Plaintiff's reliance on *Lozada* is misplaced as the facts are easily distinguishable. The *Lozada* plaintiffs actually alleged that they paid for the "protection of [plaintiff's] Sensitive Information" which was required as part of the patient-admission process. *Lozada*, 2018 WL 7080045 at *8. Here, plaintiff, if he paid money at all, presumably paid for receiving medical care, not data protection services, thus there can be no unjust enrichment claim. *See* SAC ¶ 284.

### G. Plaintiff Fails to State a Claim for Breach of the Implied Duty of Confidentiality.

Plaintiff's claim for breach of the implied duty of confidentiality fails because, as discussed, there are no plausible allegations that PHI or PII was actually disclosed, as opposed to routine internet tracking on public, unauthenticated webpages. *See Kurowski I*, 659 F. Supp. 3d at 940 (agreeing that "Illinois law does not recognize a cause of action in tort for this conduct"—and even if it did, "its scope is limited to disclosures that violate the statutory physician-patient privilege")

Plaintiff's efforts to distinguish *Kurowski I* are unavailing and rely on the same conclusory statements that have plagued his three attempts at adequately pleading claims. First, as stated repeatedly, plaintiff's conclusory assertions that VillageMD collected or disclosed PII and PHI cannot bear the weight of this cause of action when contrasted against the specific webpages that plaintiff alleges contained the Meta pixel. This case bears striking similarity to *Kurowski I*, where the plaintiff's tracking allegations concerned "[defendant's] public webpage, not the MyChart portal," and thus failed to satisfy the requirements of *Geisberger*. *Kurowski I*, 659 F. Supp. 3d at 941 (citing *Geisberger*, 390 N.E.2d at 947). Here too, plaintiff pleads unspecific facts about pre-portal pages and fails to show that any tracking occurred on the portal—where information related to his specific medical conditions might be found and through which he alleges he scheduled appointments. Moreover, plaintiff has not sufficiently alleged that VillageMD's website was the reason he received tailored advertisements related to health conditions, particularly as the advertisements could have just been easily the result of Google searches or by visiting other websites that everyone does in modern day internet browsing.

**H. Plaintiff Fails to Adequately Allege an ICFA Claim.**

Plaintiff's ICFA claim suffers from many of the same defects VillageMD has reiterated throughout. In short, plaintiff's conclusory allegations regarding the disclosure of PHI or PII on publicly available webpages are simply implausible, particularly where the Privacy Policy discloses the very conduct he now complains.

Regardless, plaintiff has failed to allege actual pecuniary loss. Plaintiff makes no effort to overcome the fact that both this court and the Central District of Illinois have held that such conclusory allegations regarding purported "diminution of the value of his Private Information" do not demonstrate actual pecuniary loss. *See Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 845-47 (N.D. Ill. 2023) (*Kurowski II*); *Hannant*, 2025 WL 2413894, at *8-9. Plaintiff cites

*In re Michaels Stores Pin Pad Litig*., 830 F. Supp. 2d 518 (N.D. Ill. 2011) for the proposition that "lost money" suffices to support an ICFA claim. While true, there are no plausible allegations indicating that plaintiff lost money. The *Michaels* plaintiffs alleged "monetary losses from unauthorized bank account withdrawals and/or related bank fees charged to their accounts"—a far cry from plaintiff's conclusory allegations about the diminution of the value of his medical information, where the only thing he alleges he "paid" with was that same information. *See id.* at 528.

**I. Plaintiff's ECPA Claims Remains Deficient.**

*1. Plaintiff Cannot Establish the Crime-Tort Exception*

Plaintiff's ECPA claim relies on the same legal conclusions he has failed to adequately support—that VillageMD collected and disclosed PHI and PII. Merely pleading that legal conclusion does not make it so, and without adequate factual support, Plaintiff's ECPA claim crumbles. *Lewerentz v. 1411 State Parkway Condo. Ass'n*, 748 F. Supp. 3d 582, 585 (N.D. Ill. 2024), *appeal dismissed*, 2025 WL 1014637 (7th Cir. Apr. 1, 2025) ("[L]egal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664).

Plaintiff failed to plead facts showing that VillageMD violated HIPAA or any other standard or regulation, as all of his allegations rely on the collection and disclosure of PII or PHI. Plaintiff therefore cannot invoke the crime-tort exception to ECPA's one-party-consent bar. *Nguyen v. Abbott Labs., Inc.*, 2026 WL 579206, at *5 (N.D. Ill. Mar. 2, 2026) (finding that "the crime-tort exception does not apply and [defendant's] motion to dismiss the ECPA claim is granted" where plaintiff "fails to plausibly allege that Abbott disclosed HIPAA-protected information").

Plaintiff tries to distinguish *Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), and *Hannant*, 2025 WL 2413894, but his arguments do not pass muster. He claims that a different result from *Smith* is warranted because the pixel revealed his patient status, but as discussed, plaintiff does not allege the URL string containing information related to his patient status disclosed to Meta in a manner that allowed him to be identified (e.g., unencrypted or unhashed). Again, the URL string is a function of the web browser, and even if transmitted, the information can be easily hashed to anonymize the website visitor. As for *Hannant*, plaintiff points to his allegations that he used VillageMD's patient portal, but as already discussed, he has not adequately alleged that his activities on the patient portal were disclosed to third parties.

As in *Hartley III*, Plaintiff's "allegations lack the factual support needed to infer that the information 'relates to the ... health or condition of an individual, [or] the provision of health care to an individual,'" and thus cannot underpin an ECPA claim. *Hartley v. Univ. of Chicago Med. Ctr.*, 2025 WL 2802317 at *7 (N.D. Ill. Oct. 1, 2025) (*Hartley III*) (quoting 42 U.S.C. § 1320d(6)(B)).

*2. VillageMD is Not an Electronic Communications Service for Purposes of the ECPA under Sections 2511(a)(3) and 2702.*

Plaintiff's effort to characterize VillageMD as an "electronic communications service" under 18 U.S.C. § 2510(15) is not even remotely persuasive. Plaintiff relies on one case, *Kurowski I*, 659 F. Supp. 3d at 940, to claim that it stands for the proposition that "a medical provider may be 'in the electronic communications business' when, like here, 'patients can communicate with their provider' via the defendant's platform." Opposition at 20, citing 659 F. Supp. 3d at 940. But the platform discussed in *Kurowski I* was the patient portal, and the court held that the portal maker, Epic, was the electronic communications service while the defendant hospital was not. *Kurowski I*, 659 F. Supp. 3d at 940. Completing plaintiff's partial quotes makes this clear. What the court

actually said was: "Unlike Epic—the licensor of the MyChart platform on which patients can communicate with their provider—hospital systems such as Rush ***are not in the electronic communications business***." *Id*. (emphasis added). There is no basis to hold that VillageMD is an electronic communications service.

### J. Plaintiff Fails to State a Claim Under the CFAA.

Plaintiff utterly fails to address his failure to plead "damage" or "loss" as defined by the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Plaintiff's only response is that in one sentence, he alleged "loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value." Opposition at 20. But the CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." *Id*. § 1030(e)(8). Plaintiff does not allege that any of his data or devices were impaired. Nor has plaintiff put forth non-conclusory facts showing any "loss" which is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id*. § 1030(e)(11). Plaintiff describes no such costs and does not even make any attempt to do so. As such, the CFAA claim must be dismissed.

## III. CONCLUSION

Based on the foregoing, VillageMD respectfully requests the Court to grant its motion to dismiss in its entirety and dismiss the SAC with prejudice.

Dated: June 17, 2026

By: _/s/ Jeffrey B. Margulies______

Edward Casmere
NORTON ROSE FULBRIGHT US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607
Tel: (312) 964-7800
Fax: (312) 964-7799

Yvonne K. Puig (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Tel: (512) 536-2450
Fax: (512) 536-4598
yvonne.puig@nortonrosefulbright.com

Jeffrey B. Margulies
Eva Yang (admitted pro hac vice)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Tel: (213) 892-9400
Fax: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com

***Counsel for Defendant Village Practice Management Company, LLC***

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 13, 2024 a true and correct copy of the foregoing Rule 12(b)(6) Motion to Dismiss was served on counsel of record via the Court's electronic filing system.

*Eva Yang*
Eva Yang